IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| SNL WORKFORCE FREEDOM ALLIANCE, DAVID PETERSON, JON BROOKS, ANNA BURNS, JOHN DOE #1, JANE DOE #1, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:22-cv-00001-KWR-SCY |
| NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA LLC d/b/a SANDIA NAT'L LABORATORIES, HONEYWELL INTERNAT'L, INC., | § § § § § § § | |
| Defendants. | § | |

**DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS
FOR LACK OF JURISDICTION UNDER FEDERAL RULE 12(b)(2),
AND IN THE ALTERNATIVE, MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM UNDER RULE  12(b)(6)</u>**

## I.     INTRODUCTION

In their 59-page complaint, Plaintiffs' sole allegation against Defendant Honeywell International, Inc. ("Honeywell") is that it is "vicariously liable" for alleged constitutional violations related to the vaccine policy of one of its subsidiaries, Defendant National Technology and Engineering Solutions of Sandia LLC ("NTESS"). But as explained by Judge Matthew Kacsmaryk in his order transferring this case to this Court, Plaintiffs "only mention Honeywell and 'vicarious liability' *once* in their complaint" and "they fail to plead any facts to support Honeywell is vicariously liable for NTESS's actions." Doc. No. 10 (emphasis in original).

Tellingly, despite this unequivocal finding by Judge Kacsmaryk, Plaintiffs have not amended their complaint to correct their deficient vicarious liability allegations against Honeywell—nor could they. Likewise, Plaintiffs have pled legally insufficient facts to demonstrate that Honeywell is a federal or state actor as required for it to be liable for Plaintiffs' bodily integrity claim under the U.S. or Texas Constitutions.

Moreover, as a threshold matter, Plaintiffs have also not carried their burden of establishing that this Court has personal jurisdiction over Honeywell. Honeywell is a Delaware Corporation with its principal place of business in North Carolina, and while NTESS is one of its many subsidiaries, it is indisputable that NTESS is a wholly distinct entity from Honeywell with its own headquarters, employees, human resources department, and management team, which made its own decisions regarding the formulation, implementation, and administration of the COVID-19 vaccine policy at issue in this lawsuit without any input or oversight from Honeywell.

In short, the Court should dismiss Plaintiffs' claims against Honeywell for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Alternatively, the Court should

dismiss Plaintiffs' claims against Honeywell under Federal Rule of Civil Procedure 12(b)(6) because they do not plead a facially plausible claim for relief.

## II.   BACKGROUND

### A.   Honeywell Generally

Honeywell is a Delaware corporation with its principal place of business in Charlotte, North Carolina.  Exhibit A, Johnson Decl. ¶ 3.  Honeywell operates nationally and invents and commercializes technologies that address some of the world's most critical challenges around energy, safety, security, air travel, productivity and global urbanization.  *Id*.  Honeywell offers both physical and software products, including aerospace products and services, energy efficient products and solutions for businesses, specialty chemicals, electronic and advanced materials, process technology for refining and petrochemicals, and productivity, sensing, safety and security technologies for buildings and industries.  *Id*.

### B.   Honeywell and NTESS are Separate Corporate Entities with Wholly Distinct Operations.

NTESS is a subsidiary of Honeywell.  *Id*. at ¶ 4.  NTESS is currently headquartered in Albuquerque, New Mexico and organized under the laws of the state of Delaware.  *Id*.  In 2016, NTESS was awarded a contract with the National Nuclear Security Administration to manage and operate Sandia National Laboratories ("SNL"), a Federally Funded Research and Development Center and the nation's premier science and engineering laboratory for national security and technology innovation.  *Id*.

Honeywell and NTESS are different corporate entities that operate at arm's length.  *Id*. at ¶ 5.  Honeywell and NTESS maintain separate corporate records.  *Id*. at ¶ 8.  NTESS has its own Articles of Organization as an LLC and has its own bylaws, meeting minutes, tax returns, accounting records, bank statements, and human resource files.  *Id*. at 8.  NTESS also maintains

and implements its own company policies and handbooks, which are distributed by its own Human Resources department.  *Id*.  NTESS has complete discretion in making personnel decisions, including decisions for hiring, firing, disciplining, setting the work hours, evaluating performance, and making decisions concerning safety and other employee policies or requirements.  *Id*.

Honeywell and NTESS maintain separate bank accounts and do not commingle funds.  *Id*. at ¶ 5.  Honeywell and NTESS have separate accounting systems and Honeywell does not pay any salaries or other expenses of NTESS as NTESS is sufficiently capitalized on its own to pay its bills or other debts.  *Id*.

Honeywell and NTESS each maintain their own separate workforces and separate headquarters.  *Id*. at ¶ 6.  Honeywell and NTESS maintain separate payroll records for their respective employees, pay taxes separately, and process payroll separately.  *Id*.  Honeywell and NTESS do not share any employees, and NTESS has its own management team, which runs its day-to-day operations, including, but not limited to, marketing, account management, administrative services, accounting, project management, and human resources.  *Id*.

Honeywell is not a party to the contracts that NTESS enters into with its customers, does not negotiate the contracts, and does not dictate the terms of the contracts.  *Id*.  NTESS does not provide any services to Honeywell whatsoever.  *Id*.

C. **Honeywell Had No Involvement in Formulating, Implementing, or Administering NTESS's COVID-19 Vaccine Policy.**

Honeywell did not and has not directed NTESS to implement a COVID-19 vaccine policy nor otherwise attempted to influence NTESS's decision to implement its policy.  *Id*. at ¶ 9. Honeywell did not direct or otherwise make any suggestions about how NTESS should implement its COVID-19 vaccination requirement, including, for example, whether to grant exemptions from

the requirement or the criteria for granting exemptions, or the consequences for NTESS employees' failure to comply with the requirement. *Id*.

**D.     Honeywell Did Not Employ any of the Named Plaintiffs.**

Honeywell does not employ any of the named Plaintiffs in this case. *Id*. at ¶ 10. The named Plaintiffs and any alleged members of Sandia Workforce Freedom Alliance ("SWFA") report or reported directly to NTESS or its affiliates, not to anyone at Honeywell. *Id*. The named Plaintiffs and alleged members of SWFA were not paid by Honeywell, did not work at its offices, were not subject to Honeywell's employee handbook and policies, and did not perform work that was part of Honeywell's regular business operations. *Id*. NTESS had complete discretion in making all personnel decisions such as hiring, setting work hours, disciplining, and terminating its employees—including Plaintiffs. *Id*.

### III.     ARGUMENT

**A.     Plaintiffs' Claims Against Honeywell Should be Dismissed for Lack of Personal Jurisdiction under Rule 12(b)(2).**

It is Plaintiffs' burden to establish that this Court has personal jurisdiction over each of the defendants to this lawsuit. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014). Because Plaintiffs have not carried and cannot carry their burden of establishing this Court's exercise of personal jurisdiction over Honeywell, their claims against Honeywell must be dismissed under Rule 12(b)(2).

As a starting point, Plaintiffs allege in their live Complaint that jurisdiction is appropriate in the Northern District of Texas, Amarillo Division because SNL has significant contacts with Pantex Nuclear Labs in Amarillo. *See* Doc. No. 1 at ¶ 6. After correctly determining that the Court did not have personal jurisdiction or venue over Defendants in the Amarillo Division, Judge Kacsmaryk transferred the case to this Court because the "District of New Mexico has general

5

jurisdiction over NTESS and the substantial part of the events or omissions giving rise to the claim occurred in New Mexico." Doc. No. 10.  Judge Kacsmaryk, however, made no findings with respect to whether this Court has personal jurisdiction over Honeywell, and Plaintiffs have not amended their complaint or otherwise set forth any factual basis for this Court's exercise of personal jurisdiction over Honeywell.  On this basis alone, the Court should dismiss Plaintiffs' claims against Honeywell under Rule 12(b)(2) because they have pled no facts to carry their burden of establishing this Court's exercise of personal jurisdiction over it.

Further, the Court should deny any request by Plaintiffs to amend their live Complaint to assert the basis for this Court's exercise of personal jurisdiction as any such amendment would be futile. *Jefferson v. County Sch. Dist. No. R-1 v. Moody's Investor's Serv., Inc.*, 175 F.3d 848, 859 ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."). As explained below, this Court has neither general nor specific jurisdiction over Honeywell.

New Mexico's long-arm statute, which permits the state to exercise personal jurisdiction over a defendant, is coextensive with the due process clause of the United States Constitution. *See* N.M. Stat. § 38-1-16; *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, 132 N.M. 312, 48 P.3d 50, 54.  To establish this Court's jurisdiction over Honeywell, Plaintiffs must show that Honeywell had minimum contacts with New Mexico—meaning that Honeywell purposely availed itself of New Mexico's benefits and protections—and that exercising jurisdiction will not offend traditional notions of fair play and substantial justice. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

There are two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1779-80 (2017). "General

jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction, on the other hand, demands a connection between the incident in question and the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

1. **The Court Does Not Have General Jurisdiction over Honeywell.**

This Court does not have general jurisdiction over Honeywell. The Court may only exercise general personal jurisdiction over Honeywell if finds that Honeywell's "affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014). The Tenth Circuit has agreed and further noted "[a] state court can exercise general jurisdiction over any claims against defendants who are 'essentially at home' there, as when an individual is domiciled in the State or a corporation is incorporated or has its principal place of business there." *Hood v. Am. Auto Care, LLC*, 2021 WL 6122400, at *2 (10th Cir. Dec. 28, 2021). In all but the most exceptional circumstances, a corporation is "at home" only in its "place of incorporation and principal place of business." *Daimler* at 138-39 & n.19.

Here, Honeywell is "at home" in North Carolina, where it is headquartered, and Delaware, its state of incorporation. Johnson Decl. ¶ 3. While Honeywell does business nationally as well as in New Mexico, New Mexico is not the center of its activities, and a "corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20; Johnson Decl. ¶ 3. Because Plaintiffs have not shown and cannot show that this is the "exceptional case" in which the Court should exercise general jurisdiction over an out of state corporation, the Court does not have general jurisdiction over Honeywell and Plaintiffs' claims against it should

7

be dismissed. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (holding train company's 2,000+ miles of track and more than 2,000 employees in Montana were insufficient to establish general jurisdiction) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952)).

### 2. The Court Does Not Have Specific Jurisdiction Over Honeywell.

The Court also lacks specific personal jurisdiction over Honeywell. Specific jurisdiction exists under two circumstances: (1) "the defendant has 'purposefully directed [its] activities at residents of the forum,' and (2) "the suit 'arise[s] out of or relate[s] to those activities." *Hood*, 2021 WL 6122400, at *3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bristol-Myers*, 137 S. Ct. at 1780). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). "[T]he relationship must arise out of contacts that the 'defendant himself" creates with the forum State." *Id.* at 284 (quoting *Burger King*, 471 U.S. at 475.

Here, Plaintiffs have presented no evidence that this lawsuit, which involves NTESS's vaccine policy, arises in any way out of Honeywell's contacts with New Mexico. To the contrary, the named Plaintiffs each assert that they were or are NTESS employees, their claims are focused on NTESS's vaccine policy, and all of the exhibits they attach to their complaint concern NTESS's vaccine policy, which nowhere mentions Honeywell. *See* Doc. No. 1 at ¶¶ 5–8; Doc. No. 1-1; Doc. No. 1-2; Doc. No. 1-3; Doc. No. 2-2. Further, as explained above, Honeywell was not involved in creating, implementing, or administrating NTESS's vaccine policy. *See* Johnson Decl. at ¶ 9. Thus, there is simply no basis for the Court to exercise specific jurisdiction over Honeywell. *Id.* at ¶ 9–10.

      **3.**      **Plaintiffs Cannot Impute NTESS'S Contacts with New Mexico to Honeywell for Purposes of Establishing Jurisdiction.**

Any argument by Plaintiffs that the Court should exercise jurisdiction over Honeywell based on NTESS's contacts with New Mexico must also fail. "As a general rule, the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, when one is a nonresident and is not otherwise present or doing business in the forum state." *Cruz v. Lovelace Health Sys., Inc.*, 2019 WL 4016281, at *9 (D.N.M. Aug. 26, 2019) (quoting *Smith v. Halliburton Co.*, 879 P.2d 1198, 1201 (N.M. Ct. App. 1994)). "This is the case even if the subsidiary doing business in the state is wholly owned by the parent company over whom personal jurisdiction is sought, because '[New Mexico courts] will not subject passive investors to [their] jurisdiction solely on the basis of their investment.'" *Berry v. Bryant*, 2012 WL 12819204, at *4 (D.N.M. Mar. 15, 2012) (internal citations omitted).

Further, though not asserted by Plaintiffs in the Complaint or otherwise, the indisputable facts demonstrate that NTESS is neither the alter-ego or the agent of Honeywell for purposes of establishing jurisdiction against Honeywell in this forum. Under an alter-ego theory, courts look to the level of control exercised by the parent over the subsidiary and "if the parent's control of the subsidiary goes beyond that normally exercised by a majority shareholder, and is 'so complete as to render the subsidiary an instrumentality of the parent, . . . the Court may deem the subsidiary the mere 'alter ego' of the parent, and accordingly may pierce the corporate veil.'" *Id.* (quoting *Jemez Agency, Inc. v. Cigna Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994)). "Alternatively, if the subsidiary does an act at the direction of the parent, or in the course of the parent's business, the Court may characterize the subsidiary as an agent of the parent and thereby hold the parent answerable as a principle." *Jemez Agency, Inc.*, 866 F. Supp. at 1343. As demonstrated below,

there is no evidence that NTESS is a mere instrumentality of Honeywell or that Honeywell directed any acts of NTESS relevant to this lawsuit.

### (a)  NTESS is Not Honeywell's Alter Ego.

Plaintiffs cannot establish that NTESS is Honeywell's alter ego for purposes of establishing personal jurisdiction.  New Mexico courts have established a number of factors to consider in determining whether a subsidiary is acting as the alter-ego of its parent, including: (1) the parent corporation owns all or a majority of the subsidiary's stock; (2) the parent and subsidiary have common officers or directors; (3) the parent finances the subsidiary; (4) the parent subscribes to all of the capital stock of the corporation or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent pays the salaries, expenses, or losses of the subsidiary; (7) the subsidiary has essentially no business except with the parent or no assets other than those conveyed to it by the parent; (8) in the parent corporation's papers and its officers' statements, the subsidiary is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary, but take direction from the parent; and (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *Berry v. Bryant*, 2012 WL 12819204, at *4 (D.N.M. Mar. 15, 2012).

Honeywell has provided overwhelming evidence that it and NTESS have separate corporate personalities.  Honeywell and NTESS do not share offices and do not have overlapping employees, and NTESS maintains its own management team that runs its day-to-day operations, including accounting, human resources, and others.  Johnson Decl. ¶ 8.  Honeywell and NTESS have separate accounting systems, and Honeywell does not pay any salaries or other expenses of NTESS as NTESS is sufficiently capitalized on its own to pay its bills or other debts based on its

own contract with the National Nuclear Security Administration awarded soon after Honeywell formally organized NTESS as a separate entity. Johnson Decl. ¶¶ 4–7. Honeywell and NTESS do not share any common directors or officers. Johnson Decl. ¶ 7.[1] Honeywell and NTESS do not commingle funds, and NTESS has its own bank accounts. Johnson Decl. ¶ 5 NTESS has its own corporate records, including Articles of Organization, bylaws, meeting minutes, tax returns, accounting records, bank statements, human resource files, policies, manuals, and handbooks. Johnson Decl. ¶ 8. Honeywell is not a party to the contracts that NTESS enters into with its customers, does not negotiate the contracts, and does not dictate the terms of the contracts. Johnson Decl. ¶ 6 Honeywell does not use any NTESS property as its own because NTESS does not own property, and Honeywell does not operate out of SNL. Johnson Decl. ¶ 6. As such, Plaintiffs cannot use alter ego to establish personal jurisdiction over Honeywell.

### (b) NTESS is Not Honeywell's Agent for Purposes of this Analysis.

Plaintiffs also cannot establish personal jurisdiction over Honeywell under an agency theory. While some courts have found that "the alter ego and agency analyses are substantially similar" and therefore "analyze them together," additional agency analysis is provided below, further demonstrating that the exercise of personal jurisdiction over Honeywell is simply improper. *See Romero v. TitleMax of New Mexico, Inc.*, 2020 WL 4547294, at *3 (D.N.M. Aug. 6, 2020) (explaining under either agency or alter ego theory, court inquires whether parent corporation

---

[1] While several Honeywell employees sit on NTESS's Board of Managers, these Honeywell employees are not Honeywell officers or board members. Regardless, "commonality of officers and is 'insufficient proof' to establish an alter ego." *Zia Agric. Consulting, LLC v. Tyson Foods, Inc,* 2021 WL 245686, at *7 (D.N.M. Jan. 25, 2021) (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004)). The remaining factors all show that NTESS is not Honeywell's alter ego.

11

"dominat[ed] the day to day business decisions of the subsidiary and disregard[ed] the corporate entity of the subsidiary").

"Because a corporation is a distinct legal entity that can act only through its agents," a subsidiary's conduct can only confer specific jurisdiction on the parent if the subsidiary acted as the parent's agent in connection with "an act giving rise to th[e] litigation." *Miceli v. Southwind Mgmt. Corp.*, 2021 WL 1122658, at *3 (D.N.M. Mar. 24, 2021); *see also Daimler*, 571 U.S. at 135 n.13 (quoting 1 W. Fletcher, Cyclopedia of the Law of Corps. § 30 (Supp. 2012–2013)). "[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id*. (citation omitted).

Plaintiffs simply cannot demonstrate, nor did they allege, that Honeywell dictated NTESS's behavior regarding NTESS's vaccine mandate, and indeed Honeywell did not. Honeywell did not direct NTESS to implement its COVID-19 vaccine policy nor otherwise attempt to influence NTESS's decision to implement the policy. Johnson Decl. ¶ 9. Similarly, Honeywell did not direct or otherwise make any suggestions about how NTESS should implement its COVID-19 vaccination requirement and had no say in whether to grant exemptions from the requirement, the criteria for granting exemptions, or the consequences for NTESS employees' failure to comply with the requirement. *Id*. Given that NTESS acted independently in all ways regarding its vaccination policy, Honeywell did not direct any "act giving rise to this litigation," precluding a finding of personal jurisdiction over Honeywell under an agency theory. *See Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1345 (D.N.M. 1994).

**B.      In the Alternative, Because Plaintiffs Have Failed to State any Facially Plausible Claims Against Honeywell, their Claims Should Be Dismissed under Rule 12(b)(6).**

If the Court finds that it has personal jurisdiction, it should nevertheless dismiss Plaintiffs' claims against Honeywell under Rule 12(b)(6) because Plaintiffs fail to plead any plausible right to relief. The sum total of Plaintiffs' allegations against Honeywell are that, as NTESS's parent company, it is somehow "vicariously liable" for the alleged harm caused to Plaintiffs by NTESS's vaccine policy. *See* Doc. No. 1, p. 6. Having no additional facts to assert against Honeywell, Plaintiffs then purport to use the term "SNL," which is a laboratory, interchangeably with "Defendants"—a term Plaintiffs never define but that presumably includes Honeywell and NTESS. *Id*. This brazen attempt to avoid having to actually plead any facts specific to Honeywell not only stretches the limits of Plaintiffs' obligation of candor to the Court but is also an improper tactic to avoid having to plead facts demonstrating a plausible right to relief against Honeywell, which the Court should reject.

It is well established that while the pleading standard under Federal Rule of Civil Procedure 8 does not require "detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 , 570 (2007)). To this end, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan-Arapahoe v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (*quoting Iqbal*, 556 U.S. at 679). In making this assessment, while this

13

Court "must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, Plaintiffs' single-sentence allegation that Honeywell is somehow "vicariously liable" for the alleged acts of its subsidiary NTESS is the epitome of a legal conclusion unadorned by any actual supporting facts. Plaintiffs neither set forth any legal theory of proposed vicarious liability nor a single fact in support of same. This proposition is not controversial or really even subject to debate as Judge Kacsmaryk has already found as follows:

> Plaintiffs name NETSS's parent company [Honeywell] as a second defendant. Plaintiffs claim Honeywell is "vicariously liable" for the actions of its wholly owned subsidiary NTESS. Not only do Plaintiffs only mention Honeywell and "vicarious liability" *once* in their complaint, **they fail to plead any facts to support Honeywell is vicariously liable for NTESS's actions**.

Doc. No. 10 (internal citations omitted) (emphasis added).

Because Plaintiffs have asserted no facts demonstrating that Honeywell could plausibly be found vicariously liable for the alleged acts its of subsidiary, Plaintiffs' claims against Honeywell are deficient as a matter of law and should be dismissed. *Jones v. Mozer*, 2012 WL 3778337, at *5 (D. Colo. Mar. 28, 2012) (dismissing plaintiff's claim that defendant was "vicariously liable for the violation of his constitutional rights" because "[p]laintiff ha[d] provided no facts showing liability" by way of defendant "direct[ing] the violation"), report and recommendation adopted, *Jones v. Mozer*, 2012 WL 3778333 (D. Colo. Aug. 30, 2012); *see also Thrailkill v. Champion Ford, Inc.*, 776 F. Supp. 1486, 1487–89 (D.N.M. 1991) (noting that "the plaintiffs merely conclude that [the parent company] is vicariously liable" but refusing to find that such "conclusions could be inferred from unidentified general allegations" therefore dismissing under Rule 12(b)(6)).

Likewise, while Plaintiffs' sole cause of action in this case is a violation of their right to bodily integrity under the United States and Texas Constitutions, Plaintiffs have set forth no facts showing that Honeywell is a state or federal actor as required to establish such a claim. *See, e.g., Obduskey v. Fargo*, 2016 WL 4091174, at *8 (D. Colo. July 19, 2016) (finding "neither defendant is a state actor against whom a constitutional claim can be brought" and dismissing under Rule 12(b)(6)); *LeJon-Twin El v. Marino*, 2017 WL 1591856, at *4 (D.N.J. Apr. 28, 2017) (stating a Fourth Amendment "constitutional claim may be brought against a federal or state government actor, but not against a private employer" and dismissing under Rule 12(b)(6)).

To the contrary, while Plaintiffs assert that "Defendants," which presumably includes Honeywell, entered a contract with the NNSA in their Complaint, this allegation is demonstrably false as evinced by the portions of the actual contract Plaintiffs attached to their ex parte motion for temporary restraining order, which clearly lists NTESS, not Honeywell, as the party to the contract. *See* Doc. No. 2-2. In short, neither Plaintiffs' allegations nor evidence regarding state or federal actor status even reference Honeywell, and they have therefore failed to set forth sufficient facts to establish a claim against Honeywell either vicariously or otherwise for the alleged constitutional violations associated with NTESS's vaccine policy. For all of these reasons, Plaintiffs' claims against Honeywell should be dismissed under Rule 12(b)(6) as a result.

**C.      The Doe Plaintiffs Are Improper Parties and Their Claims Should be Dismissed**

As a final matter, two plaintiffs, John Doe #1 and Jane Doe #2, have provided fictious anonymous names and are therefore improper parties to this lawsuit. Besides the practical consideration that it is impossible for Honeywell to scrutinize their allegations based on the scant details they provide regarding their employment or "affiliation" with NTESS, courts in this district have recognized that "there is no provision in the Federal Rules of Civil Procedure for the naming

of fictitious or anonymous parties in a lawsuit." *Trujillo v. Cent. New Mexico Corr. Facility*, 2020 WL 7630676, at *4 (D.N.M. Dec. 22, 2020) (citing *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Court for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir. 1982)). In contrast, "Rule 10(a) requires that the title of a complaint 'name all the parties,' and Rule 17(a) prescribes that '[a]n action must be prosecuted in the name of the real party in interest.'" *Doe v. Atchison Hosp. Ass'n*, 2018 WL 324259, at *1 (D. Kan. Jan. 8, 2018). While there may be "exceptional circumstance" that warrant allowing a plaintiff to proceed anonymously, the Tenth Circuit has made clear a "plaintiff should be permitted to proceed anonymously only in exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity" and that "the risk that a plaintiff may suffer some embarrassment is not enough." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). Because the anonymous plaintiffs have failed to assert any facts that their situation is exceptional, and indeed because other Plaintiffs have not proceeded anonymously, the Court should dismiss the claims of the anonymous plaintiffs.

### IV.     CONCLUSION

Because Plaintiffs cannot establish that this Court has personal jurisdiction over Honeywell in this lawsuit, Honeywell respectfully asks the Court to dismiss Plaintiffs' claims against it under Rule 12(b)(2). Alternatively, Honeywell respectfully asks the Court to dismiss Plaintiffs' claims against it under Rule 12(b)(6) because Plaintiffs have failed to plead sufficient facts upon which relief could be granted.

For the foregoing reasons, Honeywell respectfully requests this Court grant its Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

| | |
|---|---|
| Dated: January 18, 2022 | */s/ Sara N. Sanchez*<br>Sara N. Sanchez<br>Rebekah A. Gallegos<br>Peifer, Hanson, Mullins & Baker, P.A.<br>Post Office Box 25245<br>Albuquerque, NM 87125-5245<br>Telephone: (505) 247-4800<br>Fax: (505) 243-6458<br>ssanchez@peiferlaw.com<br>mbaker@peiferlaw.com<br>rgallegos@peiferlaw.com<br><br>T. Cullen Wallace<br>MORGAN, LEWIS & BOCKIUS LLP<br>1000 Louisiana Street, Suite 4000<br>Houston, TX 77002<br>Telephone: (713) 890-5000<br>Facsimile: (713) 890-5001<br>cullen.wallace@morganlewis.com<br><br>**Counsel for Defendant Honeywell International, Inc.** |

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 18th day of January, 2022, I filed the foregoing electronically through the CM/ECF system, which caused all counsel or record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

N. Ana Garner
Garner Law Firm
206 W. Main
Farmington, New Mexico  87401
Telephone:  (505) 930-5170
Garnerlaw@yahoo.com

Warren V. Norred
Norred Law, PLLC
515 E. Border St.
Arlington, Texas  76010
Telephone:  (817) 704-3984
wnorred@norredlaw.com

Jonathan Diener
Attorney at Law
Post Office Box 27
Mule Creek, New Mexico  88051
Telephone:  (575) 535-2760
jonmdiener@gmail.com

PEIFER, HANSON, MULLINS & BAKER, P.A.

By:   */s/ Sara N. Sanchez*
         Sara N. Sanchez