**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**SNL WORKFORCE FREEDOM
ALLIANCE, DAVID PETERSON, JON
BROOKS, ANNA BURNS, JOHN DOE
#1, JANE DOE #1,**

          **Plaintiffs,**

**v.**                                       **Case No. 1:22-cv-00001-KWR-SCY**

**NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA LLC d/b/a SANDIA NAT'L
LABORATORIES, HONEYWELL
INTERNAT'L, INC.,**

          **Defendants.**

## NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA LLC'S OPPOSITION TO REQUEST FOR TEMPORARY RESTRAINING ORDER

## I.      INTRODUCTION

Defendant National Technology and Engineering Solutions of Sandia, LLC ("NTESS") is a privately held company that operates Sandia National Laboratory ("SNL") under a Management and Operating contract with the U.S. Department of Energy's National Nuclear Security Administration ("DOE/NNSA"). As a private government contractor, NTESS was required to comply with President Biden's Executive Order 14042 (the "Executive Order"). The Executive Order required federal contractors to ensure that all employees who work on or in connection with a federal contract to be fully vaccinated against COVID-19 or receive approval for a medical or religious exemption.

In October 2021, NTESS implemented a vaccine mandate for its 14,000 employees that was consistent with the Executive Order's requirements. On December 7, 2021, a federal district court in Georgia entered a nationwide injunction temporarily suspending the Executive Order. It is NTESS's intention to follow the developments of the legal proceedings impacting the Executive Order and continue to comply with applicable requirements. Following the Georgia court's order, there were several attempts by the government to stay enforcement of the injunction, which seemed to have all failed by late December. On January 5, 2022, NTESS announced to its employees that it had paused its vaccine requirement pending any changes to the legal proceedings impacting the Executive Order.

Although NTESS alerted Plaintiffs that its enforcement of its vaccine mandate had been paused, Plaintiffs nonetheless seek to proceed with this motion. Plaintiffs' motion fails for numerous reasons.

First, NTESS's decision to pause its vaccine mandate renders Plaintiffs' request for an injunction (and this entire lawsuit) moot because there is no case or controversy pending before this Court. NTESS asked Plaintiffs to dismiss their lawsuit or, at least, withdraw this motion on that basis. Plaintiffs refused to do either, necessitating this response. The Court should deny Plaintiffs' motion on this ground alone.

Second, Plaintiffs failed to submit *any* evidence to support their motion, which is the most basic requirement to obtain an injunction under Rule 65. The Court can also deny Plaintiffs' motion on this ground alone.

Third, Plaintiffs failed to demonstrate a likelihood of success on the merits because Defendants are private actors, not government actors, and therefore Plaintiffs' constitutional law

claims fail as a matter of law.

Fourth, Plaintiffs cannot demonstrate irreparable harm.  NTESS is a private employer, not a government actor, therefore, the alleged violation of Plaintiffs' constitutional rights is not at issue, and Plaintiffs' (theoretical) right to recover money damages would repair any alleged harm from losing their jobs.

Fifth, the balance of hardships and the public interest weigh heavily against Plaintiffs' request.  Any injunction that blocked or limited NTESS's ability to comply with the Executive Order, if it is ever upheld, could negatively impact NTESS's operations and would endanger public health.

Because Plaintiffs have not shown any evidence or grounds supporting the emergency relief they request, this Court should deny Plaintiffs' motion in its entirety.  In addition, because there is no case or controversy before this Court and, in any event, it is clear that Plaintiffs cannot muster sufficient evidence to prevail on their underlying claims as a matter of law, the Court should dismiss this entire action.

## II.   FACTUAL BACKGROUND

### A.   NTESS OPERATES SANDIA NATIONAL LABORATORIES.

NTESS is a private Limited Liability Corporation and wholly owned subsidiary of Honeywell International Inc.  NTESS manages and operates Sandia National Laboratories (SNL) pursuant to Contract No. DE-NA0003525 (hereinafter "the M&O Contract") that NTESS entered into with the U.S. Department of Energy (DOE National Nuclear Security Administration (NNSA)).  Declaration of Kelly Westlake in Support of NTESS's Opposition to Motion for Temporary Restraining Order ("Westlake Decl.") Ex. 1, ¶ 2.  SNL is not a separate legal entity.  It is simply a physical space owned by the Department of Energy.  *Id*.  NTESS directly employs

more than 14,000 individuals, and employs or employed Plaintiffs David Peterson, Jon Brooks, and Anna Burns.[1]  Westlake Decl., Ex. 1, ¶¶ 4, 20.

**B.     AS A FEDERAL CONTRACTOR, NTESS MUST ABIDE BY FEDERAL REGULATIONS APPLICABLE TO IT, INCLUDING EXECUTIVE ORDER 14042, WHICH REQUIRES COVID-19 VACCINATIONS.**

As a federal contractor, NTESS is required to comply with federal regulations applicable to it, many of which are effectuated through the terms of NTESS's M&O contract with the DOE.  For example, the M&O Contract provides that the Contracting Officer may, "from time to time and at any time, *unilaterally* modify the Contract to revise, add or delete" Federal Acquisition Regulation (FAR), or DOE Acquisition Regulation (DEAR) clauses contained in section H of the M&O contract due to changes in the law or regulations or policy resulting from the approval of new deviations."  Unilateral modifications to the M&O Contract can be made if there are changes to the FAR, DEAR, or Section H clauses (Special Contract Requirements) that result from the approval of new deviations to existing FAR, DEAR, or Section H clauses. Westlake Decl., Ex. 1, ¶ 5.

In order to provide the heads of federal agencies ongoing guidance to keep their employees safe during the COVID-19 pandemic, President Biden created The Safer Federal Workforce Task Force.  In July 2021, the Safer Workforce Task Force required that "onsite contractors who are not fully vaccinated or decline to provide their vaccination status must wear a mask, physically distance and comply with a weekly or twice-weekly screening testing requirement and are subject to Government-wide restrictions on official travel." Westlake Decl., Ex. 1, ¶ 6, Ex. A.

---

[1] According to the Plaintiffs, Sandia Workforce Freedom Alliance (SWFA) is an unincorporated association who appear to object to NTESS's COVID-vaccination, masking, and testing requirements.  Plaintiffs' Complaint and Request for Injunctive Relief ("Compl.") ¶ 2.  Plaintiff SWFA is unaware of its own membership numbers and has not identified its members regardless.  *Id.*  Apart from certain facts concerning their respective residences and tenure, John Doe #1 and Jane Doe #2 are not identified at all.  Compl. ¶¶ 7, 8.

On September 9, 2021, President Biden signed Executive Order No. 14042 ("Executive Order"), "Ensuring Adequate COVID Safety Protocols for Federal Contractors."  This Executive Order applies to federal contractors like NTESS.  Westlake Decl., Ex. 1, ¶ 7.  On September 24, 2021, the Safer Workforce Task Force issued updated guidance for federal contractors and subcontractors, which are covered by the Executive Order, and which requires, among other things, that all covered contractor employees be fully vaccinated by December 8, 2021 unless they are legally entitled to an accommodation. Westlake Decl., Ex. 1, ¶ 8.

Because NTESS was required to comply with both the Executive Order and its guidance, NTESS announced its intention to institute a vaccination requirement.  On October 5, 2021, NTESS's Lab Director issued a communication informing NTESS's workforce of the Executive Order as well as NTESS's anticipation that the vaccination mandate would require all workforce members and subcontractors to be fully vaccinated against COVID-19 by December 8, 2021, subject to medical or religious exemptions.  Westlake Decl., Ex. 1, ¶ 9, Ex. B.

On October 12, 2021, the DOE issued DOE Order 350.5 COVID Safety Protocols for Federal Contractors.  The Order directs the requirements in Executive Order 14042 be included in M&O Contracts.  Westlake Decl., Ex. 1, ¶ 10. Accordingly, on October 14, 2021, the DOE/NNSA unilaterally modified NTESS's M&O contract by adding the requirements in DOE Order 350.5 and FAR 52.223-99, which requires NTESS to implement the Executive Order and comply with all guidance published by the Safer Federal Workforce Task Force.  Westlake Decl., Ex. 1, ¶ 11.  On November 10, 2021, the Safer Workforce Task Force issued guidance extending the deadline for federal contractor employees to be fully vaccinated from December 8, 2021 to January 18, 2022. Westlake Decl., Ex. 1, ¶ 13.

In line with these requirements, NTESS issued a November 16, 2022 announcement extending the deadline for NTESS employees to be fully vaccinated until January 18, 2022. In this announcement, NTESS also noted that unvaccinated employees could use accrued vacation and flex time (paid time off) as well as up to 160 hours of unpaid time off after January 18, 2022 in order to give them additional time to consider becoming vaccinated. Westlake Decl., Ex. 1, ¶14, Ex. E.

### C. NTESS PAUSED ITS VACCINATION REQUIREMENT BECAUSE A DISTRICT COURT ENTERED A NATIONWIDE INJUNCTION ENJOINING EXECUTIVE ORDER 14042.

On December 7, 2021, Judge R. Stan Baker of the United States District Court for the Southern District of Georgia (the "Georgia District Court") issued a nationwide injunction halting the enforcement of Executive Order. Westlake Decl., Ex. 1, ¶ 15. Because it was still unclear whether the order would be stayed or quickly reversed before the Executive Order's requirements would become effective, on December 8, 2021, NTESS issued a Special Announcement reminding their workforce that they should be prepared to comply with the January 18, 2022 deadline to be fully vaccinated. While NTESS acknowledged the injunction against the Executive Order, because the litigation was in its early stages, NTESS noted that it still planned to comply with the guidance and requirements published by the Safer Federal Workforce Task Force. Westlake Decl., Ex. 1, ¶ 16, Ex. F.

On December 9, 2021, the attorneys defending the Executive Order filed a Notice of Appeal to the 11th Circuit as well as a Motion to Stay the Georgia District Court's injunction halting enforcement of the Executive Order until the 11th Circuit could rule. Westlake Decl., Ex. 1, ¶ 17. On December 21, 2022, the attorneys defending the Executive Order withdrew their request that the Georgia District Court stay its December 7, 2021 order granting the plaintiffs'

motions for a preliminary injunction pending the completion of their appeal to the United States Court of Appeals for the Eleventh Circuit.  The Georgia District Court denied the emergency stay on December 23, 2021.  Westlake Decl., Doc.1, ¶ 18.  On December 29, 2021, the 11th Circuit denied the government's request to expedite the proceedings.  Briefing in that case will not be complete until late February, and the 11th Circuit will not conduct a hearing until at least April.  *See* Request for Judicial Notice in Support of Opposition to Motion for Temporary Restraining Order ("Request for Judicial Notice") Exs. 1-3 (filed concurrently herewith).

Because it appeared that the Executive Order would be enjoined for some time if not permanently, NTESS issued a January 5, 2022 Special Announcement informing the workforce that it was pausing enforcement of the Executive Order vaccine mandate and would instead be implementing a serial testing programs beginning January 18, 2022.  Westlake Decl., Ex. 1, ¶ 19, Ex. G.

### D. NTESS REQUESTED THAT PLAINTIFFS WITHDRAW THIS MOTION, BUT THEY REFUSED.

On January 5, 2021, NTESS's counsel contacted Plaintiffs' counsel to invite a discussion about how the pause on enforcement of the Executive Order vaccine mandate impacted this litigation.  Counsel spoke on January 6.  NTESS's counsel explained that NTESS paused its enforcement of the Executive Order vaccine mandate and intended to track the pending litigation over the Executive Order.  Given these developments, NTESS's counsel explained that this litigation is moot and invited Plaintiffs' counsel to dismiss the lawsuit or, at a minimum, withdraw their motion.  Plaintiffs' counsel declined, suggesting that the request for relief also sought to challenge NTESS's virus testing policy for unvaccinated employees, even though based on a fair reading of the pleadings and Plaintiffs' motion NTESS's testing policy is not at issue.  Declaration

of Michael Weil in Support of NTESS's Opposition to Motion for Temporary Restraining Order Weil Decl., Ex.2, ¶ 2, Ex. A.  Continuing to litigate about a vaccine requirement that is not being enforced is a waste of this Court's and the parties' time and, as explained below, the Court should deny Plaintiffs' motion.

## III.   LEGAL ARGUMENT

### A.   PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO SHOW EXTRAORDINARY RELIEF IS WARRANTED.

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (internal citations and quotations omitted).  To obtain a TRO or preliminary injunction, Plaintiffs must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).  Notably, "the movant 'must' satisfy his or her burden for each and every one of these prerequisites … the strength of one cannot compensate for the weakness of another." *Peterson v. Kunkel*, 492 F. Supp. 3d 1183, 1192 (D.N.M. 2020) (citing *Dine*, 839 F. 3d at 1282).

Plaintiffs' motion relies on overruled and outdated caselaw to argue that the Court may apply a lower standard on the likelihood of success element.  In *Dine Citizens Against Ruining Our Env't v. Jewell* the 10th Circuit held that the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) overruled the 10th Circuit's "modified test" and further held that "any modified test which relaxes one of the prongs for preliminary relief and thus

deviates from the standard test is impermissible." *Dine*, 839 F.3d at 1282.  Despite Plaintiffs'

flawed argument to the contrary, they "must show [they are] likely to succeed on the merits" and

cannot rely on any sort of relaxed or modified standard to prevail.  *Id.*; *Legacy Church, Inc. v.

Kunkel*, 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020) (J. Browning) (rejecting "relaxed" standard

for injunctive relief and holding that "it is insufficient, moreover, that a moving party demonstrate

that there is only a 'possibility' of either success on the merits or irreparable harm").

     As explained below, Plaintiffs are not entitled to extraordinary relief.

### B.    THE COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE THEY FAILED TO SUBMIT *ANY* EVIDENCE.

     To obtain a preliminary injunction, Plaintiffs must satisfy the basic requirement under Rule

65 of offering evidence to support their motion.  Plaintiffs submitted literally nothing: they have

not verified their Complaint nor submitted any declarations or other evidence whatsoever in

support of their motion.  It is simply not possible for Plaintiffs to satisfy their high burden of

proving a likelihood of success on the merits or irreparable harm without actually submitting

evidence.  The Court can deny Plaintiffs' motion on this basis alone.  *See, e.g., Watts v. Donley*,

2015 WL 1228593, at \*3 (D. Colo. Mar. 16, 2015) (denying the request for extraordinary relief

because "Plaintiff has not demonstrated, as opposed to merely asserting conclusory allegations,

that he will be irreparabl[y] harmed").

### C.    PLAINTIFFS CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS. [2]

---

[2] Plaintiffs have not provided any facts, let alone allegations, to show that Plaintiff SWFA is an entity entitled to standing or has capacity to sue under FRCP 17, and NTESS does not waive its arguments concerning this "organization's" lack of standing or capacity to sue.  Nor does NTESS waive any argument that it is inappropriate for anonymous "Doe" plaintiffs to sue without identifying themselves.  Because Plaintiffs David Peterson and Jon Brooks are no longer NTESS employees, they do not have standing to seek an injunction enjoining the Defendants from "taking any negative action" against them for refusing to be vaccinated, and NTESS does not waive any arguments as

1.  **Plaintiffs' Motion and Claims are Moot Because NTESS has Paused Enforcement of Its Vaccine Requirement.**

Federal courts exercising judicial authority are "confine[d] ... to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry,* 570 U.S. 693 704, (2013) (quoting U.S. Const. art. III, § 2). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 US 43, 67 (1997) (internal quotes omitted). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 US 277, 287 (2000).

Here, Plaintiffs' Complaint and the relief they seek by their motion are narrowly focused on NTESS's now paused vaccine requirement. NTESS has stopped enforcement of that vaccine requirement, pending the court proceedings on the Executive Order, which may remain enjoined indefinitely. No decision from the 11th Circuit is expected at least until April, if not later, and the Supreme Court may then take up the case. *See* Request for Judicial Notice, Exs. 2,3. Plaintiffs therefore have no continuing real or expected imminent alleged injury from NTESS's repealed vaccine requirement. Where a plaintiff, like these Plaintiffs, seeks to challenge "a requirement that no longer burdens or applies to the plaintiff, a federal court lacks jurisdiction to adjudicate the plaintiff's claim." *Wade v. Univ. of Connecticut Bd. of Trustees*, 2021 WL 3616035, at *7 (D. Conn. Aug. 16, 2021) (denying motion for injunctive relief as moot because the university's COVID-19 vaccination requirement no longer applied to the plaintiffs); *Pietrangelo v. Sununu*, 15 F.4th 103, 106 (1st Cir. 2021) (dismissing plaintiff's appeal of denial of injunctive relief concerning COVID-19 vaccine distribution because Plaintiff had since been vaccinated).

---

to these Plaintiffs. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465–66 (S.D. N.Y. 2013) ("[A] plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future.").

Plaintiffs may argue in response that NTESS could reinstate enforcement of its vaccine mandate at any time and, therefore, this case presents a live controversy. Plaintiffs' mere speculation that NTESS may at some undetermined time in the future reinstate its vaccine requirement is not enough to defeat mootness. *Wade*, 2021 WL 3616035, at *8 (rejecting argument that the university could withdraw vaccine exemptions at any time because "a speculative possibility of future revocation of an exemption is not enough to defeat mootness."); *Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (challenge to pandemic suspension of fingerprinting for firearms permits was moot in light of evidence showing resumption of fingerprinting and only a speculative possibility that the suspension of fingerprinting would be reimposed).

Here, NTESS instated the vaccination requirement in accordance with the Executive Order. Westlake Decl., Ex. 1, ¶ 9, Ex. B. Whether or when the Executive Order becomes effective again – it is currently unclear whether it will ever happen – is speculative, at best. If the 11th Circuit upholds the Executive Order as lawful, then NTESS would be required to follow it. Plaintiffs then would have plenty of time to re-file their Complaint and motion if they still somehow contended that, even after thorough judicial review, the Executive Order's requirements are unlawful. This speculative and hypothetical scenario is not a basis to continue to litigate over NTESS's paused and unenforced vaccine mandate now.

> **2.    NTESS is Not a Government Actor and, Therefore, Plaintiffs' Constitutional Law Claims All Fail.**

Plaintiffs also failed to demonstrate a likelihood of success on the underlying merits of their claims. It is unclear from both the Complaint (Doc. No. 1) and Plaintiffs' Temporary Restraining Order (Doc. No. 2) papers exactly what underlying substantive legal basis Plaintiffs

are relying on to support their request for a preliminary injunction against NTESS. Giving those papers a generous reading, however, Plaintiffs appear to contend that NTESS is either a state or federal actor that violated 42 USC § 1983 and various Amendments of the U.S. Constitution by implementing its (now withdrawn) vaccine requirement.[3] Plaintiffs' arguments are flawed because NTESS is a private party, not a state or federal actor, and therefore Plaintiffs have no viable constitutional claims against NTESS.

### a.    NTESS Is Not A State Actor.

"The provisions of § 1983 only apply to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state statute, ordinance, regulation, custom or usage." *Janny v. Gamez*, 8 F.4th 883, 918 (10th Cir. 2021). When constitutional claims are asserted against a private party, to be classified as a state actor acting under color of law, the private party "must be jointly engaged with the state officials in the conduct allegedly violating the federal right." *Id*. at 919 (internal quotations omitted).

Courts apply various tests when analyzing the state actor requirement, including (1) the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship

---

[3] Count I is for "Injunctive Relief Barring Vaccine Mandates" based on the alleged "fundamental right to bodily integrity," which is not a legally viable cause of action. Reading further, Count I cites *Planned Parenthood v. Casey*, 505 U.S. 833, 835 (1992), in which the plaintiff alleged that Pennsylvania's law regulating abortion violated 42 USC § 1983 and the Fourteenth Amendment of the United States Constitution. Based on Plaintiffs' citation to *Casey*, it appears that Plaintiffs here are likewise purporting to assert a cause of action against NTESS for violation of 42 USC § 1983 and the Fourteenth or other Amendments.

Count II provides Plaintiffs no assistance. That count seeks a declaratory judgment that the Executive Order is invalid and that there exists "a constitutional right to bodily integrity that permits American citizens to refuse taking a vaccine without consequences." Neither of these issues are properly before the Court. NTESS did not issue the Executive Order, and other courts—including the 11th Circuit—are already analyzing the authority of the Executive Order itself. Westlake Decl. ¶ 17, 18, Exs. H, I. Moreover, defendants are not the proper parties to sue to challenge the Executive Order or declare new constitutional rights.

test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). "Each test really gets at the same issue—is the relation between a nominally private party and the alleged constitutional violation sufficiently close as to consider the nominally private party a state entity for purposes of section 1983 suit?" *Janny*, 8 F.4th at 919.

Plaintiffs failed to submit any evidence establishing that NTESS is a state actor under any test because they cannot. With respect to the joint action or nexus tests, which focus the conduct challenged by the lawsuit,[4] neither the state of New Mexico nor any other state had any connection to or involvement with the challenged action here: NTESS's implementation and enforcement of the Executive Order's vaccine mandate. Declaration of Mary Ann Monson in Support of NTESS's Opposition to Motion for Temporary Restraining Order ("Monson Decl."), Ex. 3, ¶ 3. NTESS was required by its M&O Contract to implement the Executive Order's vaccine mandate and did so without any direction, input, or guidance from the State of New Mexico or any other state. *Id*. NTESS therefore cannot be considered a state actor under either the joint action or nexus tests. *Janny*, 8 F.4th at 919 ("When a constitutional claim is asserted against private parties, to be classified as state actors under color of law they must be jointly engaged with state officials in the conduct allegedly violating the federal right") (internal quotations omitted); *Wittner v. Banner Health*, 720 F.3d 770, 776 (10th Cir. 2013) (nexus and joint action tests not applicable because, respectively, the state did not exercise "coercive power" over the challenged conduct nor acted in concert in effecting a particular deprivation of constitutional rights).

---

[4] For example, under the joint action test, "a plaintiff must demonstrate the public and private actors reached agreement upon a common, unconstitutional goal, and took concerted action to advance that goal." *Id*. at 919. Under the nexus test, "a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct" by the private party "such that the conduct 'may be fairly treated as that of the State itself." *Id*. at 925

Moreover, the public function test is not applicable because NTESS's (now halted) vaccine mandate that required SNL's employees to become vaccinated was not a *state* function or activity. *Wittner*, 720 F.3d at 776 ("The 'public function' test asks whether the challenged action is a traditional and exclusive function of the state.").  The symbiotic relationship (or entwinement) test, which requires a "heavily interdependent relationship" between the alleged state actor and the state (*id*., at 779), is similarly inapplicable here because NTESS, as a federal contractor, operates completely independently of the State of New Mexico.  Monson Decl., Ex. 3, ¶ 3. In sum, there is no evidence to support any argument that NTESS is a state actor.

Notwithstanding, Plaintiffs allege in their Complaint that NTESS is a state actor because New Mexico allegedly authorized SNL to be a vaccination clinic for members of the public, and NTESS allegedly worked with the New Mexico Department of Health to create a contact tracing program implemented by New Mexico.  This argument is both factually incorrect and legally immaterial.   Monson Decl., Ex. 3, ¶¶ 3-5.

First, NTESS has never offered vaccines to the general public; it only offered vaccines to its own employees, onsite subcontractors and national security designated individuals.  Declaration of John Bradley Dickerson in Support of NTESS's Opposition to Motion for Temporary Restraining Order ("Dickerson Decl., Ex. 4,"), Ex. 4, ¶ 2.  Second, NTESS applied for and entered into a COVID-19 vaccination program provider agreement with the *Center for Disease Control* (CDC), just like every private pharmacy, medical clinic and other private healthcare organization would need to do to receive and administer the COVID-19 vaccine.  The New Mexico Department of Health then approved NTESS/SNL to participate in the CDC COVID-19 Vaccination Program, as the federal government had distributed vaccines to the states, which then doled doses out to

NTESS OPPOSITION TO MOTION FOR TRO OR PRELIMINARY INJUNCTION

CDC-approved providers.  Dickerson Decl., Ex. 4, ¶ 4.

Third, even if NTESS may have partnered or contracted with the State of New Mexico to provide vaccines to its own employees or helped develop New Mexico's infection contact tracing program, it received no state funds and, contracting with the state does not establish that NTESS is a state actor under any of the tests. *See, e.g., Gallagher*, 49 F.3d at 1448 (the fact that a private party contracts with the government or receives governmental funds or other kinds of governmental assistance is not enough to transform a private party's conduct into state action); *id*. at 1453 ("Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity."); *Wittner*, 720 F.3d at 776 (the allegation that defendant receives state funding does not create state action when there is no allegation that the state used its funding to coerce the particular challenged conduct).  Indeed, under Plaintiffs' theory, every company that contracts to perform services for a state government would instantly become state actors subject to constitutional requirements, which is not the law.  Nor does providing vaccines to its own employees make NTESS a state actor under the public function test because that function is not something that is exclusively reserved to the state (and in fact occurs in private doctors' offices, drug stores, grocery stores, and more). *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (the simple fact that "a private entity performs a function which serves the public does not make its acts state action"); *Gallagher*, 49 F.3d at 1451("the performance of important public functions do[es] not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action").

Because Plaintiffs submitted no evidence that NTESS is a state actor, their constitutional

claims fail, and Plaintiffs are not likely to succeed on the merits of these claims. *See, e.g., Beckerich v. St. Elizabeth Med. Center*, 2021 WL 4398027, at *3 (E.D. Ky. Sept. 24, 2021) ("Put simply, without establishing that Defendants are state actors, Plaintiffs' constitutional claims cannot stand, and thus have zero likelihood of success on the merits").

> **b.**    **NTESS is Not Federal Actor and, Even If It Was, Plaintiffs Cannot Assert A Viable Claim on that Basis.**

Plaintiffs allege that NTESS is not just a state actor, but it is also a federal actor acting under the color of federal law given its contract with the DOE.   This allegation only suggests that NTESS is a federal *contractor* – which is why it was required to comply with the Executive Order – and is insufficient for the Court to find that NTESS is a federal *actor*. *See, e.g., Gallagher*, 49 F.3d at 1451 (even "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action"); *United States v. N.M.*, 455 U.S. 720, 739-40 (1982) (concluding that DOE contractors like NTESS were not instrumentalities of the federal government because the contractors were "privately owned corporations; Government officials do not run [their] day-to-day operations nor does the Government have any ownership interest" and the fact that "the federal property involved was being used for the Government's benefit—something that by definition will be true in virtually every management contract—was irrelevant, for the contractors remained dis-tinct entities pursuing private ends, and their actions remained commercial activities carried on for profit" (internal quotations omitted)); *Rendell-Baker*, 457 U.S. at 841  ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Jackson v. Metro. Edison Co*., 419 U.S. 345, 350 (1974) (the mere

NTESS OPPOSITION TO MOTION FOR TRO OR PRELIMINARY INJUNCTION

fact that a business is subject to government regulation does not convert its action to that of the state, nor does the fact that the regulation is extensive and detailed); *Mineo v. Transp. Mgt. of Tenn., Inc.*, 694 F. Supp. 417, 419, 424 (M.D. Tenn. 1988) (no symbiotic relationship even though private company's "sole function … was to manage and operate Nashville's transit system" and even though the government supplied company with "equipment, office space, furniture and supplies").

Even if NTESS were a federal actor (and it is not), Plaintiffs still have no viable cause of action to assert constitutional claims against NTESS because Section 1983 actions apply only to defendants acting under color of *state* law, not federal law. *See* 42 U.S.C. § 1983; s*ee also Bivens v. Six Un-known Federal Narcotics Agents*, 403 U.S. 388, 398 n.1 (1971) (no recovery may be had from any of the federal defendants under § 1983); *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976) (Section 1983 has no application to federal officers acting pursuant to federal law); *Martinez v. The Geo Group, Inc.*, 2020 WL 2496063, at *14 (C.D. Cal. Jan. 7, 2020) (Section 1983 provides no right of action against federal—rather than state—actors).

The federal analogue to Section 1983 is an implied right of action under *Bivens*, to which Plaintiffs make a passing reference in their Complaint.  The Supreme Court, however, has made clear that plaintiffs cannot bring a *Bivens* action against private corporate defendants, like NTESS, *even if* those private corporate defendants are acting under color of federal law.  *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (there is no implied private right of action under *Bivens* against private entities that engage in alleged constitutional deprivations while acting under color of federal law); *Menteer v. Applebee*, 196 Fed App'x 624, 627 (10th Cir. 2006) (affirming trial court's dismissal of plaintiff's Bivens claim against private corporate defend-ant). What's

more, the Supreme Court recently admonished against expanding *Bivens* actions into "new" contexts, *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017), and this is certainly a new context. Plaintiffs identify no precedent where employees were allowed to bring a *Bivens* action against a federal actor (which NTESS is not) based on a vaccine requirement.[5]  *Cf. Bush v. Lucas*, 462 U.S. 367 (1983) (holding that Bivens could not be used for a First Amendment claim by a federal employee against his supervisor).[6]

### D.   PLAINTIFFS CANNOT SHOW THAT THEY WILL SUFFER IRREPARABLE HARM.

To qualify for an injunction, Plaintiffs must show they will suffer an injury that is "both certain and great" and cannot be adequately compensated with money damages.  *Colorado v.*

---

[5] Moreover, Plaintiffs cannot assert a violation of the Fourteenth Amendment against federal actors as a matter of law.  *See San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 543 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State. The claimed association in this case is between the USOC and the Federal Government. Therefore, the Fourteenth Amendment does not apply."); *Taylor v. Donley*, 2010 U.S. Dist. LEXIS 21780, at *3 (E.D. Cal. Mar. 10, 2010) ("The plain language of the [Fourteenth] amendment reflects that these provisions apply to states and not to the federal government or its employees").

[6] Even if NTESS was government actor (it is not), a mandatory vaccination program for employees does not violate the Constitution. The Second Circuit has held that such an argument is "foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905)." *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015). *Jacobson* "settled that it is within the police power of a state to provide for compulsory vaccination." *Zucht v. King*, 260 U.S. 174, 176 (1922). The requirement at issue here is even narrower than the one in *Jacobson*—Jacobson's applied to all residents, whereas NTESS's applies only to its employees and suppliers. Recent decisions confirm that Jacobson is still the law of the land. *Klaassen v. Trustees of Indiana University*, 2021 WL 3073926 (N.D. Ind. July 18, 2021); *Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, 2021 WL 3471585 (S.D. Fla. Aug. 8, 2021).

Moreover, numerous courts have upheld vaccine mandates identical to the one at issue here. *Valdez v. Grisham*, 2021 WL 4145746, at *13 (D.N.M. Sept. 13, 2021) (denying request for preliminary injunction enjoining New Mexico Department of Health's order requiring school and health workers to be fully vaccinated), appeal docketed, No. 21-2105 (10th Cir. Sep. 15, 2021); *Norris v. Stanley*, 2021 WL 3891615, at *3 (W.D. Mich. Aug. 31, 2021); *Streiff v. Pritzker*, 2021 WL 4306146, at *8 (N.D. Ill. Sep. 22, 2021); *Maniscalo v. New York City Dep't of Educ.*, 2021 WL 4344267, at *6 (E.D.N.Y. Sept. 23, 2021), appeal docketed, No. 21-2343 (2d Cir. Sep. 24, 2021); *Children's Health Defense, Inc. v. Rutgers, The State Univ. of New Jersey*, 2021 WL 4398743, at *8 (D.N.J. Sep. 27, 2021); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 296 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *Shawn Phillip Rhoades, et al. v. Savannah River Nuclear Sols., LLC, Defendant.*, 2021 WL 5761761, at *20 (D.S.C. Dec. 3, 2021).

*United States EPA,* 989 F.3d 874, 884 (10th Cir. 2021).   An injury that is speculative or compensable with money damages is insufficient to show irreparable harm. *Id.* Importantly, "the injury must also be of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* Here, Plaintiffs attempt to identify two alleged irreparable harms: infringement of their constitutional rights caused by vaccine requirement and various consequential damages they allegedly will suffer. Neither are sufficient to warrant an injunction.

First, as explained, there is no clear and present need for equitable relief to prevent Plaintiffs' alleged irreparable harm because NTESS has halted implementation of the Executive Order's vaccine mandate, and the requirement may never be reinstated. The Court should not grant injunctive relief to prevent alleged speculative harm that might be created by a vaccine mandate that has been paused. No one is forcing any employee to be vaccinated against their will.

Second, even if this dispute has not become moot, Plaintiffs' constitutional rights are not at issue here, as explained above, because Defendants are not state or government actors. Thus, Plaintiffs' constitutional law argument cannot establish irreparable harm. *See Beckerich*, 2021 WL 4398027, at *6, *9 (denying injunction against COVID-19 vaccine mandate and rejecting irreparable harm argument based on constitutional law claims because defendants were not state actors).

Plaintiffs' other bases for irreparable harm amount to typical consequential damages that a plaintiff might claim in any wrongful termination lawsuit from no longer receiving a salary, such as losing insurance coverage, assets, and homes. This is not irreparable harm, but harms that can be remedied by damages following a trial. *Schrier*, 427 F.3d at 1267("simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by

monetary damages"); *McDonough v. New Mexico Highlands Univ.*, 1999 WL 35809011, at *3 (D.N.M. Aug. 5, 1999) ("Courts have been reluctant to grant injunctive relief in situations where an employee is going to be terminated because of lack of irreparable harm and the availability of adequate legal remedies.").  "In fact, wrongful termination claims exist for that very reason— whether brought under the ADA, Title VII, or some other state or federal law, a wrongfully terminated plaintiff can receive monetary damages to compensate their loss of employment." *Beckerich*, 2021 WL 4398027 at *16 (rejecting loss of employment as an irreparable harm); *Chavez v. Judd*, 2018 WL 4684206, at *2 (D.N.M. Sept. 28, 2018) (denying a request under Rule 65 and declining to consider the remaining elements when plaintiff failed to make a threshold showing of "immediate and irreparable harm").  To the extent that Plaintiffs argue that their professional reputations may be damaged, courts routinely decline to find that this sort of speculative damage constitutes irreparable harm. *Barrington*, 2021 WL 4840855, *6 ("Plaintiff's claims that her home will go into foreclosure, that her career will be destroyed, and that no future employer will ever be willing to hire her are speculative.").  Plaintiffs have not provided any evidence showing if or when their security clearances will lapse, and this is pure speculation as well.[7]  Moreover, NTESS does not grant or deny security clearances.

---

[7] More to the point, courts including in the District of New Mexico have consistently rejected claims that COVID-19 vaccine policies cause irreparable nonmonetary harms. *See Valdez v. Grisham*, 2021 U.S. Dist. LEXIS 173680 (D.N.M. Sept. 13, 2021) ("potential termination and/or inability to continue to work as a nurse" not irreparable harm); *Reese v. Tyson Foods, Inc.*, 2021 U.S. Dist. LEXIS 228676, W.D. Mo. Nov. 30, 2021) (permanent leave without pay and the loss of salary, pay, and earned annual bonus does not constitute irreparable harm; *Barrington v. United Airlines*, 2021 U.S. Dist. LEXIS 201633, 2021 WL 4840855, at *7 (D. Colo. Oct. 14, 2021) (denying employee's motion for a temporary restraining order where private employer's COVID-19 vaccine policy provided unpaid leave as accommodation, finding "simple economic loss" does not constitute irreparable harm; *Johnson v. Brown*, 2021 U.S. Dist. LEXIS 200159, 2021 WL 4846060, at *25 (D. Ore. Oct. 18, 2021) (fears about paying bills finding another job, or paying for medical care are "routine," not "irreparable," and are "compensable by money damages"); *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 U.S. Dist. LEXIS 183757, 2021 WL 4398027, at *6 (E.D. Ky. Sept. 24, 2021) ("broader implications" of vaccination policies do not support preliminary injunction because irreparable harm "must be actually suffered by the plaintiffs in question"); *Norris v. Stanley*, 2021 U.S. Dist. LEXIS

Plaintiffs also cannot present irreparable harm because they unreasonably delayed in seeking relief. *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1544-45 (10th Cir. 1994) ("delay in seeking preliminary relief cuts against finding irreparable injury").  Here, NTESS announced its vaccine requirement on October 5, 2021. Plaintiffs then waited almost three months to file this lawsuit on December 22, 2021 and did so in an obviously improper forum in Amarillo, Texas.

**E.     THE HARM TO NTESS AND THE PUBLIC INTEREST WEIGH HEAVILY AGAINST GRANTING PLAINTIFFS' REQUESTED INJUNCTION.**

The balancing of the hardships and public interests tip sharply in favor of NTESS. Any injunction that blocked or otherwise limited NTESS's ability to comply with the Executive Order, if it is later upheld, could negatively impact NTESS's operations and jeopardize public health.  In contrast, Plaintiffs argue that if the vaccine requirement were not enjoined, they might suffer job loss, which would be compensable through monetary damages. Plaintiffs, however, have options if the Executive Order is upheld and NTESS begins enforcing the Executive Order's vaccine mandate at some later date (which may never happen): "if an employee believes his or her individual liberties are more important than legally permissible conditions on his or her employment, that employee can and should choose to exercise another individual liberty, no less significant - the right to seek other employment." *Beckerich*, 2021 WL 4398027 at *9.

**F.     THE COURT SHOULD DISMISS THIS ACTION OUTRIGHT.**

The Supreme Court has made clear that this Court's review of a plaintiff's motion for an injunction is not "confined" to the plaintiff's request for relief, but the Court may enter judgement

---

168444, 2021 WL 3891615, at *8-9 (W.D. Mich. Aug. 31, 2021) (lost pay and benefits from termination for refusing COVID-19 vaccine not irreparable harm warranting injunctive relief).

for a defendant where "it is plain that the plaintiff cannot prevail." *Munaf v. Geren*, 553 U.S. 674, 691) (2008) ("Adjudication of the merits [of a lawsuit] is most appropriate if the injunction rests on a question of law and it is plain that the plaintiff cannot prevail. In such cases, the defendant is entitled to judgment").  Here, not only is it plain from the record that this lawsuit is moot, but it is also clear that Plaintiffs cannot assert constitutional claims against NTESS because it is a private company, not a state or federal actor.  This Court should dismiss this lawsuit outright.[8]

## III.    CONCLUSION

The Court should deny Plaintiffs' motion for injunctive relief and dismiss this lawsuit.

Respectfully submitted,

By */s/ Cindy Lovato-Farmer*
           Cindy Lovato-Farmer
National Technology & Engineering Solutions of Sandia, LLC,
d/b/a Sandia National Laboratories
1515 Eubank SE
Mail Stop 0141
Albuquerque, New Mexico 87123-0141
Tel: (505) 284-5284;  Fax: (505) 844-2363
cinlova@sandia.gov

and

Michael D. Weil (pro hac vice application pending)
Andrea Fellion (pro hac vice application pending)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
michael.weil@morganlewis.com

**Counsel for Defendant NTESS**

---

[8] NTESS intends to file a motion to dismiss under FRCP Rule 12(b)(1) and 12(b)(6) on the grounds that this dispute is moot, and Plaintiffs did not, and cannot, state a claim against NTESS.  NTESS requests that the Court consider all motions together.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

N. Ana Garner
Attorney for Plaintiffs
206 W. Main St.
Farmington, NM 87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com

Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM 88051
(575) 535-2760
jonmdiener@gmail.com

Warren V. Norred
Attorney for Plaintiffs
515 E. Border St., Arlington, Texas 76010
T (817) 704-3984, F (817) 524-6686
wnorred@norredlaw.com

/s/ Cindy Lovato-Farmer
Cindy Lovato-Farmer