IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SNL WORKFORCE FREEDOM
ALLIANCE, DAVID PETERSON, JON
BROOKS, ANNA BURNS, JOHN DOE
#1, JANE DOE #1,

    Plaintiffs,

v.              Case No. 1:22-cv-00001-KWR-SCY

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA LLC d/b/a SANDIA NAT'L
LABORATORIES, HONEYWELL
INTERNAT'L, INC.,

    Defendants.

**NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA LLC'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FEDERAL RULE 12(b)(1), AND IN THE ALTERNATIVE, MOTION TO DISMISS FOR <u>FAILURE TO STATE A CLAIM UNDER RULE  12(b)(6)</u>**

**I.  INTRODUCTION**

  Defendant National Technology and Engineering Solutions of Sandia, LLC ("NTESS") is a privately held company that operates Sandia National Laboratory ("NLL") under a Management and Operating contract with the U.S. Department of Energy's National Nuclear Security Administration ("DOE/NNSA").  As a private government contractor, NTESS was required to comply with President Biden's Executive Order 14042 (the "Executive Order").  The Executive Order required federal contractors to ensure that all employees who work on or in connection with a federal contract to be fully vaccinated against COVID-19 or receive approval for a medical or

religious exemption.

In October 2021, NTESS implemented a vaccine mandate for its approximately 14,000 employees that was consistent with the Executive Order's requirements. On December 7, 2021, a federal district court in Georgia entered a nationwide injunction temporarily suspending the Executive Order. It is NTESS's intention to follow the developments of the legal proceedings impacting the Executive Order and continue to comply with applicable requirements. Following the Georgia court's order, there were several attempts by the government to stay enforcement of the injunction, which seemed to have all failed by late December. On January 5, 2022, NTESS announced to its employees that it had paused its vaccine requirement pending any changes to the legal proceedings impacting the Executive Order.

Although NTESS alerted Plaintiffs that its vaccine enforcement of the Executive Order's vaccine mandate had been paused, Plaintiffs nonetheless seek to proceed with this lawsuit. The Court should dismiss this case for several reasons.

First, NTESS's decision to pause its vaccine mandate renders Plaintiffs' lawsuit moot because there is no case or controversy pending before this Court. The Court, therefore, lacks subject matter jurisdiction, and the Court should dismiss this lawsuit pursuant to FRCP 12(b)(1).

Second, the Court should dismiss Plaintiffs Peterson, Brooks, the Anonymous Doe Plaintiffs, and SNL Workforce Freedom Alliance's claims because they each lack standing. Specifically, as former employees, Peterson and Brooks lack standing to seek injunctive or declaratory relief. The Anonymous Doe Plaintiffs lack standing because Plaintiffs failed to submit sufficient reasons or evidence as to why those plaintiffs can remain anonymous. Finally, SNL Workforce Freedom Alliance lacks standing because unincorporated associations cannot bring

claims for violation of constitutional rights under 42 USC section 1983, which is the crux of Plaintiffs' entire lawsuit.

Third, the Court should dismiss this suit pursuant to FRCP 12(b)(6) because Plaintiffs failed to plead sufficient facts to demonstrate that NTESS is a government actor (it is not) and therefore Plaintiffs' constitutional law claims fail as a matter of law. Indeed, this flaw in Plaintiffs' lawsuit cannot be remedied by an amended pleading, and the Court should dismiss this lawsuit with prejudice.

## II.  BACKGROUND

### A.  NTESS OPERATES SANDIA NATIONAL LABORATORIES.

NTESS is a private Limited Liability Corporation and wholly owned subsidiary of Honeywell International Inc. NTESS manages and operates Sandia National Laboratories (SNL) pursuant to Contract No. DE-NA0003525 (hereinafter "the M&O Contract") that NTESS entered into with the U.S. Department of Energy (DOE National Nuclear Security Administration (NNSA)). Declaration of Kelly Westlake in Support of NTESS's Opposition to Motion for Temporary Restraining Order [Doc 24] ("Westlake Decl.") ¶ 2; Complaint ("Compl."), ¶ 10. SNL is not a separate legal entity. It is simply a physical space owned by the Department of Energy. *Id*. NTESS directly employs more than 14,000 individuals, and employs or employed Plaintiffs David Peterson, Jon Brooks, and Anna Burns. Westlake Decl., ¶¶ 4, 20.

### B.  AS A FEDERAL CONTRACTOR, NTESS MUST ABIDE BY FEDERAL REGULATIONS APPLICABLE TO IT, INCLUDING EXECUTIVE ORDER 14042, WHICH REQUIRES COVID-19 VACCINATIONS.

As a federal contractor, NTESS is required to comply with federal regulations applicable to it, many of which are effectuated through the terms of NTESS's M&O contract with the DOE. For example, the M&O Contract provides that the Contracting Officer may, "from time to time and at any

time, *unilaterally* modify the Contract to revise, add or delete" Federal Acquisition Regulation (FAR), or DOE Acquisition Regulation (DEAR) clauses contained in section H of the M&O contract due to changes in the law or regulations or policy resulting from the approval of new deviations." Unilateral modifications to the M&O Contract can be made if there are changes to the FAR, DEAR, or Section H clauses (Special Contract Requirements) that result from the approval of new deviations to existing FAR, DEAR, or Section H clauses. Westlake Decl., ¶ 5.

In order to provide the heads of federal agencies ongoing guidance to keep their employees safe during the COVID-19 pandemic, President Biden created The Safer Federal Workforce Task Force. In July 2021, the Safer Workforce Task Force required that "onsite contractors who are not fully vaccinated or decline to provide their vaccination status must wear a mask, physically distance and comply with a weekly or twice-weekly screening testing requirement and are subject to Government-wide restrictions on official travel." Westlake Decl., ¶ 6, Ex. A.

On September 9, 2021, President Biden signed Executive Order No. 14042 ("Executive Order"), "Ensuring Adequate COVID Safety Protocols for Federal Contractors." This Executive Order applies to federal contractors like NTESS. Westlake Decl., ¶ 7. On September 24, 2021, the Safer Workforce Task Force issued updated guidance for federal contractors and subcontractors, which are covered by the Executive Order, and which requires, among other things, that all covered contractor employees be fully vaccinated by December 8, 2021 unless they are legally entitled to an accommodation. Westlake Decl., ¶ 8.

Because NTESS was required to comply with both the Executive Order and its guidance, NTESS announced its intention to institute a vaccination requirement. On October 5, 2021, NTESS's Lab Director issued a communication informing NTESS's workforce of the Executive Order as well as NTESS's anticipation that the vaccination mandate would require all workforce members and

subcontractors to be fully vaccinated against COVID-19 by December 8, 2021, subject to medical or religious exemptions.  Westlake Decl., ¶ 9, Ex. B.

On October 12, 2021, the DOE issued DOE Order 350.5 COVID Safety Protocols for Federal Contractors.  The Order directs the requirements in Executive Order 14042 be included in M&O Contracts.  Westlake Decl., ¶ 10. Accordingly, on October 14, 2021, the DOE/NNSA unilaterally modified NTESS's M&O contract by adding the requirements in DOE Order 350.5 and FAR 52.223-99, which requires NTESS to implement the Executive Order and comply with all guidance published by the Safer Federal Workforce Task Force.  Westlake Decl., ¶ 11.  On November 10, 2021, the Safer Workforce Task Force issued guidance extending the deadline for federal contractor employees to be fully vaccinated from December 8, 2021 to January 18, 2022.  Westlake Decl., ¶ 13.

In line with these requirements, NTESS issued a November 16, 2022 announcement extending the deadline for NTESS employees to be fully vaccinated until January 18, 2022.  In this announcement, NTESS also noted that unvaccinated employees could use accrued vacation and flex time (paid time off) as well as up to 160 hours of unpaid time off after January 18, 2022 in order to give them additional time to consider becoming vaccinated.  Westlake Decl., ¶14, Ex. E.

    **C.    NTESS PAUSED ITS VACCINATION REQUIREMENT BECAUSE A DISTRICT COURT ENTERED A NATIONWIDE INJUNCTION ENJOINING EXECUTIVE ORDER 14042.**

On December 7, 2021, Judge R. Stan Baker of the United States District Court for the Southern District of Georgia (the "Georgia District Court") issued a nationwide injunction halting the enforcement of Executive Order. Westlake Decl., ¶ 15. Because it was still unclear whether the order would be stayed or quickly reversed before the Executive Order's requirements would

become effective, on December 8, 2021, NTESS issued a Special Announcement reminding their workforce that they should be prepared to comply with the January 18, 2022 deadline to be fully vaccinated. While NTESS acknowledged the injunction against the Executive Order, because the litigation was in its early stages, NTESS noted that it still planned to comply with the guidance and requirements published by the Safer Federal Workforce Task Force. Westlake Decl., ¶ 16, Ex. F.

On December 9, 2021, the attorneys defending the Executive Order filed a Notice of Appeal to the 11th Circuit as well as a Motion to Stay the Georgia District Court's injunction halting enforcement of the Executive Order until the 11th Circuit could rule. Westlake Decl., ¶ 17. On December 21, 2022, the attorneys defending the Executive Order withdrew their request that the Georgia District Court stay its December 7, 2021 order granting the plaintiffs' motions for a preliminary injunction pending the completion of their appeal to the United States Court of Appeals for the Eleventh Circuit. The Georgia District Court denied the emergency stay on December 23, 2021. Westlake Decl. ¶ 18. On December 29, 2021, the 11th Circuit denied the government's request to expedite the proceedings. Briefing in that case will not be complete until late February, and the 11th Circuit will not conduct a hearing until at least April. Request for Judicial Notice in Support of Opposition to Motion for Temporary Restraining Order ("RJN") [Doc 25] Exs. 1-3.

Because it appeared that the Executive Order would be enjoined for some time if not permanently, NTESS issued a January 5, 2022 Special Announcement informing the workforce that it was pausing enforcement of the Executive Order vaccine mandate and would instead be implementing a serial testing programs beginning January 18, 2022. Westlake Decl., ¶ 19, Ex. G.

**D.     NTESS REQUESTED THAT PLAINTIFFS WITHDRAW THIS MOTION, BUT THEY REFUSED.**

On January 5, 2021, NTESS's counsel contacted Plaintiffs' counsel to invite a discussion about how the pause on enforcement of the Executive Order vaccine mandate impacted this litigation.  Counsel spoke on January 6.  NTESS's counsel explained that NTESS paused its enforcement of the Executive Order vaccine mandate and intended to track the pending litigation over the Executive Order.  Given these developments, NTESS's counsel explained that this litigation is moot and invited Plaintiffs' counsel to dismiss the lawsuit.  Plaintiffs' counsel declined.  Declaration of Michael Weil in Support of NTESS's Opposition to Motion for Temporary Restraining Order ("Weil Decl.") ¶ 2, Ex. A.  Continuing to litigate about a vaccine requirement that is not being enforced is a waste of this Court's and the parties' time and, as explained below, the Court should dismiss this case.

**III.     LEGAL ARGUMENT**

**A.     The Court Should Dismiss This Lawsuit Pursuant to FRCP 12(b)(1) Because the Case Is Moot.**

The Court should dismiss this action under FRCP 12(b)(1) because it lacks subject matter jurisdiction over a moot claim.  Federal courts exercising judicial authority are "confine[d] ... to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry,* 570 U.S. 693 704, (2013) (quoting U.S. Const. art. III, § 2).  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 US 43, 67 (1997) (internal quotes omitted).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 US 277, 287 (2000).

Here, Plaintiffs' Complaint and the relief they seek by their Complaint are narrowly

focused on NTESS's now paused vaccine requirement. NTESS has stopped enforcement of that vaccine requirement, pending the court proceedings on the Executive Order, which may remain enjoined indefinitely. No decision from the 11th Circuit is expected at least until April, if not later, and the Supreme Court may then take up the case. RJN Exs. 2,3. Plaintiffs therefore have no continuing real or expected imminent alleged injury from NTESS's repealed vaccine requirement. Where a plaintiff, like these Plaintiffs, seeks to challenge "a requirement that no longer burdens or applies to the plaintiff, a federal court lacks jurisdiction to adjudicate the plaintiff's claim." *Wade v. Univ. of Connecticut Bd. of Trustees*, 2021 WL 3616035, at *7 (D. Conn. Aug. 16, 2021) (denying motion for injunctive relief as moot because the university's COVID-19 vaccination requirement no longer applied to the plaintiffs); *Pietrangelo v. Sununu*, 15 F.4th 103, 106 (1st Cir. 2021) (dismissing plaintiff's appeal of denial of injunctive relief concerning COVID-19 vaccine distribution because Plaintiff had since been vaccinated).

       Plaintiffs may argue in response that NTESS could reinstate its vaccine policy at any time and, therefore, this case presents a live controversy. Plaintiffs' mere speculation that NTESS may at some undetermined time in the future reinstate its vaccine requirement is not enough to defeat mootness. *Wade*, 2021 WL 3616035, at *8 (rejecting argument that the university could withdraw vaccine exemptions at any time because "a speculative possibility of future revocation of an exemption is not enough to defeat mootness."); *Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (challenge to pandemic suspension of fingerprinting for firearms permits was moot in light of evidence showing resumption of fingerprinting and only a speculative possibility that the suspension of fingerprinting would be reimposed).

       Here, NTESS instated the vaccination requirement because the Executive Order required

it. Westlake Decl., ¶ 9, Ex. B.  Whether or when the Executive Order becomes effective again – it is currently unclear whether it will ever happen – is speculative, at best.  If the 11th Circuit upholds the Executive Order as lawful, then NTESS would be required to follow it.  Plaintiffs then would have plenty of time to re-file their Complaint if they still somehow contended that, even after thorough judicial review, the Executive Order's requirements are unlawful.  This speculative and hypothetical scenario is not a basis to continue to litigate over NTESS's paused and unenforced vaccine mandate now.

> **B.** **The Court Should Dismiss Plaintiffs Peterson, Brooks, the Anonymous Does, and SNL Workforce Freedom Alliance's Claims Because They Lack Standing.**

Federal Rule of Civil Procedure 12(b)(1) applies to challenges to a plaintiff's standing. A court lacking jurisdiction "cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted).

Here, Plaintiffs seek injunctive and declaratory relief.  Plaintiffs David Peterson and Jon Brooks, however, are no longer NTESS employees and, thus, they do not have standing to seek an injunction enjoining NTESS.  *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465–66 (S.D. N.Y. 2013) ("[A] plaintiff generally lacks standing to seek injunctive or declaratory relief against his or

her former employer, as there is no prospect that he or she will be injured in the future.").

NTESS joins in co-defendant Honeywell's argument that the anonymous Doe Plaintiffs are not proper parties – and lack standing – because Plaintiffs have not plead sufficient facts to warrant allowing them to proceed anonymously. *See Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000); *Trujillo v. Cent. New Mexico Corr. Facility*, 2020 WL 7630676, at *4 (D.N.M. Dec. 22, 2020) ("there is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit").

NTESS further contends that Plaintiffs have not, and cannot, plead sufficient facts to establish that "SNL Workforce Freedom Alliance" (SWFA) has standing or capacity to sue under FRCP 17 as an unincorporated association. As noted, *infra*, the Counts in Plaintiffs' Complaint are both rooted in their contention that NTESS violated their constitutional rights, which is effectively an action under 42 USC section 1983. The Tenth Circuit, however, has held that unincorporated associations are not "persons" as set forth in Section 1983 and therefore do not have standing to sue under Section 1983. *Lippoldt v. Cole*, 468 F.3d 1204, 1213 (10th Cir. 2006); *N.M. Transp. Union v. City of Albuquerque*, 2015 U.S. Dist. LEXIS 192387, *5-6 (D.N.M. Feb. 13, 2015) (dismissing complaint because unincorporated association lacked capacity or standing to sue under Section 1983). The Court should therefore dismiss "SNL Workforce Freedom Alliance's" claims.[1]

**B.    The Court Should Dismiss This Lawsuit Pursuant to FRCP 12(b)(6) Because**

---

[1] Even if the SWFA could sue for Section 1983 violations, Plaintiffs still failed to plead sufficient facts to support SWFA's standing or capacity to sue. The U.S. Supreme Court has held that an association has standing to sue on behalf of its members only if the following conditions are met: (1) the association's members would otherwise have standing in their own right, (2) the interest the association is seeking to protect is germane to the association's purpose, and (3) neither the claim asserted, nor the relief requested, requires participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs do not even try to plead these elements, nor can they

### Plaintiffs Failed to Plead Sufficient Facts Demonstrating that NTESS is a Government Actor.

If the Court finds that it has subject matter jurisdiction, it should nevertheless dismiss Plaintiffs' claims against NTESS under Rule 12(b)(6) because Plaintiffs fail to plead any plausible right to relief. It is well established that while the pleading standard under Federal Rule of Civil Procedure 8 does not require "detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To this end, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan-Arapahoe v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (2011) (*quoting Iqbal*, 556 U.S. at 679). In making this assessment, while this Court "must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, Plaintiffs First and Second Counts turn on whether NTESS is a state or federal actor.[2] Plaintiffs, however, fail to plead sufficient facts to support those claims.

---

[2] Count I is for "Injunctive Relief Barring Vaccine Mandates" based on the alleged "fundamental right to bodily integrity," which is not a legally viable cause of action. Reading further, Count I cites *Planned Parenthood v. Casey*, 505 U.S. 833, 835 (1992), in which the plaintiff alleged that Pennsylvania's law regulating abortion violated 42 USC § 1983 and the Fourteenth Amendment of the United States Constitution. Based on Plaintiffs' citation to *Casey*, it appears that Plaintiffs here are likewise purporting to assert a cause of action against NTESS for violation of 42 USC § 1983 and the Fourteenth or other Amendments.

Count II seeks a declaratory judgment that the Executive Order is invalid and that there exists "a constitutional right to bodily integrity that permits American citizens to refuse taking a vaccine without consequences." Neither of these issues are properly before the Court. NTESS did not issue the Executive Order, and other courts—including

1. **Plaintiffs Fail to Plead Sufficient Facts To Support Their Argument That NTESS Is A State Actor.**

"The provisions of § 1983 only apply to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state statute, ordinance, regulation, custom or usage." *Janny v. Gamez*, 8 F.4th 883, 918 (10th Cir. 2021). When constitutional claims are asserted against a private party, to be classified as a state actor acting under color of law, the private party "must be jointly engaged with the state officials in the conduct allegedly violating the federal right." *Id*. at 919 (internal quotations omitted).

Courts apply various tests when analyzing the state actor requirement, including (1) the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). "Each test really gets at the same issue—is the relation between a nominally private party and the alleged constitutional violation sufficiently close as to consider the nominally private party a state entity for purposes of section 1983 suit?" *Janny*, 8 F.4th at 919.

Here, Plaintiffs allege in their Complaint that NTESS is a state actor because New Mexico allegedly authorized SNL to be a vaccination clinic for members of the public, and NTESS allegedly worked with the New Mexico Department of Health to create a contact tracing program implemented by New Mexico. These allegations are insufficient to state a claim.

With respect to the joint action or nexus tests, which focus the conduct challenged by the

---

the 11th Circuit—are already analyzing the authority of the Executive Order itself. Westlake Decl. ¶ 17, 18. Moreover, defendants are not the proper parties to sue to challenge the Executive Order or declare new constitutional rights.

lawsuit,[3] Plaintiffs do not allege (nor can they) that the state of New Mexico nor any other state had any connection to or involvement with the challenged action here: NTESS's implementation and enforcement of the Executive Order's vaccine mandate. NTESS therefore cannot be considered a state actor under either the joint action or nexus tests. *Janny*, 8 F.4th at 919 ("When a constitutional claim is asserted against private parties, to be classified as state actors under color of law they must be jointly engaged with state officials in the conduct allegedly violating the federal right") (internal quotations omitted); *Wittner v. Banner Health*, 720 F.3d 770, 776 (10th Cir. 2013) (nexus and joint action tests not applicable because, respectively, the state did not exercise "coercive power" over the challenged conduct nor acted in concert in effecting a particular deprivation of constitutional rights).

Moreover, the public function test is not applicable because NTESS's (now halted) vaccine mandate that required SNL's employees to become vaccinated was not a *state* function or activity. *Wittner*, 720 F.3d at 776 ("The 'public function' test asks whether the challenged action is a traditional and exclusive function of the state."). The symbiotic relationship (or entwinement) test, which requires a "heavily interdependent relationship" between the alleged state actor and the state (*id.*, at 779), is similarly inapplicable here because, as Plaintiffs admit, NTESS is a *federal* contractor, and NTESS operates completely independently of the State of New Mexico. Indeed, contracting with the state does not establish that NTESS is a state actor under any of the tests. *See, e.g., Gallagher*, 49 F.3d at 1448 (the fact that a private party contracts with the government or

---

[3] For example, under the joint action test, "a plaintiff must demonstrate the public and private actors reached agreement upon a common, unconstitutional goal, and took concerted action to advance that goal." *Id.* at 919. Under the nexus test, "a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct" by the private party "such that the conduct 'may be fairly treated as that of the State itself." *Id.* at 925

13

receives governmental funds or other kinds of governmental assistance is not enough to transform a private party's conduct into state action); *id*. at 1453 ("Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity."); *Wittner*, 720 F.3d at 776 (the allegation that defendant receives state funding does not create state action when there is no allegation that the state used its funding to coerce the particular challenged conduct). Indeed, under Plaintiffs' theory, every company that contracts to perform services for a state government would instantly become state actors subject to constitutional requirements, which is not the law. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (the simple fact that "a private entity performs a function which serves the public does not make its acts state action"); *Gallagher*, 49 F.3d at 1451("the performance of important public functions do[es] not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action").

In sum, Plaintiffs did not (and cannot) plead sufficient facts sufficient to demonstrate that NTESS is a state actor. Accordingly, Plaintiffs are not likely to succeed on the merits of these claims. *See, e.g., Beckerich v. St. Elizabeth Med. Center*, 2021 WL 4398027, at *3 (E.D. Ky. Sept. 24, 2021) ("Put simply, without establishing that Defendants are state actors, Plaintiffs' constitutional claims cannot stand, and thus have zero likelihood of success on the merits").

### 2. NTESS is Not a Federal Actor and, Even If It Was, Plaintiffs Cannot Assert A Viable Claim on that Basis.

Plaintiffs allege that NTESS is not just a state actor, but it is also a federal actor acting under the color of federal law. Plaintiffs' only basis for this allegation is NTESS's contract with the DOE, which is insufficient because it only suggests that NTESS is a federal *contractor*, but

not federal *actor*. *See, e.g., Gallagher*, 49 F.3d at 1451 (even "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action"); *United States v. N.M.*, 455 U.S. 720, 739-40 (1982) (concluding that DOE contractors like NTESS were not instrumentalities of the federal government because the contractors were "privately owned corporations; Government officials do not run [their] day-to-day operations nor does the Government have any ownership interest" and the fact that "the federal property involved was being used for the Government's benefit—something that by definition will be true in virtually every management contract—was irrelevant, for the contractors remained distinct entities pursuing private ends, and their actions remained commercial activities carried on for profit" (internal quotations omitted)); *Rendell-Baker*, 457 U.S. at 841 ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) (the mere fact that a business is subject to government regulation does not convert its action to that of the state, nor does the fact that the regulation is extensive and detailed); *Mineo v. Transp. Mgt. of Tenn., Inc.*, 694 F. Supp. 417, 419, 424 (M.D. Tenn. 1988) (no symbiotic relationship even though private company's "sole function … was to manage and operate Nashville's transit system" and even though the government supplied company with "equipment, office space, furniture and supplies").

Even if NTESS were a federal actor (and it is not), Plaintiffs still have no viable cause of action to assert constitutional claims against NTESS because Section 1983 actions apply only to defendants acting under color of *state* law, not federal law. *See* 42 U.S.C. § 1983; *see also Bivens*

*v. Six Un-known Federal Narcotics Agents*, 403 U.S. 388, 398 n.1 (1971) (no recovery may be had from any of the federal defendants under § 1983); *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976) (Section 1983 has no application to federal officers acting pursuant to federal law); *Martinez v. The Geo Group, Inc.*, 2020 WL 2496063, at *14 (C.D. Cal. Jan. 7, 2020) (Section 1983 provides no right of action against federal—rather than state—actors).

The federal analogue to Section 1983 is an implied right of action under *Bivens*, to which Plaintiffs make a passing reference in their Complaint. The Supreme Court, however, has made clear that plaintiffs cannot bring a *Bivens* action against private corporate defendants, like NTESS, *even if* those private corporate defendants are acting under color of federal law. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (there is no implied private right of action under *Bivens* against private entities that engage in alleged constitutional deprivations while acting under color of federal law); *Menteer v. Applebee*, 196 Fed App'x 624, 627 (10th Cir. 2006) (affirming trial court's dismissal of plaintiff's *Bivens* claim against private corporate defend-ant). What's more, the Supreme Court recently admonished against expanding *Bivens* actions into "new" contexts, *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017), and this is certainly a new context. Plaintiffs identify no precedent where employees were allowed to bring a *Bivens* action against a federal actor (which NTESS is not) based on a vaccine requirement.[4] *Cf. Bush v. Lucas*, 462 U.S. 367 (1983) (holding that Bivens could not be used for a First Amendment claim by a federal

---

[4] Moreover, Plaintiffs cannot assert a violation of the Fourteenth Amendment against federal actors as a matter of law. *See San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 543 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State. The claimed association in this case is between the USOC and the Federal Government. Therefore, the Fourteenth Amendment does not apply."); *Taylor v. Donley*, 2010 U.S. Dist. LEXIS 21780, at *3 (E.D. Cal. Mar. 10, 2010) ("The plain language of the [Fourteenth] amendment reflects that these provisions apply to states and not to the federal government or its employees").

employee against his supervisor).

Because Plaintiffs have not and cannot plead sufficient facts to establish that NTESS is a government actor, the Court should dismiss the Complaint with prejudice. *See, e.g., Obduskey v. Fargo*, 2016 WL 4091174, at *8 (D. Colo. July 19, 2016) (finding "neither defendant is a state actor against whom a constitutional claim can be brought" and dismissing under Rule 12(b)(6)); *LeJon-Twin El v. Marino*, 2017 WL 1591856, at *4 (D.N.J. Apr. 28, 2017) (stating a Fourth Amendment "constitutional claim may be brought against a federal or state government actor, but not against a private employer" and dismissing under Rule 12(b)(6)).

### III. CONCLUSION

The Court should dismiss this lawsuit with prejudice.

Respectfully submitted,

By */s/ Cindy Lovato-Farmer*
Cindy Lovato-Farmer
National Technology & Engineering Solutions of Sandia, LLC,
d/b/a Sandia National Laboratories
1515 Eubank SE
Mail Stop 0141
Albuquerque, New Mexico 87123-0141
Tel: (505) 284-5284; Fax: (505) 844-2363
cinlova@sandia.gov

and

Michael D. Weil (pro hac vice application pending)
Andrea Fellion (pro hac vice application pending)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
michael.weil@morganlewis.com

**Counsel for Defendant NTESS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

N. Ana Garner
Attorney for Plaintiffs
206 W. Main St.
Farmington, NM 87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com

Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM 88051
(575) 535-2760
jonmdiener@gmail.com

Warren V. Norred
Attorney for Plaintiffs
515 E. Border St.,
Arlington, Texas 76010
T (817) 704-3984, F (817) 524-6686
wnorred@norredlaw.com


                        */s/ Cindy Lovato-Farmer*
                            Cindy Lovato-Farmer