IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| SNL WORKFORCE FREEDOM ALLIANCE, | ) | |
| DAVID PETERSON, JON BROOKS, ANNA | ) | |
| BURNS, JOHN DOE #1, JANE DOE #2, | ) | |
| RICKY ALLEN FERGUSON, | ) | __Case No. 1:22-cv-00001-KWR-SCY__ |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL TECHNOLOGY AND | ) | |
| ENGINEERING SOLUTIONS OF SANDIA, | ) | |
| LLC d/b/a SANDIA NAT'L LABORATORIES, | ) | |
| HONEYWELL INTERNAT'L, INC. | ) | |
| Defendants. | **)** | |

**CORRECTED**
**PLAINTIFFS' REPLY TO BOTH DEFENDANTS' OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF**

Plaintiffs wish to advise the Court they will be filing an Amended Complaint within a week of filing this Reply Brief pursuant to FRCP 15(a)(1)(B). This should have minimal bearing on the decision of the Motion that is at issue here.

**FIRED PLAINTIFFS HAVE STANDING**

Defendants claim that two Plaintiffs, David Peterson and Jon Brooks, have quit and are no longer employed at SNL and therefore do not have standing. In fact, since the filing of the Complaint they did not quit but *were fired* because they would not answer questions regarding their vaccination status. Their firing is essentially because they would not comply with the vaccine mandate, albeit a preliminary part of the procedure.

The Plaintiffs' Motion for TRO states on page two "REQUESTED RELIEF":  "If the Court does not address this motion prior to the Plaintiffs being terminated, reinstate Plaintiffs to their positions."

In addition, pursuant to the Americans with Disabilities Act the Defendants had no legal right to inquire regarding the Plaintiffs' vaccination status. "A covered entity (which includes employers, 29 C.F.R. §1630.2(b)) shall not require a medical examination and shall not make inquiries of an employee...... unless such examination or inquiry is shown to be job-related and consistent with business necessity.".   29 C.F.R. § 1630.14(c).

An inquiry is determined to be job related and consistent with business necessity when the employer has a reasonable belief, based on objective evidence, that the employee will pose a direct threat due to a medical condition. https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees.

"The determination that an employee poses a direct threat must be based on an individualized assessment of the employee's present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r). (Plaintiffs will include a claim under the ADA in their Amended Complaint).

Defendants make no individualized assessments of employees regarding vaccination status, whether they have natural immunity from a prior covid infections and don't need to be vaccinated or whether they have covid symptoms such that they might transmit the disease. (Asymptomatic persons with Covid-19 almost never transmit the virus.) In addition, the Complaint spells out the science which shows that the vaccinated spread the virus just as do the unvaccinated, such that the unvaccinated do not pose a "direct threat" nor is there a business necessity to examine employees regarding their vaccination status and fire them if they don't comply with the exam.

## AN UNINCORPORATED ASSOCIATION MAY SUE TO ENFORCE
## CONSTITUTIONAL RIGHTS

Defendants' argument that SNL WORKFORCE FREEDOM is not a proper plaintiff because it is an unincorporated association flies in the face of Rule 17(b)(3)(a) which states:

"(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws;"

*S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014)

> unincorporated associations , the plaintiffs in those cases were permitted to "sue in federal court, regardless of [their] capacity to sue under the law of the state in which the court sits, when [they were] suing 'for the purpose of enforcing ... a substantive right existing under the ... laws of the United States.' " *Idaho's High Desert,*92 F.3d at 819–20; *see Sierra Ass'n,*744 F.2d at 662; *see also*1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 9:11 (4th ed.2014).

*S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014)

Plaintiffs have not brought this suit under 42 USC 1983, nor asked for damages or attorney's fees as that statutory scheme provides for. They have asked the Court to grant equitable relief as it is within its inherent powers to do.  *Ex Parte Young*, 209 U.S. 123, 125 (1908); *In Defense of Implied Injunction Relief in Constitutional Cases,* William & Mary Bill of Rights Journal Volume 22 (2013-2014) Issue 1 Article 2 October 2013

Any rule or decisional law that would prohibit injunctive relief for an unincorporated association under 42 USC 1983 et seq. simply has no bearing on this case,

## INJUNCTION REQUIRING A BREACH OF CONTRACT

One of the arguments Defendants make is that they cannot be enjoined as Plaintiffs are requesting because they will then be violating a contract they have with the federal government. This argument when taken to its logical conclusion reveals its lack of merit. For

example, if Defendants had a term in their contract with the government such that they were required to insure their employees wore hazmat suits at all times even in their homes, in bed and in the bathroom so as to protect against contracting or spreading Covid-19, according to their argument, the Court would be powerless to enjoin mandates to that effect by the Defendants. Being a party to a contract in no way protects that party from responsibility for violating the rights of others.

## ALLEGED LACK OF EVIDENCE

Defendants claim that Plaintiffs have presented no evidence in support of their claims. This startling statement does not mention any particular subject for which evidence is lacking. Are they talking about evidence of harm to the Plaintiffs? Surely their imminent loss of employment and loss of security clearances is evidence of harm. Or is it evidence of Defendants' mandates to vaccinate?  Surely, the memos sent to employees which were submitted as exhibits to the Complaint are evidence of that as well as evidence of imminent loss of employment. Surely it is not a lack of evidence vaccines are only marginally effective and pose grave risks to the recipient or that vaccinated persons can transmit the virus. Significant citations to scientific studies have been provided.

It is black-letter law that claims need not and should not state all the facts which support a plaintiff's claim. The rules of procedure require succinct pleadings. FRCP Rule 8 states claims for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief".  Plaintiffs concede that since Plaintiffs are seeking preliminary injunctive relief sufficient facts need to be alleged to allow the Court to make a ruling. Plaintiffs have done that.

For this paucity of evidence argument, Defendants cite the case of *Watts v. Donley*,. 15-

cv-00320-RM-KLM, at *11 (D. Colo. May 14, 2015) *Watts,* apart from being a district court case with no precedential value, does not support the Defendants' argument. The complaint was filed by a pro se plaintiff who alleged that the foreclosure of his home was a conspiracy by the mortgage holders, a law firm and public officials to deprive him of his property. He alleged that the state actor requirement for his 42 USC 1983 suit was that a "public trustee" was involved, one of the named defendants, but never mentioned what her involvement was or what she did or didn't do in relation to his claims. The Court said:

> While Plaintiff does allege that the Public Trustee is a state actor, there are no allegations as to what "acts" in which the Public Trustee engaged. (*See generally* ECF No. 1.) Plaintiff's allegation—that Defendants' acted "with the aid of a public trustee"—is conclusory and amounts to nothing more than a formulaic recitation of subject matter jurisdiction's elements. Therefore, Plaintiff's allegation is insufficient to establish subject matter jurisdiction. *Watts* at p. 11.

_____

Here, the acts alleged are absolutely clear regarding the mandating of vaccination (in spite of the fact that the mandate has been paused). It may be that the Defendants mean there is insufficient proof of the Defendants being state actors but that is not an issue of a failure to present any evidence.

### STATE ACTORS

There is something that needs mentioning and that is that in the not so distant past governments and private businesses operated more as distinct entities. For example, the idea of prisons being run by corporations would seem strange half a century ago. That the military would contract with corporations to run military operations would have been strange not so long ago as would the DOE hiring a company to run its top secret weapons laboratory.

When constitutional rights were first articulated by the framers, it was the government

5

which had all the potential power to violate citizens rights. Corporations, though existent, did not have anywhere near the position and power over people's lives they do today.  It was the government whom the framers feared could oppress the people. Today things are very different. For example, it is corporations wielding powers in cyberspace, and not the federal government, who are responsible for a very serious attack on free speech in the U.S. today. While these facts are not necessary to find "state actor" status for the Defendants, they provide a meaningful backdrop for the inquiry.

Defendants claim that they are not "state actors".  Using the language of *National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179 (1988) cited in the Complaint, are the Defendants not "*willful participants in joint activity with the state"* when they have been "*delegated the authority*" by the State to operate a clinic to vaccinate employees on site in accordance with the Governor's push to vaccinate all New Mexicans ? Are they not willful participants with the State when they have worked together with the State on Governor Grisham's contact tracing program (*see* Exhibit 2 in the Complaint), a part of which program involves Defendants collecting health information from employees and passing it to the State.

Plaintiffs have alleged on information and belief that Defendants are receiving funding for this work and Defendants, while claiming we have not provided proof, do not deny this allegation. Plaintiffs are not privy to all the dealings the Defendants have with the State. If SNL is anything like its sister lab Los Alamos, it has a great deal more connection related to covid response than what has been alleged and which will be revealed in discovery.

Has not the State, in the language of *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) cited in the Complaint "provide(d) significant encouragement, either overt or covert," for the Defendants' vaccine program ?  New Mexico's

Governor's vaccination program is one of the most substantial in the nation now requiring not just double shots but also boosters for all state employees.

### FEDERAL CONTRACTOR'S VIOLATION OF CONSTITUTIONAL RIGHTS

Plaintiffs claim not only that Defendants are state actors in conjunction with the state of New Mexico. They also claim that as federal contractors they can be enjoined from constitutional violations. The Defendants do not even address this argument. There is a line of cases which deal with constitutional damage claims against private federal contractors. As stated in prior pleadings, the Supreme Court has said in *Correctional Services Corporation v. Malesko*, 534 U.S. 61 (2001) that Bivens actions will not lie against employees of private companies which are federal contractors. However, other federal courts have made exceptions to that general rule.

In *Ginn v. Mathews,* 533 F.2d 477 (9th Cir.1976) the Court held that a private company operating a federal Headstart program could be sued for constitutional violations when it was alleged that it was acting as a "de facto arm of the state." Defendants here are clearly acting at the behest of the Department of Energy for whom all of SNL's activities are done.

In *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328 (9th Cir. 1987) a private security company provided services to a U.S. naval industrial base. The Court reversed a dismissal against the company for violation of his constitutional rights by searching his desk. Citing *Ginn v. Mathews* supra, the Court held, "the private status of the defendant will not serve to defeat a Bivens claim, provided that the defendant engaged in federal action." *Schowengerdt* at 1337-1338. The Court went on to cite and quote from the case, *Reuber v. United Sta*tes, 750 F.2d 1039, 1058 (D.C.Cir.1984 stating that "a private person whose conduct is allegedly instigated and directed by federal officers should be treated as a federal agent" and "be subject to

7

Bivens liability"). The Fifth and Sixth Circuits are in accord. See *Dobyns v. E-Systems, Inc.,* 667 F.2d 1219 (5th Cir.1982); *Yiamouyiannis v. Chemical Abstracts Serv.,* 521 F.2d 1392 (6th Cir.1975)(per curiam)."

*Malesko* did not overrule these decisions and these authorities make it clear that private companies are by no means immune from suit based on constitutional claims. In the case at bar, at present there are no damage claims under *Bivens* or 42 USC 1983. Plaintiffs request injunctive in hopes that damages can be avoided. *Malesko* made it clear that where a private company contracts with a federal agency to operate what is essentially a federal facility and a Bivens damage claim is not available, injunctive relief is.

*Malesko* was cited in a holding by the Court in *Williams v. Klien*, 20 F. Supp.3d 1171 (D. Colo. 2014): "Conceivably, the Court has not recognized such claims (Bivens) in the context of claims by prison inmates because prisoners may pursue claims for injunctive relief based on an alleged violation of the First Amendment" and "The fact that Mr. Williams may not assert a Bivens claim for damages based on a violation of the First Amendment does not preclude him from seeking declaratory and injunctive relief."

In *Garvin v. Corr. Corp. of America, Inc.*, No. 4:11CV02054, at *6 (N.D. Ohio Jan. 27, 2012) another case where the defendant was a contractor running a federal prison, the Court dismissed damage claims but not an injunctive relief claim. *See also*, *Peoples v. CCA Detention Center,* Civil Action No. 03-3129-KHV (D. Kan. 1/15/2004) (D. Kan. 2004)

## THE PLAINTIFFS' CLAIMS ARE NOT MOOT

Simply because the Defendants have "paused" their vaccine mandate pending court decisions, the case is not moot. The word "paused" comes from the Defendants themselves in their pleadings and is telling. They do not claim their vaccine mandate is cancelled, taken off

the table. Internet dictionary definitions of *pause* include: a temporary stop or rest, especially in speech or action*: short pause after each stroke of the oar*; a cessation of activity because of doubt or uncertainty; a momentary hesitation; any comparatively brief stop, delay, wait, etc.: *I would like to make a pause in my talk and continue after lunch.*

The Defendants allegedly are waiting for a decision by the 11th Court of Appeals to decide whether to restart the vaccine mandate or continue to pause it. This Court is not bound by a 11th Circuit decision. Moreover, it is likely that an appeal from that decision will be taken. Mootness occurs when the recurrence of the conduct sued upon is very unlikely.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000)" *Buckhannon Board & Care Home v West Virginia Dept. H & H*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

It is by no means clear that the vaccination mandate of Defendants cannot reasonably be expected to recur in this instance.

## HONEYWELL, INC. SHOULD BE ENJOINED

Defendant Honeywell, Inc. claims they are an improper party in this case since they are the parent company of NTESS and do not make day to day on the ground decisions. Whether or not a parent company is legally responsible for its subsidiaries is a complex fact intensive inquiry for which discovery is needed. In any event, the Defendants' motion to dismiss raises that issue and the Court need not decide it at this stage. It behooves the Court to enjoin both Defendants pending a decision on that issue. Since Honeywell alleges it makes no decisions

regarding firing employees and they should have no concern about violating an

injunction should they be enjoined.

Respectfully submitted,

/S/ N. Ana Garner
N. Ana Garner, NM Bar No. 921
Attorney for Plaintiffs
206 W. Main St.
Farmington, NM 87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com

/s/ Jonathan Diener
Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM 88051
(575) 535-2760
jonmdiener@gmail.com

/s/ Warren V. Norred
NORRED LAW, PLLC
Warren V. Norred, Texas Bar No. 24045094
(Pro Hac Vice admission pending)
Attorney for Plaintiffs
515 E. Border St., Arlington, Texas 76010
T (817) 704-3984, F (817) 524-6686
wnorred@norredlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 25th  day of January, 2022, I filed the foregoing

electronically through the CM/ECF system, which caused all counsel of record to be served by

electronic means, as more fully reflected on the Notice of Electronic Filing.

By:  /s/ N. Ana Garner
N. Ana Garner
Garner Law Firm
206 W. Main
Farmington, New Mexico 87401
Telephone: (505) 930-5170
Garnerlaw@yahoo.com