IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| SNL WORKFORCE FREEDOM ALLIANCE, <br> DAVID PETERSON, JON BROOKS, ANNA <br> BURNS, JOHN DOE #1 AND JANE DOE #2, <br> RICKY ALLEN FERGUSON, <br>     Plaintiffs, <br> <br> v. <br> <br> NATIONAL TECHNOLOGY AND <br> ENGINEERING SOLUTIONS OF SANDIA, <br> LLC d/b/a SANDIA NAT'L LABORATORIES, <br> HONEYWELL INTERNAT'L, INC. <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.  1:22-cv-00001-DHU-SCY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## RESPONSE TO DEFENDANT NTESS's
## MOTION TO DISMISS

Plaintiffs, by and through their attorneys of record, hereby submit their Response to Defendant NTESS's Motion to Dismiss. For the foregoing reasons, Plaintiffs respectfully urge this Court to deny Defendant's Motion.

    I.    **FIRED PLAINTIFFS HAVE STANDING**

Defendants claimed in prior pleadings that two Plaintiffs, David Peterson and Jon Brooks, quit and are no longer employed at SNL and therefore do not have standing. In fact, since the filing of the Complaint , Peterson left under constructive termination due to the oppressive conditions of employment, and Brooks did not quit but was *fired* because he would not answer questions regarding his vaccination status. Their termination firing is essentially because they would not comply with the vaccine mandate, albeit a preliminary part of the procedure.

The Plaintiffs' Motion for TRO states on page two "REQUESTED RELIEF":  "If the Court does not address this motion prior to the Plaintiffs being terminated, reinstate Plaintiffs to their

positions."

The Defendants cite only the case of *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 457 (S.D.N.Y. 2013) for their argument that since some of the Plaintiffs have already been terminated for not complying with the Defendant's covid mandates, they lack standing. The facts in that nonprecedential case reveal it is no authority for dealing with the case at bar. *Kassman* involved a class action lawsuit by women claiming discrimination by a company. Some of the class members no longer worked there nor wished to. That these former employees did not have standing to seek changes in the company's practices is vastly different than Plaintiffs here who were terminated and seek injunctive relief to be reinstated, a remedy for fired employees that is well recognized and not questioned on standing grounds.

There are numerous cases in which a fired employee seeks reinstatement by injunctive relief and none the undersigned found where the Defendants argued or the Court held that the plaintiff's fired status deprived him of standing. *See generally, Mescalero Apache Tribe v Hickel*, 432 F.2d 956, 957 (10th Cir. 1970); *Bruce v. Kelly*, No. 20-4077-DDC-GEB, at *12 (D. Kan. Sep. 21, 2021); *Moore v. Univ. of Kan.*, 118 F. Supp. 3d 1242, 1249 (D. Kan. 2015); *Lombardi v. Small Business Admin,* 889 F.2d 959 (10th Cir. 1989).

## II. AN UNINCORPORATED ASSOCIATION MAY SUE TO ENFORCE CONSTITUTIONAL RIGHTS

Defendants' argument that SNL WORKFORCE FREEDOM ALLIANCE is not a proper plaintiff because it is an unincorporated association flies in the face of Rule 17(b)(3)(a) which states: "(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws;" *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014),

Plaintiffs have not brought this suit under 42 USC 1983, nor asked for damages or attorney's fees as that statutory scheme provides for. They have asked the Court to grant equitable relief as it is within its inherent powers to do. *Ex Parte Young*, 209 U.S. 123, 125 (1908); *In Defense of Implied Injunction Relief in Constitutional Cases,* William & Mary Bill of Rights Journal Volume Volume 22 (2013-2014) Issue 1 Article 2 October 2013.

Any rule or decisional law that would prohibit injunctive relief for an unincorporated association under 42 USC 1983 et seq. simply has no bearing on this case.

### III.     INJUNCTION REQUIRING A BREACH OF CONTRACT

One of the arguments Defendants appear to make is that they cannot be enjoined as Plaintiffs are requesting because they will then be violating a contract they have with the federal government. This argument is specious and when taken to its logical conclusion reveals its lack of merit. For example, if Defendants had a term in their contract with the government such that they were required to insure their employees wore hazmat suits at all times even in their homes, when in bed and in the bathroom so as to protect against contracting or spreading Covid-19, according to Defendants, the Court would be powerless to enjoin mandates to that effect by the Defendants simply because it was part of a contract the Defendants had entered into. Being a party to a contract in no way protects that party from responsibility for violating the rights of others simply because the contract *required* it.

Moreover, it is black-letter law that unilateral modification of contracts are not enforceable. As a general rule, "an existing contract cannot be unilaterally modified ." *Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 481 F.3d 337, 350 (6th Cir.2007);  17A C.J.S. *Contracts* § 410 ("A signed contract . . . cannot be changed without the consent or subsequent agreement of the parties."). Were it otherwise, the option of either party to

modify a contract unilaterally would defeat the essential purpose of reaching an agreement in the first place — to bind the parties prospectively.

An injunction by this Court would not be an interference with a contract and even if it were if constitutional rights need protection, as they do here, such interference may be necessary. "It has long been recognized that intervention by the courts into contracts between extremely unequal bargaining parties is permissible. " *Associated Diving Marine Contractors v. Granite Const*, No. 2:01CV330, at *11 n.2 (D. Utah July 16, 2003) The federal government is obviously in a very unequal bargaining position with respect to the Defendants. If the parties were on equal footing, would Defendants agree to allow the DOE to change the contract whenever it suited DOE?

## IV.   STATE ACTORS

There is something that needs mentioning and that is that in the not-so-distant past governments and private businesses operated more as distinct entities. For example, the idea of prisons being run by corporations would seem strange not too long ago. As would the idea the military would contract with corporations to run military operations. So too would the Department of Energy (DOE) hiring a company to run its top-secret weapons laboratory.

When constitutional rights were first articulated by the framers, it was the government which had all the potential power to violate citizens rights. Corporations, though existent, did not have anywhere near the position and power over people's lives they do today. It was the government whom the framers feared could oppress the people. Today things are very different. For example, it is corporations wielding powers in cyberspace, and not the federal government, who are responsible for a very serious attack on free speech in the U.S. today. While these facts are not necessary to find "state actor" status for the Defendants, they provide a meaningful

4

backdrop for the inquiry.

Defendants claim that they are not "state actors". Using the language of *National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179 (1988) cited in the Complaint, are the Defendants not "*willful participants in joint activity with the state*" when they have been "*delegated the authority*" by the State to operate a clinic to vaccinate employees on site in accordance with the Governor's push to vaccinate all New Mexicans? Are they not willful participants with the State when they have worked together with the State on Governor Grisham's contact tracing program (*see,* Exhibit 2 in the Complaint), a part of which program involves Defendants collecting health information from employees and passing it to the State.

Plaintiffs have alleged on information and belief that Defendants are receiving funding for this work and Defendants, while claiming we have not provided proof, do not deny this allegation. Plaintiffs are not privy to all the dealings the Defendants have with the State. If SNL is anything like its sister lab Los Alamos, it has a great deal more connection related to covid response than what has been alleged and which will be revealed in discovery.

Has not the State, in the language of *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) cited in the Complaint "provide(d) significant encouragement, either overt or covert," for the Defendants' vaccine program? New Mexico's Governor's vaccination program is one of the most substantial in the nation now requiring not just double shots but also boosters for all state employees.

Defendants argue in their motion that "Plaintiffs do not allege (nor can they) that the state of New Mexico nor any other state had any connection to or involvement with the challenged action here." They then attempt to limit the "challenged action" at issue to complying with Executive Order 14042. This narrow focus is misleading. The mandating of vaccination is part of

5

an overall policy of the Defendants which included compelling the wearing of masks, social distancing, PCR testing, quarantining, etc. It cannot be viewed in a vacuum as simply complying with an executive order. And that overall policy is very entwined with the state of New Mexico. Defendants have applied for and obtained a license from the State for actually vaccinating employees on site. Defendants are dutifully following Governor Grisham's mandates on other oppressive covid "practices". They work together with the state in developing contact tracing technology. And Plaintiffs suspect that may be just the tip of the iceberg. Much more remains to be discovered through the discovery process of the lawsuit.

State actor status is a fact determinative issue. Discovery is needed. It is not a basis for dismissal under 12(b). In *Fuller v. Carilion Clinic,* Civil Action No. 7:17CV564 10-29-2018, the Plaintiff alleged that a private force policeman was a state actor. Defendant moved to dismiss on the grounds there was not a plausible state actor claim. The Court stated at pps 11-12:

> The test for determining whether or not a particular private entity is considered a state actor is *extremely fact specific*. Most if not all of the cases that have decided a similar issue to the one at hand has been *after a motion for summary judgment has been filed, rather than a Rule 12(b)(6) motion to dismiss.* Therefore, this Court will assume without deciding that the defendant is a state actor but only for purposes of the defendant's motion to dismiss. Further discovery is needed in order to assess whether or not Carilion Clinic is considered a state actor. (emphasis added)

V. **PLAINTIFFS' CLAIMS ARE NOT MOOT AND DEFENDANTS' PLEADING VIOLATES FEDERAL RULES OF EVIDENCE 408**

Defendant's Motion to Dismiss includes a violation of FRE 408 that they also included in their prior pleadings to attempt to influence the Court against Plaintiffs. Rule 408 states in relevant part:

> Evidence of the following is not admissible ...............
>
> **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a

claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Plaintiffs were willing to overlook, in Defendants' response to Plaintiffs' motion for injunctive relief, their bringing to the Court's attention to statements or conduct made in settlement negotiation regarding Defendants' proposal that Plaintiffs voluntarily dismiss their complaint. But they continue to make this argument in violation of Rule 408 and should be admonished.

More importantly, this case is in no way moot. Simply because the Defendants have "paused" their vaccine mandate pending court decisions, the case is not moot. Defendants' use of the word "paused" is telling. They do not claim their vaccine mandate is cancelled or taken off the table. Internet dictionary definitions of *pause* include: a *temporary* stop or rest, especially in speech or action; short pause after each stroke of the oar; a cessation of activity because of doubt or uncertainty; a momentary hesitation; any comparatively brief stop, delay, wait, etc.

The Defendants allegedly are waiting for a decision by the 11th Court of Appeals to decide whether to restart the vaccine mandate or continue to pause it. This Court is not absolutely bound by an 11th Circuit decision. Moreover, it is likely that an appeal from that decision will be taken. Mootness occurs when the recurrence of the conduct sued upon is *very* unlikely.

> 'It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000).'

*Buckhannon Board & Care Home v West Virginia Dept. H & H*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). It is simply not clear that the vaccination mandate of Defendants cannot reasonably be expected to recur in this instance. It may very well recur.

VI. **FEDERAL CONTRACTOR'S VIOLATION OF CONSTITUTIONAL RIGHTS**

7

Plaintiffs claim not only that Defendants are state actors in conjunction with the state of New Mexico. They also claim that even if they are not *state actors,* as federal contractors they can be enjoined from constitutional violations. There is a line of cases which deal with constitutional *damage* claims against private federal contractors. The Supreme Court has said in *Correctional Services Corporation v. Malesko*, 534 U.S. 61 (2001) that Bivens actions will not lie against employees of private companies. Defendants cite this case in support of their position that injunctive relief is not available. This they do in spite of the fact that the *Malesko* court said:

> Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief — *long recognized as the proper means for preventing entities from acting unconstitutionally"* (emphasis added). *Malesko* at 62.

Moreover, many courts have made exceptions to the general rule of no Bivens claims against federal contractors. In *Ginn v. Mathews,* 533 F.2d 477 (9th Cir.1976) the Court held that a private company operating a federal Head Start program could be sued for constitutional violations when it was alleged that it was acting as a "de facto arm of the state." Defendants here are clearly acting at the behest of the Department of Energy for whom all of SNL's activities are done.

In *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328 (9th Cir. 1987) a private security company provided services to a U.S. naval industrial base. The Court reversed a dismissal against the company for violation of Plaintiff's constitutional rights by searching his desk. Citing *Ginn v. Mathews* supra, the Court held, "the private status of the defendant will not serve to defeat a Bivens claim, provided that the defendant engaged in federal action." *Schowengerdt* at 1337-1338. The Court went on to cite and quote from the case, *Reuber v. United Sta*tes, 750 F.2d 1039, 1058 (D.C.Cir.1984) stating that, "a private person whose conduct

8

is allegedly instigated and directed by federal officers should be treated as a federal agent" and "be subject to Bivens liability". The Fifth and Sixth Circuits are in accord. See Dobyns v. E-Systems, Inc., 667 F.2d 1219 (5th Cir.1982); Yiamouyiannis v. Chemical Abstracts Serv., 521 F.2d 1392 (6th Cir.1975)(per curiam.) "

It has never been asserted that *Malesko* overruled these decisions and these authorities make it clear that private companies are by no means immune from suit based on constitutional claims. In the case at bar, there are no damage claims under *Bivens* or 42 USC 1983. Plaintiffs request injunctive in hopes that damages can be avoided. *Malesko* stands for the proposition that where a private company contracts with a federal agency to operate what is essentially a federal facility and a Bivens damage claim is not available, *injunctive relief* is.

*Malesko* was cited in a holding by the Court in *Williams v. Klien*, 20 F. Supp.3d 1171 (D. Colo. 2014) where the Court wrote, "Conceivably, the Court has not recognized such claims (Bivens) in the context of claims by prison inmates *because prisoners may pursue claims for injunctive relief based on an alleged violation of the First Amendment*".......The fact that Mr. Williams may not assert a Bivens claim for damages based on a violation of the First Amendment does not preclude him from seeking declaratory and injunctive relief." (emphasis added)

In *Garvin v. Corr. Corp. of America, Inc.*, No. 4:11CV02054, at *6 (N.D. Ohio Jan. 27, 2012) another case where the defendant was a contractor running a federal prison, the Court dismissed damage claims but not an injunctive relief claim. *See also*, *Peoples v. CCA Detention Center,* Civil Action No. 03-3129-KHV (D. Kan. 1/15/2004) (D. Kan. 2004)

The Defendants argue that they are not federal actors. One must not get lost in semantic distinctions here. In the cases cited by Plaintiffs in this section, the opinions do not focus on

whether the defendants were "government actors" as a noun. As for the Bivens damage cases cited, the issue is whether the federal government was directing the defendant private companies. Here Defendants readily admit they are being heavily directed by the federal government. They have contracts which they claim give the DOE unilateral power to modify the contract and create new contractual duties for Defendants. The DOE has very specific needs for the research and work they need done which Defendants are merely taking orders as to what they need and want done.

All the federal government need do is supply them with a very oppressive and arguably unconstitutional vaccine mandate and Defendants hop  to carry it out. Defendants are no less and perhaps more under the direction of the federal government than the private companies running prisons and the Head Start program in Plaintiffs' cited cases. Moreover, where injunctive relief is concerned, the *Malesko* case *Williams v. Klien, supra,* appear to be less concerned about direction from the federal government as they are with the need for a remedy for constitutional violations where private companies are tasked with operating a facility that is clearly federal.

The cases cited by Defendants are not on point. In *United States v. New Mexico*, 455 U.S. 720 (1982), the issue was whether federal contractors were independent entities from the federal government such that their income could be taxed. This is too disparate from a federal contractor violating constitutional rights for the analysis in the cited case to be dispositive here.

The case *Jackson v. Metro. Edison Co*., 419 U.S. 345, 350 (1974) Defendants cite in their section on federal contractors is actually a "state actor" case under 42 USC 1983 and its relevance is questionable as to Defendants' constitutional responsibilities as a federal contractor. So is *Mineo v. Transp. Mgt. of Tenn., Inc*., 694 F. Supp. 417, 419, 424 (M.D. Tenn. 1988) a state actor case. It asked whether there was a symbiotic relationship between a city and a company

hired to run its transit system to determine it was acting under color of state law.

Conversely, the cases cited hereinabove by Plaintiffs are cases where federal contractors were held to be responsible to not violate constitutional rights of persons in facilities that were federal and that they were managing for the federal government. These cases are dispositive.

It is worth noting that the *Mineo v. Transp. Mgt. of Tenn., Inc.* was on appeal on a summary judgment. Although Plaintiffs do not agree that a "symbiotic relationship" as discussed in *Mineo* is needed for the case at bar, this sort of thinking underscores the need for a factual determination and discovery before the Court will be in a position to rule on the issue of whether Defendants as *federal* contractors managing a federal facility at the DOE's behest have an obligation to not violate constitutional rights

### VII. PLAINTIFF ASSOCIATION IS NOT SUING UNDER 42 USC 1983 AND CANNOT BE DISMISSED ON THAT BASIS

Defendants continue to spend considerable time asserting that Plaintiffs have made a Bivens claim or are suing sued under 42 USC 1983, when such is not the case. They go so far as to argue that it is the only way Plaintiffs can obtain injunctive relief for a constitutional violation in spite of the fact that numerous courts have held otherwise. From the 10th district alone come the following cases.

In *Burns v. Hickenlooper*, Civil Action No. 14-cv-01817-RM-KLM, at *3 (D. Colo. Oct. 17, 2014) a case in which Plaintiffs, same sex couples, sued for injunctive relief allowing them to marry. There is no mention of section 1983 or Bivens in the opinion. The Court found and concluded that all the elements of an injunctive relief had been met and that the challenged law impermissibly violated Plaintiffs' fundamental right to marry under the Due Process and Equal Protection Clauses.

In *Grayeyes v. Cox,* No. 4:18-cv-00041 (D. Utah Aug. 9, 2018) the Plaintiff sought an injunction based on his right to vote. Granting relief, the Court said this "injunction enforces fundamental constitutional rights. Waiving the security requirement best accomplishes the purposes of Rule 65(c)." *Grayeyes* at p. 17. No mention is made of section 1983 but rather Rule 65 of the FRCP.

In *Flood v. Clearone Communications, Inc.*, No. 2:08-CV-00631-DB, at *3 (D. Utah Apr. 17, 2009) there is no mention of section 1983. The Court said: "Ms. Flood would likely suffer grievous harm in the form of lost constitutional rights if an injunction does not issue."

> There are at least three different types of injunctions a federal court may issue. The first is a "traditional" injunction, which may be issued as either an interim or permanent remedy for certain breaches of common law, statutory, ***or constitutional rights***.  Granting  such injunctions fall  within  the  long- recognized, inherent equitable powers of the court.See ITT Comm. Devel. Corp. v. Barton, 569 F.2d 1351, 1359 (11th Cir. 1978)     *("[A] federal court, sitting in equity, possesses all of the  common law equity  tools of a Chancery Court* (subject, of course, to congressional limitations) to process litigation to a  just and equitable conclusion."). (emphasis added)

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004)

In *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015) the Supreme Court said at 327: "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *See also, Bacon v. Core Civic*, No. 2:20-cv-00914-JAD-VCF, 2020 WL 3100827, at *6 (D.Nev. June 10, 2020).

There is no question that this Court has the power and authority to grant injunctive relief to prevent constitutional violations totally independent of 42 USC 1983. Therefore, there is no basis for dismissing the association Plaintiff as Defendants wrongly insist upon.

VIII.   **DOE PLAINTIFFS**

Defendants argue that *Doe* plaintiffs must be dismissed as if such pleading is never allowed. They so argue in spite of the fact that the Supreme Court implicitly recognized Doe plaintiffs as valid in such noteworthy cases as *Poe v. Ullman,* 367 U.S. 497 (1961); *Roe v. Wade*, 410 U.S. 113 (1973); and *Doe v. Bolton*, 410 U.S. 179 (1973).

Lower federal courts have held that courts have discretion to allow Doe plaintiffs. *Doe v. Indiana Black Expo, Inc.*, 923 F.Supp. 137 (S.D.Ind.1996) ("[T]he federal courts of appeal and a number of district courts have recognized that a district court may have the *discretion* to permit a party to proceed under a fictitious name.") (emphasis added); *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir.1979); *Doe v. Frank*, 951 F.2d 320, 322-323 (11th Cir.1992).

There is good reason to allow Doe plaintiffs in this case. Unvaccinated employees that work at SNL are working in an atmosphere of fear, discrimination and ostracization. By being named they run the risk of retaliatory consequences such as firing, ostracization, segregation and others. It is for these reasons they seek to sue as Doe plaintiffs.

Plaintiffs have at the same time this pleading is filed, filed a formal motion for the Court to rule on the issue.

WHEREFORE, Plaintiffs respectfully request that the Defendants Motion to Dismiss be denied.

Respectfully submitted,

By:  */s/ N. Ana Garner*
Attorney for Plaintiffs
206 W. Main St.
Farmington, NM 87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com

By: */s/ Jonathan Diener*
Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM 88051
(575) 535-2760
jonmdiener@gmail.com

NORRED LAW, PLLC

By: /s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094
wnorred@norredlaw.com
515 E. Border St., Arlington, Texas 76010
Tel. (817) 704-3984, Fax. (817) 524-6686
Attorney for Plaintiffs
*Pro Hac Vice Application to be submitted*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 4th day of February, 2022, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

By: */s/ N. Ana Garner*
N. Ana Garner
Garner Law Firm
206 W. Main
Farmington, New Mexico 87401
Telephone: (505) 930-5170
Garnerlaw@yahoo.com