IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SNL WORKFORCE FREEDOM
ALLIANCE, DAVID PETERSON, JON
BROOKS, ANNA BURNS, JOHN DOE
#1, JANE DOE #1, RICKY ALLEN
FERGUSON

        Plaintiffs,

                                          Case No. 1:22-cv-00001-KWR-SCY

v.

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA LLC d/b/a SANDIA NAT'L
LABORATORIES, HONEYWELL
INTERNAT'L, INC.,

        Defendants.

**NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA LLC'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER
FEDERAL RULE 12(b)(1) AND/OR MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UNDER RULE 12(b)(6) AND/OR STRIKE UNDER 12(F)**

I.       **INTRODUCTION**

       Defendant National Technology and Engineering Solutions of Sandia, LLC ("NTESS") is

a privately held company that operates Sandia National Laboratory ("SNL") under a Management

and Operating contract with the U.S. Department of Energy's ("DOE's") National Nuclear

Security Administration ("DOE/NNSA").   As a private government contractor, NTESS was

required to comply with President Biden's Executive Order 14042 (the "Executive Order"), which

required federal contractors to ensure that all employees who do not have a religious or medical

exemption to be fully vaccinated against COVID-19.  In order to comply with the Executive Order,

NTESS implemented a vaccine requirement in October 2021.  On December 7, 2021, a federal district court in Georgia entered a nationwide injunction temporarily suspending the Executive Order and NTESS, in turn, announced that it has paused its vaccine requirement on January 5, 2022.

Although NTESS alerted Plaintiffs that its vaccine enforcement of the Executive Order's vaccine mandate had been paused, Plaintiffs nonetheless proceeded with their underlying lawsuit attacking NTESS's paused vaccination requirement, and NTESS opposed Plaintiffs' request for injunction and moved to dismiss Plaintiffs' Complaint.  In their Amended Complaint, Plaintiffs have not cured any of the defects that NTESS previously identified.  Instead, Plaintiffs expanded their claims to attack NTESS's masking and testing requirements, which the White House's Safe Workforce Task Force requires NTESS to implement, and Plaintiffs now seek a declaratory judgment that NTESS's COVID-19 testing policy violates the Americans with Disabilities Act ("ADA") in several respects.  Plaintiffs' Amended Complaint and new allegations still fail to state a claim for several reasons.

First, NTESS's decision to pause its vaccine mandate renders Plaintiffs' claims regarding NTESS's vaccine mandate moot because there is no case or controversy pending before this Court about the vaccine requirement.  The Court should strike those claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(f) as moot.

Second, the Court should dismiss Plaintiff's First and Second Counts for injunctive relief and declaratory relief pursuant to Rule 12(b)(6) because Plaintiffs failed to plead sufficient facts to demonstrate that NTESS is a government actor (it is not), and therefore Plaintiffs' constitutional law claims fail as a matter of law.  Plaintiffs had the opportunity to correct this defect by pleading

2

sufficient facts in their Amended Complaint, which they have not done, and this Court should dismiss these claims.

Third, the Court should dismiss Plaintiffs' Second and Third Counts for declaratory relief because Plaintiffs have not pled sufficient facts to demonstrate why this Court should provide this discretionary relief. Plaintiffs have not explained how testing or masking violate the right to bodily integrity, nor have Plaintiffs shown that constitutional claims can appropriately be brought against NTESS. Further, Plaintiffs have not pled sufficient facts to explain how one Plaintiff's particular ailments are "disabilities" or how NTESS's testing (or masking) requirement violates the ADA, particularly when the Equal Employment Opportunity Commission ("EEOC") has expressly stated that employers may test employees for COVID-19 without violating the ADA.[1]  Moreover, the Court should exercise its discretion to decline hearing  Plaintiffs' request for declaratory relief, which is inappropriate and an obvious attempt to secure some broad, unprecedented judgment to use as res judicata or collateral estoppel in some other lawsuit. If Plaintiffs contend that NTESS violated the ADA, they should simply plead that Count and support it with sufficient allegations.

Fourth, the Court should dismiss Plaintiffs Peterson, Brooks, the Anonymous Doe Plaintiffs, and SNL Workforce Freedom Alliance's claims because they each lack standing. As former employees, Peterson and Brooks lack standing to seek injunctive or declaratory relief. The Anonymous Doe Plaintiffs lack standing because Plaintiffs failed to submit sufficient reasons or

---

[1] *See* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, question A.6 ("[A]n employer may choose to administer COVID-19 testing to employees before initially permitting them to enter the workplace and/or periodically to determine if their presence in the workplace poses a direct threat to others. . . .  Testing administered by employers consistent with current CDC guidance will meet the ADA's 'business necessity' standard.").

evidence as to why those plaintiffs can remain anonymous.[2]  Finally, SNL Workforce Freedom Alliance lacks standing because unincorporated associations cannot bring claims for violation of constitutional rights under 42 U.S.C. § 1983, and Plaintiffs have not properly alleged sufficient facts to otherwise establish standing for this vague unincorporated association.

Dismissal of Plaintiffs' entire action is proper pursuant to Rule 12(b)(6).  Because Plaintiffs have shown that they cannot provide facts sufficient to state any of their claims, this Court should dismiss Plaintiffs' Amended Complaint with prejudice, right now.

## II.   BACKGROUND

### A.   NTESS OPERATES SANDIA NATIONAL LABORATORIES.

NTESS is a private limited liability corporation and wholly owned subsidiary of Honeywell International Inc.  NTESS manages and operates SNL pursuant to Contract No. DE-NA0003525 (hereinafter, "the M&O Contract") that NTESS entered into with the DOE/NNSA.  Declaration of Kelly Westlake in Support of NTESS's Opposition to Motion for Temporary Restraining Order [Doc 24] ("Westlake Decl.") ¶ 2 [1-18-22]; Complaint ("Compl."), ¶ 10.  SNL is not a separate legal entity.  It is simply a physical space owned by the DOE.  *Id*.  NTESS directly employs more than 14,000 individuals.  Westlake Decl., ¶¶ 4, 20 [1-18-22].

### B.   AS A FEDERAL CONTRACTOR, NTESS MUST ABIDE BY FEDERAL REGULATIONS APPLICABLE TO IT, INCLUDING MASKING, TESTING, AND—UNTIL EXECUTIVE ORDER 14042 WAS ENJOINED—VACCINATIONS.

As a federal contractor, NTESS is required to comply with federal regulations applicable to it, many of which are effectuated through the terms of NTESS's M&O contract with the DOE.  For example, the M&O Contract provides that the contracting officer may, "from time to time and at any

---

[2] NTESS will oppose Plaintiffs' Motion to Permit Proceeding with Doe Plaintiffs.

NTESS MOTION TO DISMISS

time, *unilaterally* modify the [M&O] Contract to revise, add or delete" Federal Acquisition Regulation ("FAR"), or DOE Acquisition Regulation ("DEAR") clauses contained in section H of the M&O Contract due to changes in the law or regulations or policy resulting from the approval of new deviations. Unilateral modifications to the M&O Contract can be made if there are changes to the FAR, DEAR, or Section H clauses (Special Contract Requirements) that result from the approval of new deviations to existing FAR, DEAR, or Section H clauses. Westlake Decl., ¶ 5 [1-18-22].

In order to provide the heads of federal agencies ongoing guidance to keep their employees safe during the COVID-19 pandemic, President Biden created the Safer Federal Workforce Task Force. In July 2021, the Safer Federal Workforce Task Force required that "onsite contractors who are not fully vaccinated or decline to provide their vaccination status must wear a mask, physically distance and comply with a weekly or twice-weekly screening testing requirement and are subject to Government-wide restrictions on official travel." Westlake Decl., ¶ 6, Ex. A [1-18-22]. These masking, distancing, and testing requirements still apply today.

On September 9, 2021, President Biden signed the Executive Order "Ensuring Adequate COVID Safety Protocols for Federal Contractors." This Executive Order applies to federal contractors like NTESS. Westlake Decl., ¶ 7 [1-18-22]. On September 24, 2021, the Safer Federal Workforce Task Force issued updated guidance for federal contractors and subcontractors, which are covered by the Executive Order, and which requires, among other things, that all covered contractor employees be fully vaccinated by December 8, 2021 unless they are legally entitled to an accommodation. Westlake Decl., ¶ 8 [1-18-22].

Because NTESS was required to comply with both the Executive Order and its guidance, NTESS announced its intention to institute a vaccination requirement. On October 5, 2021, NTESS's

NTESS MOTION TO DISMISS

Lab Director issued a communication informing NTESS's workforce of the Executive Order as well as NTESS's anticipation that the vaccination mandate would require all workforce members and subcontractors to be fully vaccinated against COVID-19 by December 8, 2021, subject to medical or religious exemptions.  Westlake Decl., ¶ 9, Ex. B [1-18-22].

### C. NTESS PAUSED ITS VACCINATION REQUIREMENT BECAUSE A DISTRICT COURT ENTERED A NATIONWIDE INJUNCTION ENJOINING EXECUTIVE ORDER 14042.

On December 7, 2021, Judge R. Stan Baker of the United States District Court for the Southern District of Georgia (the "Georgia District Court") issued a nationwide injunction halting the enforcement of the Executive Order.  Westlake Decl., ¶ 15 [1-18-22].  On December 9, 2021, the attorneys defending the Executive Order filed a Notice of Appeal to the Eleventh Circuit as well as a Motion to Stay the Georgia District Court's injunction halting enforcement of the Executive Order until the Eleventh Circuit could rule.  Westlake Decl., ¶ 17 [1-18-22].  On December 21, 2022, the attorneys defending the Executive Order withdrew their request that the Georgia District Court stay its December 7, 2021 order granting the plaintiffs' motions for a preliminary injunction pending the completion of their appeal to the United States Court of Appeals for the Eleventh Circuit.  The Georgia District Court denied the emergency stay on December 23, 2021.  Westlake Decl., ¶ 18 [1-18-22].  On December 29, 2021, the Eleventh Circuit denied the government's request to expedite the proceedings.  Briefing in that case will not be complete until late February, and the Eleventh Circuit will not conduct a hearing until at least April 2022.  Request for Judicial Notice in Support of Opposition to Motion for Temporary Restraining Order ("RJN") [Doc. 25], Exs. 1-3.

NTESS MOTION TO DISMISS

Because it appeared that the Executive Order would be enjoined for some time if not permanently, NTESS issued a January 5, 2022 Special Announcement informing the workforce that it was pausing enforcement of the Executive Order vaccine mandate and would instead be implementing a serial testing program beginning January 18, 2022.  Westlake Decl., ¶ 19, Ex. G [1-18-22].

Plaintiffs' original Complaint addressed only NTESS's vaccination requirement.  NTESS's counsel spoke with Plaintiffs' counsel on January 6, 2021 and explained that NTESS paused its enforcement of the Executive Order vaccine mandate and intended to track the pending litigation over the Executive Order.   Given these developments, NTESS's counsel explained that this litigation is moot and invited Plaintiffs' counsel to dismiss the lawsuit.   Plaintiffs' counsel declined.   Declaration of Michael Weil in Support of NTESS's Opposition to Motion for Temporary Restraining Order ("Weil Decl.") ¶ 2, Ex. A [1-18-22].

Instead of curing the defects identified in NTESS's original motion to dismiss, Plaintiffs have filed an Amended Complaint that purports to expand the scope of their claims beyond the (paused) vaccination mandate.   Now, Plaintiffs allege that NTESS's masking and testing requirements somehow interfere with employee rights to bodily integrity and ask this Court to enjoin these protections as well.  Am. Compl. ¶¶ 185, 186.  Plaintiffs also ask this Court to issue declaratory judgments that the Executive Order is invalid and that the constitutional right to bodily integrity permits Plaintiffs to refuse to be vaccinated, submit to COVID-19 testing, or wear a mask. Am. Compl. ¶ 187.  Last, Plaintiffs ask this Court to issue a declaratory judgment that COVID-19 testing somehow violates the ADA.  Am. Compl. ¶ 188.

III.   **LEGAL ARGUMENT**

A.   **The Court Should Dismiss or, in the Alternative, Strike Plaintiffs' Allegations Related to NTESS's Vaccine Requirement as Moot.**

The Court should dismiss this action under Rule 12(b)(1) or, in the alternative, strike Plaintiffs' claims regarding NTESS's vaccine requirement because it lacks subject matter jurisdiction over that moot claim.  Federal courts exercising judicial authority are "confine[d] . . . to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570 U.S. 693 704, (2013) (quoting U.S. Const. art. III, § 2).  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Official English v. Arizona*, 520 US 43, 67 (1997) (internal quotes omitted).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 US 277, 287 (2000).

Here, Plaintiffs' First Count challenges, in part, NTESS's now-paused vaccine requirement.  NTESS has stopped enforcement of that vaccine requirement, pending court proceedings on the Executive Order, which may remain enjoined indefinitely.  No decision from the Eleventh Circuit is expected until at least April, if not later, and the Supreme Court may then take up the case.  RJN Exs. 2, 3.  Plaintiffs therefore have no continuing real or expected imminent alleged injury from NTESS's paused vaccine requirement.  Where a plaintiff, such as these Plaintiffs, seeks to challenge "a requirement that no longer burdens or applies to the plaintiff, a federal court lacks jurisdiction to adjudicate the plaintiff's claim."  *Wade v. Univ. of Conn. Bd. of Trs.*, 2021 WL 3616035, at *7 (D. Conn. Aug. 16, 2021) (denying motion for injunctive relief as

moot because the university's COVID-19 vaccination requirement no longer applied to the plaintiffs); *Pietrangelo v. Sununu*, 15 F.4th 103, 106 (1st Cir. 2021) (dismissing plaintiff's appeal of denial of injunctive relief concerning COVID-19 vaccine distribution because plaintiff had since been vaccinated).

Plaintiffs may argue in response that NTESS could reinstate its vaccine policy at any time and, therefore, this case presents a live controversy. Plaintiffs' mere speculation that NTESS may at some undetermined time in the future reinstate its vaccine requirement is not enough to defeat mootness. *Wade*, 2021 WL 3616035, at *8 (rejecting argument that the university could withdraw vaccine exemptions at any time because "a speculative possibility of future revocation of an exemption is not enough to defeat mootness"); *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (challenge to pandemic suspension of fingerprinting for firearms permits was moot in light of evidence showing resumption of fingerprinting and only speculative possibility that suspension of fingerprinting would be reimposed).

Here, NTESS instated the vaccination requirement because the Executive Order required it. Westlake Decl., ¶ 9, Ex. B [1-18-22]. Whether or when the Executive Order becomes effective again—it is currently unclear whether it will ever happen—is speculative, at best. If the Eleventh Circuit upholds the Executive Order as lawful, then NTESS would be required to follow it. Plaintiffs then would have plenty of time to re-file their Complaint if they still somehow contended that, even after thorough judicial review, the Executive Order's requirements are unlawful. This speculative and hypothetical scenario is not a basis to continue to litigate over NTESS's paused and unenforced vaccine mandate now.

**B.      The Court Should Dismiss Counts One and Two Pursuant to Rule 12(b)(6) Because Plaintiffs Failed to Plead Sufficient Facts Demonstrating That NTESS Is a Government Actor.**

This Court should dismiss Plaintiffs' First and Second Counts against NTESS under Rule 12(b)(6) because Plaintiffs fail to plead any plausible right to relief.  It is well established that while the pleading standard under Rule 8 does not require "detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To this end, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*.  "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan-Arapahoe v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (2011) (quoting *Iqbal*, 556 U.S. at 679).  In making this assessment, while this Court "must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, regardless how one interprets Plaintiffs' vague First or Second Counts, a threshold requirement for Plaintiffs' First and Second Counts is properly pleading that NTESS is a state or federal actor.[3]  Plaintiffs, however, fail to plead sufficient facts to support those claims.

---

[3] Count I is for "Injunctive Relief Barring Vaccine Mandates" based on the alleged "fundamental right to bodily integrity," which is not a legally viable cause of action.  Reading further, Count I cites *Planned Parenthood v.*

1.    **Plaintiffs Fail to Plead Sufficient Facts to Support Their Argument That NTESS Is a State Actor.**

It is hornbook law that private parties are not liable for constitutional violations unless they are acting under color of state law and thus "jointly engaged with the state officials in the conduct allegedly violating the federal right." *Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021) (internal quotations omitted). The provisions of 42 U.S.C. § 1983, for example, "only apply to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state statute, ordinance, regulation, custom or usage." *Id.* at 918.

Courts apply various tests when analyzing the state actor requirement, including (1) the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). "Each test really gets at the same issue—is the relation between a nominally private party and the alleged constitutional violation sufficiently close as to consider the nominally private party a state entity for purposes of section 1983 suit?" *Janny*, 8 F.4th at 919.

Here, Plaintiffs allege in their Complaint that NTESS is a state actor because New Mexico allegedly authorized SNL to be a vaccination clinic for members of the public, and NTESS allegedly worked with the New Mexico Department of Health to create a contact tracing program implemented by New Mexico. These allegations are insufficient to state a claim.

---

*Casey*, 505 U.S. 833, 835 (1992), in which the plaintiff alleged that Pennsylvania's law regulating abortion violated 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. Based on Plaintiffs' citation to *Casey*, it appears that Plaintiffs here are likewise purporting to assert a cause of action against NTESS for violation of 42 U.S.C. § 1983 and the Fourteenth or other Amendments.

Count II seeks a declaratory judgment that the Executive Order is invalid and that there exists "a constitutional right to bodily integrity that permits American citizens to refuse taking a vaccine without consequences."

With respect to the joint action or nexus tests, which focus on the conduct challenged by the lawsuit,[4] Plaintiffs do not allege (nor can they) that the State of New Mexico nor any other state had any connection to or involvement with the challenged action here: NTESS's implementation and enforcement of the Executive Order's vaccine mandate.  NTESS therefore cannot be considered a state actor under either the joint action or nexus tests.  *Id.* ("When a constitutional claim is asserted against private parties, to be classified as state actors under color of law they must be jointly engaged with state officials in the conduct allegedly violating the federal right[.]"); *Wittner v. Banner Health*, 720 F.3d 770, 776 (10th Cir. 2013) (nexus and joint action tests were not applicable because, respectively, the state did not exercise "coercive power" over the challenged conduct nor acted in concert in effecting a particular deprivation of constitutional rights).

Moreover, the public function test is not applicable because NTESS's (now halted) vaccine mandate that required SNL's employees to become vaccinated was not a *state* function or activity. *Wittner*, 720 F.3d at 776 ("The 'public function' test asks whether the challenged action is a traditional and exclusive function of the state.").  The symbiotic relationship (or entwinement) test, which requires a "heavily interdependent relationship" between the alleged state actor and the state (*id*. at 779), is similarly inapplicable here because, as Plaintiffs admit, NTESS is a *federal* contractor, and NTESS operates completely independently of the State of New Mexico.  Indeed, contracting with the state does not establish that NTESS is a state actor under any of the tests.  *See,*

---

[4] For example, under the joint action test, "a plaintiff must demonstrate the public and private actors reached agreement upon a common, unconstitutional goal, and took concerted action to advance that goal." *Janny*, 8 F.4th at 919.  Under the nexus test, "a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct" by the private party "such that the conduct may be fairly treated as that of the [s]tate itself." *Id*. at 925.

*e.g.*, *Gallagher*, 49 F.3d at 1448 (the fact that a private party contracts with the government or receives governmental funds or other kinds of governmental assistance is not enough to transform a private party's conduct into state action), 1453 ("Payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity."); *Wittner*, 720 F.3d at 776 (the allegation that defendant receives state funding does not create state action when there is no allegation that the state used its funding to coerce the particular challenged conduct).  Indeed, under Plaintiffs' theory, every company that contracts to perform services for a state government would instantly become state actors subject to constitutional requirements, which is not the law.  *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (the simple fact that "a private entity performs a function which serves the public does not make its acts state action"); *Gallagher*, 49 F.3d at 1451("the performance of important public functions do[es] not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action").

Plaintiffs had an opportunity in their Amended Complaint to plead additional facts to support any claim that NTESS is a state actor, but they did not (and cannot) do so.  Accordingly, Plaintiffs are not likely to succeed on the merits of Counts One or Two.  *See, e.g.*, *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027, at *3 (E.D. Ky. Sept. 24, 2021) ("Put simply, without establishing that Defendants are state actors, Plaintiffs' constitutional claims cannot stand, and thus have zero likelihood of success on the merits[.]").

### 2. NTESS Is Not a Federal Actor and, Even If It Were, Plaintiffs Cannot Assert a Viable Claim on That Basis.

Plaintiffs allege that NTESS is not just a state actor, but it is also a federal actor acting

under the color of federal law.  Plaintiffs' only basis for this allegation is NTESS's contract with the DOE, which is insufficient because it only suggests that NTESS is a federal *contractor*, but not a federal *actor*.  *See, e.g.*, *Gallagher*, 49 F.3d at 1451 (even "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action"); *United States v. New Mexico*, 455 U.S. 720, 739-40 (1982) (concluding that DOE contractors like NTESS were not instrumentalities of the federal government because the contractors were "privately owned corporations; Government officials do not run [their] day-to-day operations nor does the Government have any ownership interest" and the fact that "the federal property involved was being used for the Government's benefit—something that by definition will be true in virtually every management contract—was irrelevant, for the contractors remained distinct entities pursuing private ends, and their actions remained commercial activities carried on for profit" (internal quotations omitted)); *Rendell-Baker*, 457 U.S. at 841 ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) (the mere fact that a business is subject to government regulation does not convert its action to that of the state, nor does the fact that the regulation is extensive and detailed); *Mineo v. Transp. Mgt. of Tenn., Inc.*, 694 F. Supp. 417, 419, 424 (M.D. Tenn. 1988) (no symbiotic relationship even though private company's "sole function . . . was to manage and operate Nashville's transit system," and even though the government supplied company with "equipment, office space, furniture and supplies").  Indeed, Plaintiffs' Amended Complaint merely adds more caselaw, but fails to plead any additional facts to support any allegation that NTESS is

a federal actor.

Even if NTESS were a federal actor (and it is not), Plaintiffs still have no viable cause of action to assert constitutional claims against NTESS because Section 1983 actions apply only to defendants acting under color of *state* law, not federal law. *See* 42 U.S.C. § 1983; s*ee also Bivens v. Six Un-known Fed. Narcotics Agents*, 403 U.S. 388, 398 n.1 (1971) (no recovery may be had from any of the federal defendants under Section 1983); *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976) (Section 1983 has no application to federal officers acting pursuant to federal law); *Martinez v. The Geo Grp., Inc.*, 2020 WL 2496063, at *14 (C.D. Cal. Jan. 7, 2020) (Section 1983 provides no right of action against federal—rather than state—actors).

The federal analogue to Section 1983 is an implied right of action under *Bivens*, to which Plaintiffs make a passing reference in their Complaint. The Supreme Court, however, has made clear that plaintiffs cannot bring a *Bivens* action against private corporate defendants, like NTESS, *even if* those private corporate defendants are acting under color of federal law. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (there is no implied private right of action under *Bivens* against private entities that engage in alleged constitutional deprivations while acting under color of federal law); *Menteer v. Applebee*, 196 F. App'x 624, 627 (10th Cir. 2006) (affirming trial court's dismissal of plaintiff's *Bivens* claim against private corporate defendant). What's more, the Supreme Court recently admonished against expanding *Bivens* actions into "new" contexts, *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017), and this is certainly a new context. Plaintiffs identify no precedent where employees were allowed to bring a *Bivens* action against a federal

15

actor (which NTESS is not) based on a vaccine requirement.[5]  *Cf. Bush v. Lucas*, 462 U.S. 367 (1983) (holding that Bivens could not be used for a First Amendment claim by a federal employee against his supervisor).

Because Plaintiffs have not and cannot plead sufficient facts to establish that NTESS is a government actor, the Court should dismiss Plaintiffs' First and Second Counts of the Complaint with prejudice.  *See, e.g.*, *Obduskey v. Fargo*, 2016 WL 4091174, at *8 (D. Colo. July 19, 2016) (finding "neither defendant is a state actor against whom a constitutional claim can be brought" and dismissing under Rule 12(b)(6)); *LeJon-Twin El v. Marino*, 2017 WL 1591856, at *4 (D.N.J. Apr. 28, 2017) (stating a Fourth Amendment "constitutional claim may be brought against a federal or state government actor, but not against a private employer" and dismissing under Rule 12(b)(6)).

### C.   The Court Should Dismiss Plaintiffs' Second and Third Counts Because They Have Not Met the Standard to Obtain Declaratory Relief.

For declaratory relief to be appropriate, Plaintiffs must show that the controversy at issue is "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936).  The "controversy" at issue must be a real and substantial admitting of specific relief through a decree of a conclusive character, and courts must not issue opinions advising what the law would be upon a hypothetical state of facts.

---

[5] Moreover, Plaintiffs cannot assert a violation of the Fourteenth Amendment against federal actors as a matter of law.  *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State.  The claimed association in this case is between the USOC and the Federal Government.  Therefore, the Fourteenth Amendment does not apply."); *Taylor v. Donley*, 2010 U.S. Dist. LEXIS 21780, at *3 (E.D. Cal. Mar. 10, 2010) ("The plain language of the [Fourteenth] [A]mendment reflects that these provisions apply to states and not to the federal government or its employees[.]").

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).

Tenth Circuit precedent aligns with these requirements and notes that a plaintiff bringing a claim under the Declaratory Judgment Act must overcome "two separate hurdles." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (internal citation omitted). First, a plaintiff seeking a declaratory judgment must present "an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." *Id.* (citing *Aetna Life Ins. Co.*, 300 U.S. at 227, 239-40). Second, even if the plaintiff can show an actual controversy, district courts are not *required* to declare the parties' rights, but "are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Id.* (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994)) (subsequent citations omitted).

### 1.    Plaintiffs Have Not Shown an Actual Controversy Supporting Either Claim for Declaratory Relief.

Here, Plaintiffs ask the Court to issue a declaratory judgment addressing several issues, (1) whether the right to bodily integrity permits an American citizen to refuse to be vaccinated, tested, or wear a mask without adverse consequences,[6] (2) testing for COVID-19 is a medical exam under the ADA, (3) there is no individualized assessment "done on uninjected employees" and therefore testing violates the ADA, and (4) the "uninjected" do not pose a direct threat and requiring them

---

[6] Plaintiffs also ask this Court for a declaration that the Executive Order is invalid. Am. Compl. ¶ 187(a). As noted, NTESS did not issue the Executive Order, and other courts—including the Eleventh Circuit—are already analyzing the authority of the Executive Order itself. Westlake Decl., ¶¶ 17, 18 [1-18-22]. Moreover, Defendants are not the proper parties to sue to challenge the Executive Order or declare new constitutional rights.

NTESS MOTION TO DISMISS

to have COVID-19 testing violates the ADA.  Am. Compl. ¶¶ 187, 188.[7]

With respect to (1), above, Plaintiffs cannot show that there is an "actual controversy" as to whether NTESS's vaccination, testing, or masking policies implicate Plaintiffs' right to bodily integrity.  Plaintiffs argue that the right to bodily integrity is a constitutional right, (Amended Complaint ¶ 187(b)-(d)), however, Plaintiffs fail to properly plead that NTESS is a governmental actor and therefore the constitution—and limitations emanating from the constitution—do not apply to NTESS.  *Beckerich*, 2021 WL 4398027, at *3.  Even if NTESS were a governmental actor (which it is not), vaccination requirements do not implicate Plaintiffs' fundamental "rights to bodily integrity and to refuse medical treatment" as a matter of law.[8]  Plaintiffs' testing and masking claims are even more specious.  Plaintiffs have not explained how a simple test or mask requirement equates to *medical treatment*, and they have made no attempt whatsoever to explain how wearing a mask implicates bodily integrity.  As such, Plaintiffs cannot show that there is an "actual controversy" as to Plaintiffs' second count sufficient to warrant declaratory relief.

Plaintiffs also have not presented an actual controversy as to whether NTESS's COVID-19 testing policy violates the ADA to support their request for a declaratory judgment under Count

---

[7] It is worth noting that the EEOC specifically permits employers to test their employees for COVID-19 because an individual with the virus poses a "direct threat" to others.  *See* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, question A.6 ("[A]n employer may choose to administer COVID-19 testing to employees before initially permitting them to enter the workplace and/or periodically to determine if their presence in the workplace poses a direct threat to others. . . .  Testing administered by employers consistent with current CDC guidance will meet the ADA's 'business necessity' standard.").

[8] *See Valdez v. Grisham*, 2021 WL 4145746, at *5 (D.N.M. Sept. 13, 2021) ("[F]ederal courts have consistently held that vaccine mandates do not implicate a fundamental right and that rational basis review therefore applies in determining the constitutionality of such mandates."); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (Easterbrook, J.) ("Given *Jacobson*[,] . . . there can't be a constitutional problem with vaccination against [COVID-19]." (citations omitted)); *Johnson v. Brown*, 2021 WL 4846060, at *13 (D. Or. Oct. 18, 2021) ("[T]he right to refuse vaccination is not a fundamental right." (citation omitted)); *Dixon v. De Blasio*, 2021 WL 4750187, at *8 (E.D.N.Y. Oct. 12, 2021) (same); *Norris v. Stanley*, 2021 WL 4738827, at *2 (W.D. Mich. Oct. 8, 2021) (similar).

Three.  In determining whether there is an actual controversy, courts "focus[] on the underlying facts, assessing whether they suggest an extant controversy between the parties or whether instead they merely call on [the court] to supply an advisory opinion about a hypothetical dispute."  *Am. Hallmark Ins. Co. of Tex. v. Morales-Kratzer, Inc.*, 2021 WL 2952908, at *3 (D.N.M. July 14, 2021) (citing to *Surefoot*, 531 F.3d at 1242 (10th Cir. 2008)).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Bd. of Educ. for Gallup-McKinley Cty. Sch. v. Henderson*, 696 F. App'x 355, 359 (10th Cir. 2017) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, Plaintiffs submit allegations concerning only Plaintiff Ricky Ferguson's physical ailments, but they have not alleged sufficient facts to show how Plaintiff Ricky Ferguson's alleged sinusitis (i.e., sinus infections) and/or sleep apnea are disabilities under the ADA, how those alleged disabilities are impacted by NTESS's COVID-19 testing policy, or otherwise how the testing policy violates his statutory rights.  Am. Compl. ¶ 9, p. 5, para. 2; *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998) (noting that ADA defines disability as an impairment that substantially limits one or more major life activities).  Likewise, Plaintiffs fail to properly allege how NTESS's COVID-19 testing policy is inconsistent with EEOC guidance, which expressly permits employers like NTESS to test employees entering the workplace for COVID-19.  *See* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, question A.6 ("[A]n employer may choose to administer COVID-19 testing to employees before initially permitting them to enter the workplace and/or periodically to

19

determine if their presence in the workplace poses a direct threat to others. . . .  Testing administered by employers consistent with current CDC guidance will meet the ADA's 'business necessity' standard.").

Moreover, the specific declaratory relief Plaintiffs seek—that testing is a medical exam under the ADA, that NTESS does not conduct an individualized assessment on "uninjected" employees, and that "uninjected" do not pose a direct threat to the workplace—is untethered to any of the *facts* asserted in the Complaint.  As noted, the only Plaintiff who allegedly has a (vaguely asserted) disability is Ricky Ferguson.  Plaintiffs, however, plead no facts whatsoever about his circumstances with respect to NTESS's testing policy or how the policy negatively impacted him because of his alleged disability.  Plaintiffs effectively ask this Court to rule on a hypothetical dispute, which is improper.  *Morales-Kratzer*, 2021 WL 2952908, at *3.

**2.    Plaintiffs Have Not Shown That This Court Should Exercise Its Discretion to Issue Declaratory Relief.**

Even if Plaintiffs had provided sufficient facts to show an actual controversy as to either their Second or Third Counts, this Court is not obligated to issue declaratory relief.  "[T]he Declaratory Judgment Act does not demand that a district court decide every declaratory suit brought to it even where the court has the power to do so."  *Surefoot LC*, 531 F.3d at 1248.  Instead, even if the court is satisfied that a plaintiff has overcome the first procedural hurdle, it still *must* consider a number of factors to determine whether the suit warrants the district court's attention, including:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether use of a declaratory

NTESS MOTION TO DISMISS

action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citing to *Mhoon*, 31 F.3d at 983).

Here, the first, second, third, and fifth factors weigh heavily against this Court issuing declaratory judgment on the Second Count.  A declaratory judgment that Plaintiffs have a constitutional right to bodily integrity (something no court has held) would not settle the controversy because the Court would still need to determine whether the policy at issue actually violated that alleged constitutional right.  Indeed, it appears that Plaintiffs are trying to get the Court to declare new constitutional rights in this case so that they can use it as res judicata or collateral estoppel in some other situation.  Indeed, their requests in Count Two seem untethered to any of the named plaintiffs' circumstances.  Seeking a declaratory judgment asking the Court to establish new constitutional rights in a vacuum is improper.

These same factors similarly weigh against this Court issuing an advisory opinion concerning Plaintiff's Third Count, which alleges that NTESS's testing protections violate the ADA.  Declaratory relief would not settle the controversy or clarify the issues because Plaintiffs have not alleged how NTESS discriminates against Plaintiff Ricky Ferguson—or anyone else— by requiring testing (or masking).  Plaintiffs rush to request declaratory relief, although other remedies—such as seeking an injunction or damages through a Count for violation of the ADA— would be more effective.  Indeed, it seems obvious that Plaintiffs are seeking a declaratory judgment for "procedural fencing" and to obtain some order they can use as res judicata or issue

preclusion in another suit.[9]  If Plaintiffs contend that NTESS's testing policy violates the ADA,

then they should simply state a count for violation of the ADA and support that count with

sufficient facts to state a claim.  They have done neither and, as a result, this Court should dismiss

Plaintiffs' Third Count with prejudice.

> **D.     The Court Should Dismiss Plaintiffs Peterson, Brooks, the Anonymous Does, and SNL Workforce Freedom Alliance's Claims Because They Lack Standing.**

Rule 12(b)(1) applies to challenges to a plaintiff's standing.  A court lacking jurisdiction

"cannot render judgment but must dismiss the case at any stage of the proceedings in which it

becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co*., 495 F.2d 906,

909 (10th Cir. 1974).  Motions to dismiss under Rule 12(b)(1) "generally take one of two forms.

The moving party may (1) facially attack the complaint's allegations as to the existence of subject

matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence

to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus.*

*Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (citation omitted).

Here, Plaintiffs seek injunctive and declaratory relief.  Plaintiffs David Peterson and Jon

Brooks, however, are no longer NTESS employees and, thus, they do not have standing to seek an

injunction enjoining NTESS.  *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465-66 (S.D.N.Y.

2013) ("[A] plaintiff generally lacks standing to seek injunctive or declaratory relief against his or

---

[9] The July Safer Federal Workforce Task Force guidance *requires* NTESS to ensure that unvaccinated employees mask and test.  Westlake Decl., ¶ 6, Ex. A [1-18-22].  The EEOC specifically permits employers to test their employees for COVID-19 because an individual with the virus poses a "direct threat" to others.  *See* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, question A.6 ("[A]n employer may choose to administer COVID-19 testing to employees before initially permitting them to enter the workplace and/or periodically to determine if their presence in the workplace poses a direct threat to others. . . .  Testing administered by employers consistent with current CDC guidance will meet the ADA's 'business necessity' standard.").

her former employer, as there is no prospect that he or she will be injured in the future.").

Moreover, two plaintiffs, John Doe #1 and Jane Doe #2, have provided fictitious anonymous names and are therefore improper parties to this lawsuit. Besides the practical consideration that it is impossible for NTESS to scrutinize their allegations based on the scant details they provide regarding their employment or "affiliation" with NTESS, courts in this district have recognized that "there is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit." *Trujillo v. Cent. N.W. Corr. Facility*, 2020 WL 7630676, at *4 (D.N.M. Dec. 22, 2020) (citing *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir. 1982)). In contrast, "Rule 10(a) requires that the title of a complaint 'name all the parties,' and Rule 17(a) prescribes that '[a]n action must be prosecuted in the name of the real party in interest.'" *Doe v. Atchison Hosp. Ass'n*, 2018 WL 324259, at *1 (D. Kan. Jan. 8, 2018). While there may be "exceptional circumstances" that warrant allowing a plaintiff to proceed anonymously, the Tenth Circuit has made clear that a "plaintiff should be permitted to proceed anonymously only in exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity" and that "the risk that a plaintiff may suffer some embarrassment is not enough." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). Because the anonymous plaintiffs have failed to assert any facts that their situation is exceptional, and indeed because other Plaintiffs have not proceeded anonymously, the Court should dismiss the claims of the anonymous plaintiffs.

Finally, Plaintiffs have not and cannot plead sufficient facts to establish that "SNL

Workforce Freedom Alliance" ("SWFA") has standing or capacity to sue under Rule 17 as an unincorporated association. As noted, *infra*, the counts in Plaintiffs' Complaint are both rooted in their contention that NTESS violated their constitutional rights, which is effectively an action under 42 U.S.C. § 1983. The Tenth Circuit, however, has held that unincorporated associations are not "persons" as set forth in Section 1983 and therefore do not have standing to sue under Section 1983. *Lippoldt v. Cole*, 468 F.3d 1204, 1213 (10th Cir. 2006); *N.M. Transp. Union v. City of Albuquerque*, 2015 U.S. Dist. LEXIS 192387, at *5-6 (D.N.M. Feb. 13, 2015) (dismissing complaint because unincorporated association lacked capacity or standing to sue under Section 1983). Moreover, while it is possible for employees to sue unincorporated associations for Title VII violations, NTESS is aware of no authority, outside the Rule 23 class action context, permitting a group of employees to band together as an "unincorporated association" to sue an employer for violations of employment discrimination laws. It appears that Plaintiffs are simply trying to get around Rule 23's requirements, which is improper.

Even if the SWFA could sue for Section 1983 or ADA violations, Plaintiffs still fail to plead sufficient facts to support SWFA's standing or capacity to sue. The U.S. Supreme Court has held that an association has standing to sue on behalf of its members only if the following conditions are met: (1) the association's members would otherwise have standing in their own right, (2) the interest the association is seeking to protect is germane to the association's purpose, and (3) neither the claim asserted, nor the relief requested, requires participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs plead these elements in a conclusory way, but they provide no facts to support it. For example, Plaintiffs do not identify when this alleged association was formed or any background

about it.  NTESS identified this problem in Plaintiffs' original Complaint, but Plaintiffs made no

effort in the Amended Complaint to plead the appropriate facts.  The Court should therefore

dismiss SWFA's claims.

      **B.**    **This Is Plaintiffs' Second, Failed, Attempt at Stating Their Claims, and This Court Should Dismiss Plaintiffs' Amended Complaint with Prejudice.**

Plaintiffs failed to allege sufficient facts to support their constitutional or declaratory relief

claims alleged in their original Complaint, and NTESS filed a motion to dismiss on that basis.  By

virtue of their Amended Complaint, Plaintiffs have now had the opportunity to cure the defects

that NTESS identified, but Plaintiffs have failed to do so.  This is because Plaintiffs simply cannot

plead sufficient facts to demonstrate that NTESS is a government actor or that declaratory relief

would ever be appropriate here.  As such, the Court should dismiss Plaintiffs' Amended Complaint

with prejudice.  *Weiss v. Massert*, 2007 WL 9730385, at *6 (D.N.M. Aug. 20, 2007) (dismissing

constitutional claim with prejudice due to the plaintiff's "broad, conclusory allegation[s]"); *Roybal*

*v. City of Albuquerque*, 2013 WL 12328827, at *5 (D.N.M. Nov. 15, 2013) (dismissing declaratory

relief claim with prejudice because the plaintiff alleged "non-specific and conclusory allegations").

**III.**    **CONCLUSION**

The Court should dismiss this lawsuit with prejudice.

                    Respectfully submitted,

                    By  */s/ Cindy Lovato-Farmer*
                    Cindy Lovato-Farmer
                    National Technology & Engineering Solutions of Sandia, LLC,
                    d/b/a Sandia National Laboratories
                    1515 Eubank SE
                    Mail Stop 0141
                    Albuquerque, NM  87123-0141
                    Tel: (505) 284-5284;  Fax: (505) 844-2363
                    cinlova@sandia.gov

and

Michael D. Weil (pro hac vice application pending)
Andrea Fellion (pro hac vice application pending)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105
Tel: (415) 442-1000
michael.weil@morganlewis.com
andrea.fellion@morganlewis.com
**Counsel for Defendant NTESS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

N. Ana Garner
Attorney for Plaintiffs
206 W. Main St.
Farmington, NM  87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com

Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM  88051
(575) 535-2760
jonmdiener@gmail.com

Warren V. Norred
Attorney for Plaintiffs
515 E. Border St.,
Arlington, TX  76010
T (817) 704-3984, F (817) 524-6686
wnorred@norredlaw.com


*/s/ Cindy Lovato-Farmer*
Cindy Lovato-Farmer

NTESS MOTION TO DISMISS