IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

SNL WORKFORCE FREEDOM ALLIANCE,        )
DAVID PETERSON, JON BROOKS, ANNA        )
BURNS, JOHN DOE #1 AND JANE DOE #2,        )
RICKY ALLEN FERGUSON,        )
      Plaintiffs,        )
              )
v.        )        Case No.  1:22-cv-00001-KWR-SCY
              )
NATIONAL TECHNOLOGY AND        )
ENGINEERING SOLUTIONS OF SANDIA,        )
LLC d/b/a SANDIA NAT'L LABORATORIES,        )
HONEYWELL INTERNAT'L, INC.        )
      Defendants.        )

**RESPONSE TO DEFENDANT HONEYWELL'S
<u>MOTION TO DISMISS</u>**

      Plaintiffs, by and through their attorneys, N. Ana Garner and Jonathan M. Diener, hereby

Respond as follows to Defendant Honeywell's Motion to Dismiss. As a preface, Honeywell

attached and referenced a Declaration of David Johnson, attached as Doc. 41-1. The entirety of

its Motion to Dismiss relies upon the Declaration, rather than just the Amended Complaint. The

Federal Rules of Civ. P. 12(d)  state that when matters outside the pleadings are submitted in the

context of a 12(b) Motion:

> (d) RESULT OF PRESENTING MATTERS OUTSIDE THE
>     PLEADINGS.
> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings
> are presented to and not excluded by the court, the motion <u>*must*</u> be treated
> as one for summary judgment under Rule 56. All parties must be given a
> reasonable opportunity to present all the material that is pertinent to the
> motion.

## I.      THE MOTION MUST BE TREATED AS ONE FOR SUMMARY JUDGMENT

      Upon submitting a declaration or affidavit in support of its Motion to Dismiss under Rule

12(B), the motion must now be treated as a Motion for Summary Judgment, which is governed

by Rule 56.  No longer is the Court just considering the four corners of the Complaint, but now

has ventured into the arena of fact finding and merits.  Rule 56 allows for various remedies in

that event:

> d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT.
> If a nonmovant shows by affidavit or declaration that, for specified reasons,
> it cannot present facts essential to justify its opposition, the court may:
>> (1) defer considering the motion or deny it;
>> (2) allow time to obtain affidavits or declarations or to take
>>    discovery; or
>> (3) issue any other appropriate order.

As stated in *StrikeForce Techs, Inc. v. PhoneFactor, Inc.,* Civ.A. No.13-430 RGA-MPT

(D.Ct. Del. 2013):

> A court ruling on a motion to dismiss may consider documents integral to or
> explicitly relied upon in the complaint, though it may not consider matters
> extraneous to the pleadings without converting the motion to dismiss into a motion
> for summary judgment. Consequentially, a court must convert a Rule 12(b)(6)
> motion to dismiss into a Rule 56 motion for summary judgment when considering
> extraneous documents. Once the court considers extraneous documents, it has gone
> beyond the scope of the complaint and is analyzing the merits of the case.

> If a motion under FED. R. CIV. P. 12(b)(6) is converted to a motion under FED. R.
> CIV. P. 56, a plaintiff is entitled to conduct discovery before the motion can be
> resolved. In such circumstances, this court has denied a motion to dismiss with
> leave to re-file a motion for summary judgment following the close of fact
> discovery. (citations omitted)

In this case, nonmovant has no access to information other than what can be found online

as above and must conduct discovery to see if any of the elements of alter-ego or agency, or

theories below would hold Honeywell liable for the actions of NTESS, are present.  Declaration

of  N. Ana Garner, Attorney is submitted in support of the need for discovery to respond to the

Motion for Summary Judgment and Declaration.

## II.    STANDARDS FOR WHEN A PARENT COMPANY CAN BE HELD LIABLE FOR ACTS OF ITS WHOLLY OWNED SUBSIDIARY COMPANY

Ordinarily, a parent company is not liable for the actions of its wholly owned subsidiary. However, exceptions do exist: alter-ego, agency, or when the subsidiary becomes the parent's instrumentality.

There are various tests applied to each of the above theories. See: In an employment age discrimination case from Puerto Rico, the Court discussed other theories concerning  whether a parent corporation was acting as an employer of employees of its subsidiary. *Ashe v. Distribuidora Norma, Inc.,* 7 F.Supp. 3d 134 (D.P.R. 2014). These tests and theories apply to ADA violations as well as other discrimination claims, and therefore, are relevant to our case at hand.

When applying the *single employer doctrine* to a specific set of facts, the First Circuit has recognized three different tests that have been used to determine whether multiple corporate entities acted as one: a) the integrated-enterprise test, *146 b) the corporate law 'sham' test, and c) the agency test. *Torres–Negron v. Merck & Company, Inc.,* 488 F.3d 34, 42 n. 8 (1st Cir.2007) (citing *Romano v. U–Haul Int'l,* 233 F.3d 655, 665 (1st Cir.2000) ). Nevertheless, the First Circuit has not yet determined which of these three tests is proper for a *single employer doctrine* analysis. *Id.*

Under the *integrated-enterprise test,* there are four factors to consider: 1) common management, 2) interrelation between operations, 3) centralized control over labor relations, and 4) common ownership. *Romano,* 233 F.3d at 662. All four factors are not required in order for the single employer doctrine to apply. *Torres–Negron,* 488 F.3d at 42 (citing *Knowlton v. Teltrust Phones, Inc.,* 189 F.3d 1177, 1184 (10th Cir.1999) ; *and Pearson v. Component Tech. Corp.,* 247 F.3d 471, 486 (3d Cir.2001) ). "[T]he test should be applied flexibly, placing special emphasis on the control of employment decisions." *Romano,* 233 F.3d at 666 (citing *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2d Cir.1995) ). "The integrated-enterprise test currently appears to be the standard adopted, or at least applied, by a majority of circuits that have reached the issue." *Romano,* 233 F.3d at 665 (citing several circuit cases).

On the other hand, the *corporate law 'sham' test* is used to determine whether a parent-subsidiary relationship is actually fake. *Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24, 27 (1st Cir.1980) (citing *Hassell v. Harmon Foods, Inc.,* 336 F.Supp. 432, 433 (W.D.Tenn.1971), aff'd, 454 F.2d 199 (6th Cir.1972) ). A parent-subsidiary relationship is a sham when the two companies in reality acted as a single employer. *Id.* If the relationship is found to be a sham, the "parent" is also responsible for the illicit actions of the "subsidiary."

Lastly, the *agency test* constitutes a method to evaluate the parent-subsidiary company relationship. A parent company may be liable for the actions of its subsidiary company. This occurs when the parent company's control over its subsidiary is such that it practically makes the subsidiary an agent of the parent company. *Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24, 27 (1st Cir.1980) (citing *Linskey v. Heidelberg Eastern, Inc.,* 470 F.Supp. 1181, 1183–84 (E.D.N.Y.1979) ; *and EEOC v. Upjohn Corp.,* 445 F.Supp. 635, 638 (N.D.Ga.1977) Under the *agency test,* there are three instances where a parent company/corporation and a subsidiary company/corporation should be treated as one entity:

1) where the two corporations would be treated as one ('piercing the corporate veil') with regard to creditors' claims under corporate law; (2) where the subsidiary has been created to escape liability under the anti-discrimination laws; or (3) where the parent corporation 'directed the discussion, act, practice, or policy of which the employee of its subsidiary was complaining.' *Papa v. Katy Industries, Inc.,* 166 F.3d 937 (7th Cir.1999).

Obviously, each of these tests is extremely fact-dependent, and would require discovery from the parties as to the details of their relationship, to be able to defend a Motion for Summary Judgment by Honeywell.

### III.   HONEYWELL HAS SIGNIFICANT CONTACTS WITH NEW MEXICO

A brief internet research of Honeywell International, New Mexico, reveals that Honeywell has a significant presence in Albuquerque, New Mexico, as well as a large plant in Rio Rancho, New Mexico. It specializes in "aerospace technology" and other highly technical areas of industry.

Here are some of the websites that show Honeywell International, Inc. has a significant presence in New Mexico, specifically, Albuquerque. See:

https://www.dnb.com/business-directory/company-rofiles.honeywell_international_inc.053176b60126f18ba9b6fd359ee7d91d.html

From the Company description of this site: "Honeywell International Inc. is located in Albuquerque, NM, United States and is part of the Aerospace Product and Parts Manufacturing

Industry. Honeywell International Inc. has 46 employees at this location. There are 2,082 companies in the Honeywell International Inc. corporate family."

This website shows another location of Honeywell Intern'l in Albuquerque showing it to be aligned with the State of New Mexico in terms of contracts:

https://www.newmexicobids.us/new-mexico-contractors/contractor-6256167-HONEYWELL-INTERNATIONA.htm

Another website gives Honeywell International, Inc.'s Albuquerque address as being on Kirtland Air Force Base, where, coincidentally, Sandia National Labs operates. See https://www.governmentcontracts.us/government-contractors/company-BSG2648219-honeywell-international-inc-Albuquerque-NM.htm, which gives the address as 2050-a Wyoming Blvd SE Albuquerque, NM 87117-0001. Mapping this address shows it to be on the Base.

This cursory search on the internet shows at least three Honeywell locations in the greater Albuquerque metro area, including one in Rio Rancho, NM. Honeywell's agent for service of process is located in Hobbs, as shown on the issued summonses, exactly the same Registered agent as for NTESS.

What this information is provided for is to show that this Court can exercise personal jurisdiction over Honeywell, just based on its activities doing business in New Mexico.

For the foregoing reasons, Plaintiffs respectfully request that Plaintiffs be allowed discovery to ascertain whether facts exist which could render Honeywell liable for the acts of its subsidiary, NTESS.

Respectfully submitted,

By: _/s/ N. Ana Garner_
Attorney for Plaintiffs

5

206 W. Main St.
Farmington, NM 87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com


By: */s/ Jonathan Diener*
Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM 88051
(575) 535-2760
jonmdiener@gmail.com

NORRED LAW, PLLC

By: /s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094
wnorred@norredlaw.com
515 E. Border St., Arlington, Texas 76010
Tel. (817) 704-3984, Fax. (817) 524-6686
Attorney for Plaintiffs
*Pro Hac Vice Application to be submitted*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 1st day of March, 2022, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

By: */s/ N. Ana Garner*
N. Ana Garner
Garner Law Firm
206 W. Main
Farmington, New Mexico 87401
Telephone: (505) 930-5170
Garnerlaw@yahoo.com