IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SNL WORKFORCE FREEDOM ALLI-
ANCE, DAVID PETERSON, JON
BROOKS, ANNA BURNS, JOHN DOE
#1, JANE DOE #1, RICKY ALLEN FER-
GUSON

               Plaintiffs,

                             Case No. 1:22-cv-00001-KWR-SCY

v.

NATIONAL TECHNOLOGY AND ENGI-
NEERING SOLUTIONS OF SANDIA
LLC d/b/a SANDIA NAT'L LABORATO-
RIES, HONEYWELL INTERNAT'L,
INC.,

               Defendants.

**NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA LLC'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE**

## I.    INTRODUCTION

Plaintiffs' Response to National Technology and Engineering Solutions of Sandia's ("NTESS's") motion to dismiss fails to overcome NTESS's arguments or assert any legal or factual basis to avoid dismissal of their Amended Complaint, with prejudice.

- Plaintiffs cite no authority for their argument that the Court should ignore federal pleading standards and apply New Mexico pleading standards, particularly to this lawsuit that Plaintiffs filed in federal court solely based on federal claims.

- Plaintiffs' conjecture that NTESS could reinstate its vaccine requirement is insufficient to overcome NTESS's argument that their vaccine-related claims are now moot and subject to dismissal.

- Plaintiffs cite no legal authority that holds that their bare allegations—that NTESS is a Department of Energy ("DOE") contractor, performed work for the State of New Mexico, and offered COVID-19 vaccinations to its employees—are sufficient to state a claim that NTESS is either a state or federal actor. The Constitution does not apply to private actors

such as NTESS, and Plaintiffs' constitutional claims must be dismissed.

- Plaintiffs fail to cite sufficient authority that, even assuming that NTESS is a government actor (it is not), masking and testing requirements implicate a constitutional right to bodily integrity to support their Second Count for Declaratory Judgment.

- Plaintiffs still failed to tie their Third Count for Declaratory Judgment related to alleged ADA violations to any particular Plaintiff, and, even if they could, Plaintiffs failed to allege that they exhausted administrative remedies.

- Plaintiffs do not even discuss how their declaratory judgment counts satisfy any of the *Mhoon* factors. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994).

- Finally, Plaintiffs failed to properly explain how the former employee Plaintiffs, the Doe Plaintiffs, or the unincorporated association Plaintiffs have standing.

Plaintiffs' deficient response confirms that Plaintiffs have not—and, after two chances, cannot—plead sufficient facts to plausibly allege any of their claims, and therefore the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

## II.   LEGAL ARGUMENT

### A.   Plaintiffs Effectively Admit That They Cannot Meet the Federal Pleading Standard.

Plaintiffs' argument that this Court should apply New Mexico pleading standards to their Amended Complaint asserting *only* federal claims in federal court is baseless. It is hornbook law that the Federal Rules of Civil Procedure ("Rules") govern the sufficiency of a pleading in federal actions—even in cases removed from state court to federal court, which this case is *not*. *Grasshopper Nat'l Med., LLC v. Hartford Cas. Ins. Co.*, 2016 WL 4009834, at *30 (D.N.M. July 7, 2016) (rejecting application of New Mexico pleading standards to a case removed to federal court because it is "uncontestable that *Iqbal/Twombly's* pleading standards and not New Mexico state court pleading standards govern the Court's determination whether it should grant the Motion [to dismiss]"). By now arguing for application of New Mexico pleading standards—particularly after

NTESS REPLY IN SUPPORT OF MOTION TO DISMISS

already having had the chance to amend their complaint—Plaintiffs all but concede that their Amended Complaint does not, and cannot, state a claim.

**B.**     **The Court Should Strike or Dismiss Plaintiffs' Vaccine Allegations as Moot.**

Plaintiffs fail to overcome NTESS's argument that their claims related to NTESS's vaccine requirement are moot.[1] As predicted, Plaintiffs argue that NTESS could reinstate its vaccine policy at any time, but Plaintiffs' speculation is not enough to defeat mootness. *Wade v. Univ. of Conn. Bd. of Trs.*, 2021 WL 3616035, at *8 (D. Conn. 2021) ("a speculative possibility of future revocation of an exemption is not enough to defeat mootness"). In this same vein, whether the Executive Order ("EO") will be enforceable in the future is pure speculation. If the Eleventh Circuit or United States Supreme Court finds that the EO (and resulting contract modifications) is lawful, federal contractors such as NTESS would be obligated to comply with it; Plaintiffs' allegations to the contrary are simply incorrect.[2] Plaintiffs have not alleged anything that would suggest that NTESS or the federal government intends to reassert a vaccine mandate as stated in the EO, and the Court should dismiss this claim as moot.

**C.**     **Plaintiffs Failed to Plead Sufficient Facts Demonstrating That Constitutional Claims Apply Here.**

**1.**     **Plaintiffs Failed to Plead Sufficient Facts Demonstrating That NTESS is a State or Federal Actor.**

Whatever label Plaintiffs try to put on their constitutional counts, the bottom line is that NTESS cannot, as a threshold matter, be liable for constitutional violations unless Plaintiffs can

---

[1] Plaintiffs' argument that NTESS disclosed settlement communications is erroneous and irrelevant. First, NTESS did not disclose "evidence of an offer-to compromise a claim" as set forth in Federal Rule of Evidence 408. Quite the opposite, NTESS disclosed that it told Plaintiffs that they should dismiss the case because their claims were moot, and Plaintiffs declined. That's not evidence "of an offer to compromise." Even if it were, NTESS is not seeking to admit that evidence as proof of the invalidity of Plaintiffs' claim. It is simply proof that Defendant informed Plaintiffs that their claims were meritless, but Plaintiffs decided to pursue them anyhow, forcing this motion practice. More to the point, whether NTESS disclosed settlement communications does not cure the defects in Plaintiffs' claims, and they are, therefore, irrelevant.

[2] https://crsreports.congress.gov/product/pdf/IN/IN11803 ("On December 7, 2021, a second U.S. district court ruling enjoined nationwide enforcement of the COVID-19 vaccine mandate. The Office of Management and Budget (OMB) issued related guidance indicating that the U.S. government would not enforce contractual clauses implementing E.O. 14042 within the United States and outlying areas while litigation is ongoing"); https://www.acquisition.gov/far/part-43#FAR_43_202 ("Generally, Government contracts contain a changes clause that permits the contracting officer to make unilateral changes, in designated areas, within the general scope of the contract.").

demonstrate that it is a state or federal actor. Plaintiffs, however, cannot in good faith properly plead sufficient facts to state a claim that NTESS is a state or federal actor.

In their Response, Plaintiffs do not posit anything new that was not already asserted in their deficient Amended (or original) Complaint. Again, they confuse their arguments between whether NTESS is a state actor or a federal actor. With respect to the state-actor allegations, even if this Court were to give Plaintiffs the benefit of the doubt that they have plausibly alleged that NTESS provides COVID-19 vaccinations, that the state encouraged NTESS's vaccination program, and that NTESS participates in the state's contact-tracing program, that is still not enough to show that NTESS is a state actor under any applicable legal test. Resp. p. 7. There is no allegation—nor can there be—that NTESS and New Mexico were "jointly engaged" in providing vaccinations to NTESS employees. Even if there were such an allegation, COVID-19 vaccination is not a state function; numerous pharmacies, clinics, and other medical facilities offer COVID-19 vaccines, but that does not render them all an arm of the state government. Similarly, the fact that NTESS allegedly received funding for providing the state COVID-19 contact-tracing services is similarly insufficient to plausibly allege that NTESS is a New Mexico state actor because payments under government contracts are insufficient to establish a symbiotic relationship between the two. *Wittner v. Banner Health*, 720 F.3d 770, 776 (10th Cir. 2013) (the allegation that defendant receives state funding does not create a state action when there is no allegation that the state used its funding to coerce the particular challenged conduct).

The fact that NTESS is a DOE NNSA contractor and, as such, is required to comply with federal contractor requirements is also insufficient to meet the pleading standard that NTESS is a federal actor. Plaintiffs argue that they challenge all of NTESS's COVID-19 protections, including masking, social distancing, PCR testing, quarantining, and vaccination. Resp. p. 8. Plaintiffs, however, have not provided any argument that merely complying with federal contractor requirements (or local COVID-19 protection orders) is sufficient to show that NTESS is functioning as the government. Most—if not all—private companies in operation during the COVID-19 pandemic have adopted some, if not all, of these protections, and adopting masking, testing, and other disease-

NTESS REPLY IN SUPPORT OF MOTION TO DISMISS

prevention policies is simply insufficient to show that NTESS is, in fact, an arm of the federal government.

Plaintiffs finally argue that this Court cannot determine whether NTESS is a state or federal actor on a motion to dismiss because "state actor status is a fact determinative issue" and "[d]iscovery is needed" in order to make this determination. Resp. p. 8. The Court should reject Plaintiffs' request that the Court overlook their pleading failures to allow them to conduct discovery to prove up their claims. "As the Supreme Court made clear in *Twombly* . . . Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance some facts might exist which could support a plausible claim." *Roth v. Wilder*, 420 Fed. App'x 804, 806 (10th Cir. 2011) (affirming dismissal of the plaintiff's complaint under Rule 12(b)(6)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007)).  Indeed, courts in the Tenth Circuit as well as the District of New Mexico routinely grant Rule 12(b) motions when the plaintiff has not alleged sufficient facts to show that the defendant is a government actor. *Murphy v. Hylton*, 281 F. App'x 818, 821 (10th Cir. 2008) (dismissing constitutional claim against a federal contractor physician, Dr. Hylton, because "[plaintiff] fails to draw the requisite nexus between Dr. Hylton and the federal government such that we might say that Dr. Hylton's actions were fairly attributable to the government"); *Fawcett v. Surgeon Gen. U.S.*, 2007 WL 9729023, at *2 (D.N.M. Nov. 9, 2007) (granting motion to dismiss because "[p]laintiff has neither identified a person who deprived him of a constitutional right, nor demonstrated that a federal actor deprived him of that right").

### 2.   A *Bivens* Claim Is Not Available Here, Which Plaintiffs' Cited Case Law Confirms.

Later in their Response, Plaintiffs also argue that because NTESS is a federal contractor, they are entitled to bring a *Bivens* claim against it for injunctive relief. Resp. p. 10.  Preliminarily, injunctive relief is not a stand-alone cause of action—it is a remedy for another cause of action. *See Macquigg v. Albuquerque Pub. Sch. Bd. of Educ.*, 2015 U.S. Dist. LEXIS 199430, at *30

(D.N.M. Feb. 6, 2015) ("declaratory judgments and injunctions are remedies, not causes of action") (citing *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014)). As the Supreme Court noted in *Correctional Services Corp. v. Malesko*, injunctive relief for a constitutional violation is not available under a *Bivens* claim, but it theoretically *might* be available under another sufficiently pled cause of action. 534 U.S. 61, 74 (2001) (noting that "[i]nmates in respondent's position also have full access to remedial mechanisms established by the [Bureau of Prisons], including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program (ARP)," and "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally"). While Plaintiffs have not plausibly alleged that NTESS is a federal actor and therefore cannot bring a *Bivens* claim, they also have not sufficiently alleged any cause of action that would allow them to seek injunctive relief under any theory.

The cases Plaintiffs cite do not change this conclusion. For example, Plaintiffs cite the Ninth Circuit's opinion in *Ginn v. Mathews* to argue that a *Bivens* claim may be appropriately brought against a federal contractor such as NTESS. 533 F.2d 477 (9th Cir. 1976). Subsequent Supreme Court precedent, however, has significantly abrogated *Ginn*, and the Ninth Circuit has recognized that *Ginn*'s holding no longer applies. *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1341 (9th Cir. 1997) ("As noted by the district court, subsequent decisions by the United States Supreme Court have significantly undermined the holding of *Ginn*. The Court has since made it clear that governmental funding and extensive regulation without more will not suffice to establish governmental involvement in the actions of a private entity."). The other case that Plaintiffs cite—*Schowengerdt v. General Dynamics Corp.*—specifically relies on *Ginn*, and its holding has also been abrogated by subsequent case law as identified in *Morse* as well. 823 F.2d 1328 (9th Cir. 1987).

None of Plaintiffs' other cases help them either. *Williams v. Klien* reiterates that a *Bivens* claim is not appropriate here because Plaintiffs have another avenue to seek relief—the ADA and

Title VII. 20 F. Supp. 3d 1171 (D. Colo. 2014) (noting that plaintiffs' allegations sufficiently allege a retaliation claim). The courts in both *Garvin v. Corrections Corp. of America, Inc.* and *Peoples v. CCA Detention Center* dismissed the respective *Bivens* claims, and Plaintiffs' reliance on these cases is misplaced. *Garvin*, 2012 WL 262725, at *2 (N.D. Ohio Jan. 27, 2012) ("To the extent that Plaintiff's Complaint can be liberally construed as asserting a *Bivens* claim, the claim(s) must be dismissed."); *Peoples*, 422 F.3d 1090, 1101 (10th Cir. 2005), *op. vacated in part on reh'g en banc*, 449 F.3d 1097 (10th Cir. 2006) ("We agree with the District Court, however, that there is no implied private right of action for damages under *Bivens* against employees of a private prison for alleged constitutional deprivations when alternative state or federal causes of action for damages are available to the plaintiff. Such a claim is therefore properly dismissed under Rule 12(b)(6).").

Plaintiffs' reliance on *Burns v. Hickenlooper*, *Grayeyes v. Cox*, *Flood v. Clearone Communications, Inc*., and *Armstrong v. Exceptional Child Center, Inc.*, is similarly misplaced. *Burns* specifically addressed a Section 1983 claim, which Plaintiffs now argue is not the basis of their claim. Resp. Section VII; *Burns*, 2014 WL 3634834, at *1 (D. Colo. July 23, 2014) ("Plaintiffs' two claims for relief under 42 U.S.C. § 1983 allege violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution."). *Grayeyes* addressed the Utah, not the federal, constitution, although—unlike here—that plaintiff articulated the legal basis of his claim regardless. 2018 WL 3830073, at *7 (D. Utah Aug. 9, 2018) ("Utah Code Ann. § 20A-9-202(5) outlines a specific procedure to challenge a candidate."). *Flood* and *Armstrong* simply reiterate that injunctive relief is an appropriate remedy so long as a plaintiff plausibly articulates the correct legal basis for his claim, which Plaintiffs have not done here. *Flood*, 634 F. Supp. 2d 1257, 1267 (D. Utah 2009), *vacated*, 2012 WL 192709 (D. Utah Jan. 23, 2012); *Armstrong*, 575 U.S. 320, 327 (2015). In the end, Plaintiffs have not alleged sufficient facts that NTESS is a state or federal actor or a sufficient legal basis for their constitutional claims, and thus their constitutional claims must be dismissed.

### D.    Plaintiffs Cannot Save Their Declaratory Judgment Claims.

Plaintiffs' arguments also do not save their declaratory judgment claims. First, with respect

to Plaintiffs' claims that NTESS's (paused) vaccination, as well as its testing and masking policies, implicate Plaintiffs' right to bodily integrity, Plaintiffs cite to no authority to support that argument. While Plaintiffs cite *Planned Parenthood v. Casey* to argue that the right to bodily integrity exists, they cite no authority that vaccine requirements somehow implicate those rights—and courts have, in fact, found otherwise. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir.), *op. clarified*, 17 F.4th 368 (2d Cir. 2021) ("Plaintiffs provide no basis for concluding that the vaccination requirement here . . . violates a fundamental constitutional right."). Further, Plaintiffs have not—and cannot—point to any case law showing that masking or testing implicates the right to bodily integrity. Fundamental liberty interests such as marriage, contraception, and bodily integrity are "deeply rooted in this Nation's history and tradition,"[3] but courts have found that mask and test requirements do not implicate such fundamental liberties. *Forbes v. County of San Diego*, 2021 WL 843175, at *5 (S.D. Cal. Mar. 4, 2021) ("Here, Plaintiff's first claim concerns only whether he must wear a mask during the pandemic as a healthy individual. He does not plausibly allege that this interest is 'deeply rooted in this Nation's history and tradition.'"); *Troogstad v. City of Chicago*, 2021 WL 5505542, at *5 (N.D. Ill. Nov. 24, 2021) ("[T]he Court concludes that Plaintiffs have not shown that the . . . testing orders in question implicate their fundamental right to bodily autonomy."). Indeed, EEOC Regulations *specifically permit* COVID-19 testing. Plaintiffs have not identified a single case where the plaintiff overcame a motion to dismiss by alleging that the defendant *complied* with federal guidance. In fact, courts in this circuit routinely give the EEOC substantial deference. *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 893–94 (10th Cir. 2015) ("[I]t bears repeating that we are bound to follow our own precedent and its express incorporation of the EEOC regulations."); *Duvall v. Ga.-Pac. Consumer Prod., L.P.*, 607 F.3d 1255, 1262 (10th Cir. 2010) ("As the agency tasked with enforcing the ADA, we accord the views of the EEOC substantial deference.").

---

[3] *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977).

Plaintiffs' attacks on *Jacobson v. Massachusetts*[4] are also unpersuasive, particularly where no court has yet overturned it despite the massive amount of litigation about vaccine mandates around the country. *See, e.g.*, *Denis v. Ige*, 538 F. Supp. 3d 1063, 1082 (D. Haw. 2021) (dismissing the complaint, finding that "[t]here is no dispute that *Jacobson* remains good law today"); *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1055 (E.D. Cal. 2021) (dismissing the complaint, finding that "[n]othing in *Jacobson* supports the proposition that the varying levels of constitutional review should be modified in the context of an emergency"); *Williams v. Trump*, 495 F. Supp. 3d 673, 682 (N.D. Ill. 2020), *aff'd sub nom.*, *Williams v. Pritzker*, No. 20-3231, 2021 WL 4955683 (7th Cir. Oct. 26, 2021) (dismissing the complaint, finding that "*Jacobson* preserves the authority of the judiciary to strike down laws that use public health emergencies as a pretext for infringing individual liberties" (citations omitted)). Even Justice Gorsuch's concurring opinion does not suggest that *Jacobson* is bad law; rather, he makes the basic point that the Constitution still applies even during a pandemic. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 208 L. Ed. 2d 206 (2020) ("*Jacobson* didn't seek to depart from normal legal rules during a pandemic, and it supplies no precedent for doing so"). NTESS has never argued otherwise; it has argued only that it is not subject to Constitutional claims and, even if it was, Plaintiffs still failed to state a claim.

Plaintiffs also have not overcome NTESS's argument that their declaratory-relief ADA claim improperly asks this Court for an advisory opinion based on hypothetical facts that are not tied to any particular plaintiff. Although Plaintiffs now argue that their ADA claims apply to all members of "SNL Workforce Freedom Alliance" ("SWFA"), they have not alleged their members' particular disabilities and have not plausibly alleged that NTESS violated the ADA as to them. To the extent that Plaintiffs are now trying to tie their unparticularized declaratory judgment claim to a particular Plaintiff, they have not alleged that any Plaintiff, including Mr. Ferguson, has exhausted its administrative remedies by filing an administrative charge and receiving a right-to-sue notice letter from the EEOC. As a result, Plaintiffs have not met the basic pre-filing requirements

---

[4] 197 U.S. 11, 39 (1905).

to request relief under the ADA, and their third count for declaratory relief that vaccination, testing, and masking policies are violations of the ADA should be dismissed. *Hyman v. N.M. State Univ.*, 2020 WL 1514801, at *13 (D.N.M. Mar. 30, 2020) ("To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue.").

Finally, Plaintiffs do not even discuss how their declaratory judgment counts satisfy any of the *Mhoon* factors. *See Mhoon*, 31 F.3d at 982-83 (listing factors). Plaintiffs' failure to even address these required factors confirms that declaratory relief is not appropriate, and the Court should dismiss the declaratory judgment counts.

### E. Plaintiffs Anonymous Does, Peterson, Brooks, and SWFA Lack Standing.

Plaintiffs also fail to overcome NTESS's arguments that the Court should dismiss the anonymous Doe plaintiffs. Plaintiffs rely on largely the same precedent they cited in their Doe Motion to try to excuse identifying the Doe Plaintiffs, and this Court should deny Plaintiffs' request for the same reasons outlined in Defendant's Response to Plaintiffs' Doe Motion. The additional case upon which Plaintiffs rely does not assist their argument. The court in *Doe v. Atchison Hospital Association* found that "even if plaintiff had demonstrated the need for anonymity, the court would not conclude . . . that plaintiff's privacy rights outweigh the countervailing public interests." 2018 WL 324259, at *3 (D. Kan. Jan. 8, 2018). The *Atchison* court also collected Tenth Circuit opinions that denied the plaintiff's request to proceed anonymously because disclosing alleged "sexual and immoral improprieties" and "alcoholism" was insufficient to outweigh the public's interest in legal proceedings. *Id*.

With respect to the former employee Plaintiffs, Plaintiffs argue that they have standing because they requested an injunction ordering reinstatement. Resp. p. 3. Plaintiffs, however, do not request reinstatement in their Amended Complaint. Instead, this request appears only in Plaintiffs' Motion for Injunctive Relief. Plaintiffs' Amended Complaint only asks the Court to enjoin masking and testing policies, and former employees Peterson and Brooks do not have standing to

NTESS REPLY IN SUPPORT OF MOTION TO DISMISS

request an injunction concerning their former employer's policies.[5]

Plaintiffs similarly fail to sufficiently explain how SWFA has associational standing to sue. Resp. pp. 4-5. Plaintiffs instead make conclusory arguments, without specificity, that associations may have standing, and then point to *Feds for Medical Freedom v. Biden* to show that associational standing is proper. 2022 WL 188329 (S.D. Tex. Jan. 21, 2022). That case does not help them and, instead, proves NTESS's point. Unlike Plaintiffs here, the plaintiffs in *Feds for Medical Freedom* clearly alleged that the organization had filed incorporation papers with the state, as well as other details about the association, which is something that Plaintiffs here have not done.[6] Second, that case did not specifically address whether the association had standing to sue, and it is therefore irrelevant to this point. 2022 WL 188329, at *4; *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered." (citation omitted)).

Indeed, Rule "17(b) only gives unincorporated associations the capacity to make and be subject to federal claims; it does not transform any particular group of individuals into an unincorporated association. Instead, such an association must be recognized as a legal entity by other law." *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 628 (D.N.J. 2010) (citation omitted). Plaintiffs have not alleged facts that would demonstrate that SWFA is recognized as a legal entity, nor have they articulated which law recognizes them as a legal entity, and SWFA therefore does not have standing to sue.

## III.    CONCLUSION

The Court should dismiss this lawsuit with prejudice.

---

[5] Each of the opinions on which Plaintiffs rely addresses a terminated employee's request for an injunction compelling reinstatement, not an injunction addressing the former employer's policies and procedures, and these cases are simply not relevant here. *Mescalero Apache Tribe v. Hickel*, 432 F.2d 956, 957 (10th Cir. 1970) (Plaintiffs "sought mandatory injunctive relief requiring their reinstatement as employees of the Mescalero Agency"); *Bruce v. Kelly*, 2021 WL 4284534, at *7 (D. Kan. Sept. 21, 2021) ("[P]laintiff asserts that he seeks prospective injunctive relief in the form of reinstatement of employment."); *Moore v. Univ. of Kan.*, 118 F. Supp. 3d 1242, 1252 (D. Kan. 2015) (The plaintiff seeks "reinstatement"); *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 962 (10th Cir. 1989) ("Reinstatement of a federal employee was denied").

[6] *See Feds for Med. Freedom, et al. v. Biden, et al.*, 2021 WL 6062709, ¶ 10 (S.D. Tex. 2021) ("Plaintiff Feds for Medical Freedom is a non-profit membership organization with its incorporation paperwork on file in Nevada.").

Respectfully submitted,

By */s/ Cindy Lovato-Farmer*
Cindy Lovato-Farmer
National Technology & Engineering Solutions of Sandia, LLC,
d/b/a Sandia National Laboratories
1515 Eubank SE
Mail Stop 0141
Albuquerque, NM 87123-0141
Tel: (505) 284-5284;  Fax: (505) 844-2363
cinlova@sandia.gov

and

Michael D. Weil (pro hac vice)
Andrea Fellion (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
michael.weil@morganlewis.com
andrea.fellion@morganlewis.com

**Counsel for Defendant NTESS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March 2022 I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

N. Ana Garner
Attorney for Plaintiffs
206 W. Main St.
Farmington, NM 87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com

Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM 88051
(575) 535-2760
jonmdiener@gmail.com

Warren V. Norred
Attorney for Plaintiffs
515 E. Border St.,
Arlington, TX 76010
T (817) 704-3984, F (817) 524-6686
wnorred@norredlaw.com

*/s/ Cindy Lovato-Farmer*
Cindy Lovato-Farmer