**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

SNL WORKFORCE FREEDOM ALLIANCE,
DAVID PETERSON, JON BROOKS,
ANNA BURNS, JOHN DOE, and JANE DOE,

        Plaintiffs,

        v.                                 No. 1:22-cv-00001-KWR-SCY

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF SANDIA, LLC,
*doing business as Sandia National Laboratories,*
HONEYWELL INTERNATIONAL, INC.,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court upon the following motions:

- Plaintiffs John Doe's and Jane Doe's Motion to Permit Proceeding with Doe Plaintiffs (**Doc. 39**);

- Defendant Honeywell International Inc.'s Motion to Dismiss for lack of Personal Jurisdiction under Federal Rule 12(b)(2), and in the Alternative, Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) (**Doc. 41**); and

- Defendant National Technology and Engineering Solutions of Sandia, LLC's Motion to Dismiss for Lack of Jurisdiction under Federal Rule 12(b)(1) and/or Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6), and/or Strike under 12(f) (**Doc. 42**).

This case concerns certain employees' challenge to their employer's COVID-19 vaccine, testing, and masking requirements. Plaintiffs appear to assert that the vaccine, testing, and mask mandates violate their constitutional right to bodily integrity. Having reviewed the parties' pleadings and

the applicable law, the Court dismisses the constitutional claims under Counts I and II and rules as follows:

- Plaintiff SNL Workforce Freedom Alliance has not shown it possesses standing, and therefore its claims are dismissed without prejudice;

- Plaintiffs did not plead sufficient facts to show that Defendant NTESS is a government actor, and therefore all constitutional claims under Count I and II are dismissed for failure to state a claim;

- Alternatively, Counts I and II are dismissed because Plaintiffs did not carry their burden to show a plausible violation of their constitutional right to bodily integrity;

- The Court lacks personal jurisdiction over Defendant Honeywell International, Inc., and the Court dismisses the claims against Defendant Honeywell without prejudice;

- Alternatively, to the extent the Court has personal jurisdiction over Defendant Honeywell, the Court would dismiss the vicarious liability claims against it for failure to state a claim; and

- Plaintiffs John Doe and Jane Doe did not show that proceeding anonymously in this case is appropriate.

However, Count III and a portion of Count II remain, subject to further briefing as explained below.  Therefore, Defendants' motions to dismiss **(Docs. 41 and 42)** are **GRANTED IN PART** and Plaintiff John Doe's and Jane Doe's motion to proceed anonymously **(Doc. 39)** is **DENIED.**

## BACKGROUND

Defendant National Technology and Engineering Solutions of Sandia, LLC ("NTESS") is a privately held company wholly owned by Defendant Honeywell International, Inc.  Defendant

NTESS operates Sandia National Laboratory under a contract with the U.S. Department of Energy's National Nuclear Security Administration.

On September 9, 2021, President Biden issued Executive Order 14042, requiring all federal contractors to comply with any guidance published by the Safer Federal Workforce Task Force (the "Task Force") regarding the Covid-19 pandemic. On September 24, 2021, the Task Force issued guidance requiring all covered employees of federal contractors to be fully vaccinated against the Covid-19 virus (the "Contractor Mandate"). The guidance instructed that contractors must provide accommodations to employees for medical and religious reasons. The Task Force also published masking and testing guidance. As a private federal contractor, NTESS asserts its was required to comply with the Contractor Mandate.

NTESS implemented a vaccine mandate in October 2021. On December 7, 2021, a federal district court entered a nationwide injunction pausing the Executive Order and the vaccine mandate. *See Georgia v. Biden*, No. 1:21-cv-163, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021) ("the Court ORDERS that Defendants are ENJOINED, during the pendency of this action or until further order of this Court, from enforcing the vaccine mandate for federal contractors and subcontractors in all covered contracts in any state or territory of the United States of America.").[1] The Eleventh Circuit declined to stay the injunction. NTESS acknowledges that the injunction applies to them and paused its vaccine requirement on January 5, 2022. However, the record before the Court reflects that NTESS has continued with masking and testing requirements. **Doc. 24-1 at 27.**

On August 26, 2022, the Eleventh Circuit affirmed in part the district court, but vacated the injunction's nationwide scope. Therefore, it appears the injunction no longer applies to the

---

[1] *Georgia v. Biden* addressed whether the plaintiffs had a substantial likelihood of success on their claim that the Executive Order was not valid under the Federal Property and Administrative Services Act, 40 U.S.C. § 101 et seq. That issue is not before the Court in this case.

parties in this case.  *Georgia v. President of the United States*, No. 21-14269, 2022 WL 3703822, at *2, -- F.4th -- (11th Cir. Aug. 26, 2022).

Plaintiffs argue that the Executive Order is not valid, but they do not sue President Biden. Rather, Plaintiffs sue their employer, and seek injunctive relief and a declaratory judgment stating that the vaccine, testing, and masking requirements violates their constitutional right to bodily integrity.  They also seek a declaration that the requirements violate the Americans with Disabilities Act.  Plaintiffs assert the following claims:

> Count I:  Injunctive Relief (Violation of the Right to Bodily Integrity pursuant to the United States Constitution);
>
> Count II: Declaratory Relief (Violation of the Right to Bodily Integrity pursuant to the United States Constitution);[2] and
>
> Count III: Declaratory Relief regarding violation of Americans with Disabilities Act.

*See* **Doc. 37** (amended complaint).  After Defendants filed their first round of motions to dismiss, Plaintiffs filed an amended complaint.  *Id*.  Defendant NTESS subsequently filed another motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  **Doc. 42.**  Defendant Honeywell moved to dismiss for lack of personal jurisdiction or alternatively failure to state a claim.  **Doc. 41.**  These motions are now ready for decision.

## DISCUSSION

I.    <u>**Court will apply federal pleading standards**</u>.

Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6).  However, Plaintiffs request that the Court apply New Mexico notice pleading standards,

---

[2] To the extent Plaintiffs seek under Count II to declare Executive Order 14042 invalid, Plaintiffs have not sued President Biden or the Federal Government.  Neither President Biden nor any federal official is a party to this action. Plaintiffs have not provided any authority that the Court can declare an Executive Order invalid without the input of a federal official.

which they argue their complaint meets.  The Court concludes that federal pleading standards apply.

Plaintiffs have not provided any case law showing that New Mexico pleading standards apply in this case.  Plaintiffs did not file this case in New Mexico state court, and the complaint alleges no New Mexico state claims.  Rather, they filed this case in the United States District Court, Northern District of Texas, before it was transferred to the District of New Mexico.

This case is in federal court and federal pleading standards apply.  This is true even in cases removed from state to federal court.  *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *Grasshopper Nat. Med., LLC v. Hartford Cas. Ins. Co.*, No. CIV 15-0338 JB/CEG, 2016 WL 4009834, at *30 (D.N.M. July 7, 2016) (Browning, J.) (because case was removed to federal court "the Court must apply Iqbal/Twombly's federal pleading standards — rather than New Mexico state-law pleading standards — to the Complaint.").

## II.    Constitutional claims related to vaccine mandate are no longer enjoined and are not moot.

Defendants move to dismiss Plaintiffs' claims relating to the vaccine mandate under Count I and II, asserting there is no case or controversy under Article III of the United States Constitution because the vaccine mandate has been enjoined.[3]  As explained above, a federal district court entered a nationwide injunction related to Executive Order 14042, and the parties agreed that it enjoined the vaccine mandate in this case.  *Georgia v. Biden*, 574 F. Supp. 3d 1337, 1344 (S.D. Ga. 2021), *aff'd in part, vacated in part sub nom. Georgia v. President of the United States*, No. 21-14269, 2022 WL 3703822 (11th Cir. Aug. 26, 2022).

---

[3] The Court assumes, as the parties apparently do, that only the vaccine mandate had been enjoined, and not the testing or masking requirements.

Under Count I, Plaintiffs seek to enjoin the vaccine mandate. Under Count II, Plaintiffs in part seek to declare the vaccine mandate unconstitutional.  Plaintiffs do not seek damages and apparently did not file this case using the vehicle of § 1983 or *Bivens*.  *See* **doc. 48 at 5** (plaintiffs assert they are not seeking damages).

After the parties briefed the motion to dismiss, the Eleventh Circuit affirmed the injunction in part.  However, the Eleventh Circuit determined that the injunction should not have had nationwide scope.  *Georgia v. President of the United States*, No. 21-14269, 2022 WL 3703822, at *2, -- F.4th -- (11th Cir. Aug. 26, 2022).  Therefore, it appears the injunction no longer applies to this case, and the Court declines to dismiss Counts I and II as moot.

### III.   <u>Plaintiff SNL Workforce Freedom Alliance failed to show it has standing.</u>

Defendants moved to dismiss Plaintiff SNL Workforce Freedom Alliance ("SWFA") for lack of standing.  **Doc. 42 at 24.**  Defendants argued that Plaintiff SWFA lacked associational standing under *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977), as it did not allege any facts establishing associational standing in its complaint. Plaintiffs' response to this argument does not address associational standing or cite to the facts in its complaint which establish associational standing.  *See* **Doc. 48 at 4-5.**

The United States Supreme Court has held that an association has standing to sue on behalf of its members only if the following conditions are met: (1) the association's members would otherwise have standing in their own right, (2) the interest the association is seeking to protect is germane to the association's purpose, and (3) neither the claim asserted, nor the relief requested, requires participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiff SWFA has the burden to establish each element of standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*

528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Tandy v. City of Wichita,* 380 F.3d 1277, 1284 (10th Cir.2004); *Utah Ass'n of Ctys. v. Bush*, 455 F.3d 1094, 1100 (10th Cir. 2006).

Here, Plaintiff SWFA does not establish standing.  *See* **Doc. 48 at 4-5.**  Plaintiff SWFA has not pled facts supporting these elements or argued in its response how the association has standing.  A decision not to respond to an argument constitutes consent to grant the motion as to that argument.  *Lewis v. XL Catlin*, 542 F. Supp. 3d 1159, 1168 n.6 (D.N.M. 2021) ("[F]ailure to respond to an argument raised in a motion constitutes consent to grant the motion to the extent associated with that particular argument.")

Plaintiff SWFA argues that it has the capacity to sue under Fed. R. Civ. P. 17. However, Plaintiff SWFA has not shown that Rule 17(b) supplants the standing requirement under Article III of the United States Constitution.  Therefore, Plaintiff SWFA is dismissed without prejudice for lack of standing.

## IV.   Court dismisses claims against Defendant Honeywell without prejudice for lack of personal jurisdiction.

Defendant Honeywell moves to dismiss the claims against it, asserting that the Court cannot exercise personal jurisdiction over it. The Court agrees and dismisses Defendant Honeywell without prejudice for lack of personal jurisdiction.

### A.   Personal Jurisdiction Standard

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012).  New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *See Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 316, 48 P.3d 50, 54; *Fireman's Fund*, 703 F.3d

at 492–93.  The personal jurisdiction analysis, therefore, concerns only whether the exercise of personal jurisdiction offends due process.

"Due process requires both that the defendant [1] 'purposefully established minimum contacts within the forum State' and [2] that the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In other words, "the contacts with the forum State must be such that the defendant should reasonably anticipate being haled into court there."  *XMission*, 955 F.3d at 839–40 (internal quotations omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Yet, even if a plaintiff satisfies the minimum contacts requirement, the defendant can still defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King Corp.*, 471 U.S. at 477.

When personal jurisdiction is contested, the plaintiff has the burden of establishing personal jurisdiction over the defendant.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004); *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). At this stage, where a pre-trial motion to dismiss is considered by a court without an evidentiary hearing, the plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion."  *See AST Sports*, 514 F.3d at 1057. The plaintiff can satisfy this burden by "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).  This showing is "light."  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

"If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal quotations omitted); *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). In other words, in determining whether the requisite showing has been made, all factual disputes are resolved in the plaintiff's favor and, if uncontroverted by the defendant's affidavits, the well-pled factual allegations in the Complaint must be taken as true. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020). Still, "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Wenz*, 55 F.3d at 1508 (quoting *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

**B.      Rule 56(d) does not apply here and does not require that the Court defer ruling on this Rule 12(b)(2) motion for discovery**

Defendant Honeywell brought this motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and attached an affidavit in support. Plaintiffs argue that the Court may not consider Defendant's affidavit under Fed R. Civ. P. 12(b)(2) in determining whether personal jurisdiction exists. Plaintiffs argue that the Court should convert this matter to Rule 56 and defer ruling on it under Rule 56(d). The Court disagrees, and concludes that the Court need not convert this matter to summary judgment pursuant to Rule 12(d), and Rule 56(d) does not apply here.

Plaintiffs cite to Rule 12(d) for the proposition that the motion to dismiss must be converted to summary judgment. That rule states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside of the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Here, Defendant Honeywell

filed its motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  Therefore, Rule 12(d) does not require the Court to convert to summary judgment, and Plaintiffs' Rule 56(d) argument and declaration is not applicable here.

Alternatively, to the extent Plaintiffs requested jurisdictional discovery, they have not made any showing that jurisdictional discovery is necessary, as explained below.

Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."  *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975).  However, whether to grant jurisdictional discovery is a matter of discretion for the district court.  *Id*.  While jurisdictional discovery motions are liberally granted, "[t]he burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—is on the party seeking the discovery."  *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) (internal alterations omitted) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010)).  Jurisdictional discovery is not appropriate where there is only a "low probability" that additional discovery would lead to facts sufficient to support a finding of personal jurisdiction over the defendant.  *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004); *Grynberg*, 490 F. App'x at 103.

In their response, Plaintiffs have not described the facts they would seek in discovery which might indicate the Court has personal jurisdiction over Defendant Honeywell. Plaintiffs have not specifically identified what facts, financial relationships, or documents they seeks to uncover.  *See Breakthrough Mgmt.*, 629 F.3d at 1190 (affirming the district court's denial where the plaintiff's "conclusory assertion that jurisdictional discovery was necessary seems almost like an attempt to

'use discovery as a fishing expedition' rather than to obtain needed documents to defeat" the motion to dismiss).

They have not specifically disputed or controverted any of the facts asserted by Defendant Honeywell. Rather, any request for discovery appears to be speculative or a pure fishing expedition. Thus, Plaintiffs have not shown that there is any probability that discovery would support a finding of personal jurisdiction over Honeywell. This is compounded by the fact that none of the allegations in the complaint appear to specifically refer to Defendant Honeywell. Rather, Plaintiffs assert that Defendant Honeywell is vicariously liable, **Doc. 37 at ¶ 12**, but do not allege facts in the complaint plausibly showing a theory of vicarious liability, such as agency or alter-ego. Therefore, the Court will deny Plaintiffs' request for jurisdictional discovery, assuming such request was properly made.

### C.    Plaintiffs failed to make a prima facie case of minimum contacts.

The Court finds that Plaintiffs have failed to make a prima facie that Defendant Honeywell has minimum contacts with New Mexico.

As noted above, due process requires that Plaintiffs establish that Honeywell "purposefully established minimum contacts with the forum State." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Plaintiffs may do so by arguing general or specific jurisdiction. However, Plaintiffs do not specifically address general or specific jurisdiction, but rather generally argue that the Defendant Honeywell has sufficient minimum contacts with New Mexico. **Doc. 49 at 4.** Plaintiffs argue that Honeywell, the parent company of Defendant NTESS, may be held liable for the actions of its subsidiary under alter-ego, agency, or instrumentality theories. However, in its response to Honeywell's motion to dismiss, Plaintiffs do not point to any facts pled which would state a plausible claim for agency or alter-ego to establish personal jurisdiction.

*See* **Doc. 49 at 3-4**.  Plaintiffs also did not assert any facts in their response to establish a prima facie case of personal jurisdiction under these theories.  Rather, Plaintiffs summarily argue that Defendant Honeywell is vicariously liable, but does not allege any facts supporting vicarious liability.  **Doc. 37 at ¶ 12.**

Plaintiffs alternatively argue that Defendant Honeywell has *significant* contacts with New Mexico, and cites to the following statements on Honeywell's website:

- Honeywell has an office in Albuquerque, in the Aerospace Product and Parts Manufacturing industry. That office has 45 employees.  There are 2,082 companies in the Honeywell Inc. corporate family.  **Doc. 49 at 4-5.**

- Defendant Honeywell has contracts with the State of New Mexico.  *Id.* **at 5.**

- Defendant Honeywell has an office on Kirtland Air Force Base, the same base where Defendant NTESS operates Sandia National Labs.  *Id.*

At most, this shows that Honeywell has offices in Albuquerque, one which has 46 employees, and one of which is on Kirtland Air Force Base.  Honeywell is incorporated in Delaware and based in North Carolina.  Plaintiffs do not connect Defendant Honeywell's contacts with New Mexico to the incidents in this case.  As explained by Defendant, this falls far short of establishing minimum contacts for personal jurisdiction.

Plaintiffs summarily argues that "the Court can exercise personal jurisdiction over Honeywell, just based on its activities doing business in New Mexico." **Doc. 49 at 5.**  The court disagrees.

**D.   Plaintiffs have not made a prima facie case for general or specific jurisdiction.**

Although Plaintiffs do not address general or specific jurisdiction, the Court would also find the record does not support a finding of general or specific personal jurisdiction. As explained by Defendant Honeywell, Plaintiffs have not established general or specific personal jurisdiction, and therefore has not shown that Defendant Honeywell has sufficient minimum contacts with New Mexico.

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Benton*, 375 F.3d at 1080 (quoting *OMI Holdings*, 149 F.3d at 1091). Thus, for general jurisdiction to exist, Plaintiff must demonstrate that Defendant Honeywell's contacts with New Mexico were so "continuous and systematic" that the court could exercise personal jurisdiction over it even if the underlying suit is unrelated to its contacts with the state. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir. 1996); *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008).

Generally, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *See Goodyear*, 564 U.S. at 924.

Here, Defendants established through affidavit that New Mexico is not its "home", while Plaintiffs did not make a prima facie case establishing that New Mexico is fairly regarded as its home. Therefore, general jurisdiction does not apply.

Moreover, Plaintiffs have not specifically argued that the Court has specific jurisdiction. Specific jurisdiction is "premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the

exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078.  For specific jurisdiction to exist, a plaintiff must show that (1) the defendant has "purposefully directed [its] activities at residents of the forum" and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings*, 149 F.3d at 1090–91 (internal quotations omitted).

The "arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." *See XMission*, 955 F.3d at 840.  Thus, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *See Ford Motor Co.*, 141 S. Ct. at 1025 (internal quotations and alterations omitted).  In sum, to apply specific personal jurisdiction, the plaintiff must establish "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.*"  *See Dudnikov*, 514 F.3d at 1077 (emphasis in original).

Here, Plaintiffs have not alleged or shown what, if any connection Defendant Honeywell has to the alleged unconstitutional acts in this case.  *See* **Doc. 49 at 4-6.**  The allegations arise from Defendant NTESS's alleged unlawful policies, and Plaintiffs do not connect Honeywell to those policies.  *See* **Doc. 37 at ¶¶ 45-49.**  As explained above, Plaintiffs have not alleged facts showing that Defendant Honeywell is plausibly vicariously liable, such as through agency or alter-ego theories.

Moreover, Plaintiffs have not argued that personal jurisdiction comports with fair play and substantial justice.  "Once it has been decided that a defendant purposefully established minimum

contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  Stated differently, the inquiry is whether exercising jurisdiction would be reasonable.   In determining whether the Court's exercise of personal jurisdiction is reasonable, the Court considers five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies.  *See OMI Holdings*, 149 F.3d at 1095.  Plaintiffs have not argued that any of these factors show that the exercise of personal jurisdiction is reasonable.

Therefore, Defendant Honeywell is dismissed without prejudice for lack of personal jurisdiction.

## V.    <u>Alternatively, claims against Defendant Honeywell are dismissed for failure to state a claim under Fed. R. Civ.  P. 12(b)(6).</u>

Alternatively, assuming the Court has personal jurisdiction over Defendant Honeywell, Plaintiffs do not allege facts plausibly showing that Defendant Honeywell, as a parent company, would be vicariously liable for the actions of NTESS.  Therefore, the claims against Defendant Honeywell would alternatively be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff appears to file a Rule 56(d) affidavit, but that affidavit does not apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

In short, Plaintiffs have not pled factual allegations to state a plausible claim that Defendant Honeywell is liable for the actions of its subsidiary, NTESS. Plaintiffs summarily allege that

Defendant Honeywell is vicariously liable for the actions of Defendant NTESS, but do not allege any factual allegations supporting that conclusion.  *See* **Doc. 37 at ¶ 12.**  For example, Plaintiffs do not allege facts supporting an agency or alter-ego theory.  As Plaintiffs acknowledge, a parent corporation is not automatically liable for the actions of its subsidiary. Therefore, the Court would alternatively dismiss the claims against Defendant Honeywell for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**VI.** **Plaintiffs have not plausibly alleged that Defendants are state or federal actors, which merits dismissal of the constitutional claims under Counts I and II.**

Alternatively, Plaintiffs failed to state plausible constitutional claims under Counts I and II because they failed to plausibly allege that Defendants were state or federal actors.  Therefore, to the extent the Court has not already dismissed Plaintiffs' claims under Count I and II above, the Court dismisses the constitutional claims under Counts I and II for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Plaintiffs admit they are not asserting damages claims for the constitutional violations under § 1983 or *Bivens*.  **Doc. 48 at 11.**  Rather, they seek declaratory or injunctive relief pursuant to 28 U.S.C. § 1331. Although Plaintiffs do not file a *Bivens* action, they appear to agree that to state their claims for constitutional violations, they must plausibly allege that Defendants must are government actors.  **Doc. 48 at 6-7.**  Plaintiffs allege that Defendants are both state and federal actors.

As Defendants argue, Plaintiffs failed to plausibly allege that Defendants are government actors.  Private parties are not liable for constitutional violations unless they are "jointly engaged with the state officials in the conduct allegedly violating the federal right." *Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021).  In determining whether a party is a state actor, courts consider (1)

the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). This analysis also may be considered when determining whether Defendants are federal actors. *See e.g., Brown v. Philip Morris Inc.,* 250 F.3d 789, 801 (3rd Cir.2001) (explaining that a *Bivens* action is "the federal equivalent of the § 1983 cause of action," and holding in a *Bivens* case that "[i]n order to determine whether the conduct of a private party should be attributable to the federal government, courts apply the 'state action' analysis set forth by the Supreme Court" in § 1983 cases). Although Defendants raised these tests in their motion, **Doc. 42,** Plaintiffs do not analyze any of these four tests to show how Defendants are state or federal actors.

Plaintiffs assert that NTESS is a state actor because New Mexico authorized Sandia National Labs, which NTESS manages, to be a vaccination clinic for members of the public, and NTESS allegedly worked with the New Mexico Department of Health to develop a contract tracing program implemented by New Mexico. **Doc. 37.** Plaintiffs do not explain how any of these acts show that Defendant NTESS is a state actor under any of the four tests above. The Court concludes that Plaintiffs failed to plausibly allege that Defendants are state actors.

Plaintiffs appear to allege that Defendants are in a contractual relationship with the federal government. However, merely entering into a contract with the government does not transform a private entity into a government actor. *Murphy v. Hylton*, 281 F. App'x 818, 821 (10th Cir. 2008) (declining to find federal action based solely on the existence of a contractual relationship with the federal government); *Manhattan Cmty. Access Corp. v. Halleck*, ––– U.S. ––––, 139 S. Ct. 1921, 1931-32, 204 L.Ed.2d 405 (2019) ("the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor – unless the private entity is performing a traditional, exclusive public function. The same principle applies if

17

the government funds or subsidizes a private entity."), *citing Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41, 102 S. Ct. 2764, 2771, 73 L. Ed. 2d 418 (1982) ("The school, like the nursing homes, is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

Plaintiffs do not allege facts to suggest that Defendants are in fact federal actors, beyond the contractual relationship. Plaintiffs allege that Defendants are private companies which are "acting at the behest and as agents of the National Nuclear Security Administration." **Doc. 37 at 26.** This type of conclusory allegation is not sufficient to state a plausible claim. Plaintiffs do not assert any facts which support its conclusory allegation that Defendants are federal actors. Moreover, Plaintiffs' response does not cite to any such facts in its amended complaint. *See* **doc. 48 at 6-8.**

Plaintiffs assert that whether Defendants are government actors is a fact-intensive inquiry and it is not appropriate to resolve on a motion to dismiss. While this may be a factual inquiry, this does not relieve Plaintiffs of their burden to state sufficient factual allegations to state a plausible claim in their complaint.

The Court concludes that Plaintiffs did not state a plausible claim that Defendants are government actors. Moreover, Plaintiffs' 66-page amended complaint does not comply with Fed. R. Civ. P. 8, and contains legal argument with case citations, which is generally inappropriate for a complaint and impedes the Court's review of Plaintiffs' factual allegations. Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief."). At the same time, the complaint omits

*relevant* factual allegations supporting the claims necessary to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Therefore, the Court dismisses Plaintiffs' constitutional claims under Count I and II for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## VI.   **Alternatively, Counts I and II dismissed for failure to state a constitutional violation.**

Alternatively, Plaintiffs have failed to plausibly allege that the vaccination, testing or mask requirements under violated their constitutional right to bodily integrity. Therefore, the Court dismisses the constitutional claims under Counts I and II.

Plaintiffs appear to argue that Defendants' vaccination, masking, and testing requirement violates their constitutional right to bodily integrity.  In their response to the motion to dismiss (Doc. 48), Plaintiffs do not analyze substantive due process beyond citing to *Planned Parenthood v. Casey* 505 U.S. 833 (1992) and *Roe v. Wade*, 410 U.S. 113 (1973).  Generally, the Court does not address arguments which have not been properly raised. The Court finds that Plaintiffs' response does not analyze substantive due process law, fundamental rights, or rational basis review. *See* **Doc. 48 at 18-19** (Plaintiffs' response); *See Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *5 (10th Cir. June 14, 2022) (district court's decision not to address argument "was not an abuse of discretion because Ms. Blackford did not adequately present the argument to the district court."), *citing Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.").  Therefore the Court would dismiss the constitutional claims under Counts I and II on this basis alone.

Alternatively, only to the extent Plaintiffs' opposition were properly raised, the Court would conclude that Plaintiffs failed to allege a plausible substantive due process violation, because (1)

no fundamental right is implicated here, and (2) Plaintiffs have not shown there is no rational basis for the vaccine, masking, and testing requirement.

Plaintiffs argue that Defendants violated their right to bodily integrity, and cite to *Roe v. Wade*, 410 US 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). *See* **doc. 48 at 18-19.** Based on these citations, the Court assumes that Plaintiffs raise a substantive due process claim under both the Fifth and Fourteenth Amendments[4], and the Court assumes it applies to NTESS, which Plaintiffs have asserted is both a federal and state actor.  **Doc. 37 at 18** (referencing Fifth and Fourteenth Amendments).

The substantive due process doctrine "bars certain government actions regardless of the fairness of the procedures used to implement them." *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019) (quotation omitted). "The Tenth Circuit 'appl[ies] the fundamental rights approach when the plaintiff challenges *legislative action,* and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action.*' " *ETP Rio Rancho Park, LLC v. Grisham ("ETP I"),* 522 F. Supp. 3d 966, 1028–29 (D.N.M. 2021) (quoting *Halley v. Huckaby,* 902 F.3d 1136, 1153 (10th Cir. 2018) (emphasis in original), *cert. denied*, —— U.S. ——, 139 S. Ct. 1347, 203 L.Ed.2d 570 (2019))

Here, Plaintiffs reference the fundamental rights approach, which the Court assumes applies in this case. The fundamental rights approach involves a "two-part substantive due process framework." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009). First, the Court must "carefully describe the asserted fundamental liberty interest." *Id.* at 1182 (citation omitted). Second, the Court must decide "whether that interest is 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty, such that neither liberty nor

---

[4] A violation of the Fourteenth Amendment does not sound against a federal actor, but Plaintiffs also allege that Defendant NTESS is a state actor.

justice would exist if they were sacrificed.' " *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)).

If the rights asserted are fundamental, substantive due process clause "forbids the government to infringe [those] rights at all, ... unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721, 117 S.Ct. 2258. If the action at issue "does not implicate a fundamental right, it must nonetheless bear a rational relationship to a legitimate government interest." *Dias*, 567 F.3d at 1182 (citation omitted). Fundamental rights are those rights that are "objectively, 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.' " *Glucksberg*, 521 U.S. at 720–21

Plaintiffs have not shown that a fundamental right is at stake in this case.  Plaintiffs assert that Defendants' requirement that employees be vaccinated and comply with certain masking and testing requirements violates their fundamental right to bodily integrity.  Plaintiffs broadly assert they have the right to bodily integrity, and assert this is a fundamental right.  Here, this broadly defined right is not the "careful description of the asserted fundamental liberty interest" required under *Glucksberg* to establish a fundamental right. *ETP II*, 522 F.Supp.3d at 1031.  Rather, the Court must narrowly and properly define the right at issue.

Plaintiffs have not cited to any law establishing that mandatory vaccinations, masking, or testing violate a fundamental right.  Rather, cases generally hold that mandatory vaccinations do not violate a fundamental right. *See Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (concluding that mandatory vaccination does not violate a fundamental right); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir.), *op. clarified*, 17 F.4th 368 (2d Cir. 2021)

("Plaintiffs provide no basis for concluding that the vaccination requirement here . . . violates a fundamental constitutional right.").

Moreover, Plaintiffs are not alleging that the state is mandating that they vaccinate, mask or test. Rather, at issue is whether Plaintiffs have a fundamental right to work for Defendants while unvaccinated, without masks, and without testing. The Court concludes they do not.

The Tenth Circuit has held that the "right to practice in [one's] chosen profession ... does not invoke heightened scrutiny" if subject to reasonable health and safety regulations. *Guttman v. Khalsa*, 669 F.3d 1101, 1118 (10th Cir. 2012), *cited in Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *4 (10th Cir. June 14, 2022) ("The district court properly relied upon this binding precedent in finding Ms. Blackford did not have a fundamental right to work unvaccinated in a hospital or congregate care facility."); *See Legaretta v. Macias*, No. 21-CV-179 MV/GBW, 2022 WL 1443014, at *7 (D.N.M. May 6, 2022)(collecting cases), *citing Andre-Rodney*, 569 F.Supp.3d at 139 ("the Vaccine [Directive] conditions Plaintiffs' right to be employed …on their vaccination against COVID-19. As such, "the right that is being burdened is the right to employment at [the Detention Center]."*see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) ("Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers."); *Norris v. Stanley*, 567 F.Supp.3d 818, 821 (W.D. Mich. 2021) ("The MSU vaccination policy does not force Plaintiff to forego her rights to privacy and bodily autonomy, but if she chooses not to be vaccinated, she does not have the right to work at MSU at the same time."); *Bauer*, 568 F.Supp.3d at —— ("[A] more appropriate description [of the rights at issue] is plaintiff's interest in continued employment with defendants while unvaccinated for COVID-19."); *Brnovich v. Biden*, 562 F.Supp.3d 123, 163 (D. Ariz. 2022) ("Properly construed, this case raises only the much narrower question whether there is a substantive due process right

to refuse vaccination while an employee of a federal contractor" – a "question easily answered in the negative."); *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 644 (E.D. Ky. 2021) ("Plaintiffs are choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice."). Because Plaintiffs have not shown that the right to work at NTESS unvaccinated and without masking or testing is a fundamental right, heightened scrutiny does not apply.

Where "the vaccine requirement has a significant nexus to the employment of [ ] Plaintiffs, a rational basis review will apply." *Massachusetts Correction Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 326 (D. Mass. 2021).   Numerous cases have held that a vaccination requirement for employees is subject to rational basis review.  *Legaretta v. Macias*, No. 21-CV-179 MV/GBW, 2022 WL 1443014, at *8 (D.N.M. May 6, 2022) (collecting cases).  Therefore, the Court will apply rational basis review here.

Rational-basis review requires the government action to be "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728. "State actions subject to rational-basis review are presumed constitutional, and courts uphold the actions if there is any reasonably conceivable state of facts that could provide a rational basis for them." *Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *5 (10th Cir. June 14, 2022), *quoting Petrella v. Brownback*, 787 F.3d 1242, 1266 (10th Cir. 2015).

Plaintiffs summarily assert that the vaccination, masking, and testing requirement does not meet the rational basis test.  But in their response, Plaintiffs do not explain why an employer's vaccine, mask, and testing mandate does not meet this rational basis test.  *See* **Doc. 48 at 19.**  The purpose of stemming the spread of COVID-19 in the workplace is not only legitimate, but is "unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. 63, 67

(2020). An employer's requirement for employees to be vaccinated, wear masks, and get tested, is rationally related to the furtherance of that interest.

Plaintiffs argue that vaccinations, masking, or testing are not effective, or are otherwise unnecessary in certain contexts, such as when an employee has previously been infected with COVID-19. However, the Court may not substitute its judgment for the Defendants' judgment. It is not the Court's role to decide whether Defendants have chosen the best policy, the most efficacious method to deal with COVID-19, or even a good policy, as long as the policy is rationally related to a governmental interest. *See, e.g., Norris*, 567 F.Supp.3d 818 ("Put plainly, even if there is vigorous ongoing discussion about the effectiveness of natural immunity, it is rational for MSC to rely on present federal and state guidance in creating its vaccine mandate."); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1253 (D. Or. 2021) ("[T]he issue before the Court is not to analyze the safety of the vaccines or whether the Vaccine Orders are the best (or even a good) policy."); *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) ("Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* made clear, that is a determination for the legislature."), *citing Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905).

Therefore, the Court dismisses Plaintiffs' constitutional claims under Counts I and II for failure to state claim.

**VII.   Court denies John Doe's and Jane Doe's request to proceed under pseudonym.**

John Doe and Jane Doe request that they be allowed to proceed under a pseudonym. "[T]he Federal Rules of Civil Procedure mandate that all pleadings contain the name of the parties," and, under Rule 17(a), "[e]very action shall be prosecuted in the name of the real party in interest." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).

Anonymous proceedings are exceptional.  "Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving [1] matters of a highly sensitive and personal nature, [2] real danger of physical harm, or [3] where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).  Finally, the Court may consider whether it is in the public interest to permit the plaintiffs to proceed anonymously.  *Id.*

The Court finds that none of these circumstances or factors apply here or merit allowing parties to proceed anonymously.  These are not matters of a highly sensitive or personal nature; there is no real danger of physical harm by proceeding under their name; and there is no likelihood that the injury litigated against would be incurred as a result of the disclosure of the plaintiffs' identity.  Defendants are likely aware of which employees have not yet submitted vaccination records indicating their compliance with the paused mandate.  Finally, it is not in the public interest to permit the plaintiffs to proceed anonymously.

Plaintiff assert, without any factual support, that they are working in an atmosphere of fear, discrimination, ostracization, and irrationality. Plaintiffs assert a fear of retaliation, but have given no facts to suggest that retaliation is likely. Moreover, "[t]he risk that a plaintiff may suffer some embarrassment is not enough." *Femedeer*, 227 F.3d at 1246. "If the embarrassment inherent in being exposed as a sex offender (as in Femedeer) will not suffice, the possibility of criticism for not taking the vaccine would not support a request to proceed anonymously." *Oklahoma v. Biden*, No. CIV-21-1136-F, 2022 WL 356736, at *4 (W.D. Okla. Feb. 2, 2022).  In a similar vaccination case, a district court found that none of these factors or circumstances merited allowing the plaintiffs to proceed anonymously in a similar proceeding challenging a vaccine mandate. *Oklahoma v. Biden*, No. CIV-21-1136-F, 2022 WL 356736, at *2 (W.D. Okla. Feb. 2, 2022).

Therefore, Plaintiffs Jane Doe and John Doe shall identify themselves through a motion to amend the caption within **fourteen (14) days** of the entry of this order.  Their failure to do so will be another, alternate ground to dismiss their claims.

**VIII.   Count III: Americans with Disabilities Act Claim.**

Under Count III, Plaintiffs seek declaratory relief that policies requiring COVID-19 testing for unvaccinated employees violates the Americans with Disabilities Act ("ADA").  They did not file a claim for violation of the ADA, but rather, request the Court declare as follows:

a) Testing for Covid-19 is a medical exam pursuant to the ADA.

b) There is no individualized assessment done on uninjected employees who are required to undergo testing and therefore the testing violates the ADA.

c) The uninjected do not pose a direct threat to the workplace and requiring them to have covid testing violates the ADA.

**Doc. 37 at 66.**

Defendants move to dismiss this claim for declaratory relief, asserting that Plaintiffs did not present an actual controversy as to whether NTESS's COVID-19 testing policy violates the ADA.  The ADA provides that:

[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(a). An individual need not be disabled to be protected under this section. *See Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013). "The EEOC has defined 'disability-related' questions as those 'likely to elicit information about a disability.' " *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206, 1215 (11th Cir. 2010).

"[A] declaratory judgment suit must be definite and concrete, touching the legal relations of parties having adverse legal interests, must be real and substantial and admit of specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008) (internal quotation marks omitted). "The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Here, Plaintiffs appear to allege that Defendants violated the above section of the ADA through their COVID-19 testing policy. It is unclear whether Plaintiffs' Count III is based on hypothetical facts, or whether the individual plaintiffs are tested regularly. Moreover, Defendant NTESS argued its testing was consistent with EEOC guidelines, but after briefing the motion to dismiss, it appears that the EEOC changed its guidelines on COVID-19 testing. It is unclear whether Defendant NTESS has changed its testing policy. Therefore, the Court will allow supplemental briefing on whether Defendant is currently testing, whether the claim is moot, whether there is a case or controversy, whether a claim for declaratory relief is available and whether the Court should consider declaratory relief.

Therefore, the Court finds that the current briefing before the Court is not sufficient to issue a decision. If Defendant NTESS desires the Court to dismiss Count III, it should file a motion within **thirty (30) days** of the entry of this order, setting forth all grounds it believes merits the Court dismissing Count III. If a motion is filed, Plaintiffs shall respond to the motion within **fourteen (14) days** of the filing the motion. Replies may be filed within **fourteen (14) days** of the filing of the response.

**IX.** **Court declines to dismiss the Americans with Disabilities Act claim (Count III) for failure to administratively exhaust.**

Defendant NTESS seeks to dismiss the Americans with Disabilities Act ("ADA") claim (Count III) for failure to exhaust. In the Tenth Circuit, administrative exhaustion is now an affirmative defense and not a jurisdictional defect. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) ("Thus, the full court now holds that a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."); *Isberner v. Walmart Inc.*, No. 20-2001-JAR-KGG, 2021 WL 4284540, at *13 (D. Kan. Sept. 21, 2021) (applying *Lincoln* to ADA claim).  That means that under Fed. R. Civ. P. 12(b)(6), the Court may only dismiss an ADA claim for failure to exhaust if it is clear on the face of the complaint.

Here, the Court finds that it is not clear on the face of the complaint that Plaintiffs failed to exhaust their administrative remedies. Therefore, the Court declines to dismiss the ADA claim for failure to exhaust.

## X.   <u>Executive Order 14042 (Count II).</u>

Under Count II, it appears that Plaintiffs also seek to declare Executive Order 14042 invalid to "authorize compulsory… vaccinations of employees of federal contractors." **Doc. 37 at 65.** Defendant NTESS did not specifically move to dismiss this portion of Count II.

The Court notes Plaintiffs do not sue President Biden or any federal agency or officer in this case.  Rather, they sue their employer for violating their constitutional rights by requiring vaccinations, masks, and testing as a condition of employment.  The Court is not aware of a theory in which the Court may declare an Executive Order invalid without President Biden, a federal officer, or any federal agency being a party to this lawsuit.  However, because this issue was not addressed in the briefing, the Court will give the parties an opportunity to respond.

Therefore, the Court orders Plaintiffs to show cause why the Executive Order portion of Count II should not be dismissed within **thirty (30) days** of the entry of this order.  Defendant NTESS shall respond within **fourteen (14) days** of the filing of the response.

If Plaintiffs fail to respond, the Court may dismiss the remainder of Count II without further notice.

**CONCLUSION**

The claims asserted by Plaintiff SWFA are dismissed for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).  Alternatively, Plaintiffs' constitutional claims related to the vaccine mandate under Count I and II are dismissed fail to state a claim under Fed. R. Civ. P. 12(b)(6).  Finally, the constitutional claims related to mask or testing requirements under Counts I and II are dismissed for failure to state a claim.  Defendant Honeywell is dismissed without prejudice for lack of personal jurisdiction, or alternatively with prejudice for failure to state claim.

To the extent Plaintiffs seek to declare Executive Order 14042 invalid, they must explain whether and how they can do so without suing President Biden or any federal agency or officer, as explained above.

Count III remains as to the individual Plaintiffs, but the Court orders further briefing.

**IT IS THEREFORE ORDERED** that Defendant NTESS' Motion to Dismiss for Lack of Subject Matter Jurisdiction under Federal Rule 12(b)(1) and/or Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) and/or Strike under 12(f) **(Doc. 42)** is hereby **GRANTED IN PART** as described above;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Permit Doe Plaintiffs **(Doc. 39)** is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs Jane Doe and John Doe shall identify themselves through a motion to amend caption **within fourteen (14) days** of this order. Their failure to do so will be another, alternate ground to dismiss their claims without prejudice;

**IT IS FURTHER ORDERED** that Defendant Honeywell International Inc.'s Renewed Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule 12(b)(2), and in the alternative, Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) (**Doc. 41**) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Honeywell International, Inc. is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction;

**IT IS FURTHER ORDERED** that Defendant NTESS may file a motion to dismiss within **thirty (30) days** of the entry of this order, as described above; and

**IT IS FINALLY ORDERED** that Plaintiffs shall show cause why the Executive Order portion of Count II should not be dismissed within **thirty (30) days** of the entry of this order. Defendant NTESS shall respond within **fourteen (14) days** of the filing of the response.

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**