IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SNL WORKFORCE FREEDOM
ALLIANCE, DAVID PETERSON, JON
BROOKS, ANNA BURNS, JOHN DOE
#1, JANE DOE #1,

          Plaintiffs,

v.

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA LLC d/b/a SANDIA NAT'L
LABORATORIES, HONEYWELL
INTERNAT'L, INC.,

          Defendants.

Case No. 1:22-cv-00001-KWR-SCY

**NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA LLC'S SUPPLEMENTAL BRIEF TO DISMISS COUNT III OF PLAINTIFFS' COMPLAINT**

      On August 29, 2022, the Court invited Defendant National Technology and Engineering Solutions of Sandia, LLC ("NTESS") to submit supplemental briefing related to Plaintiffs' Third Count, specifically whether NTESS is currently conducting COVID-19 testing of its employees, whether the claim is moot, whether there is a case or controversy, whether a claim for declaratory relief is available and whether the Court should consider declaratory relief. As explained below, the Court should dismiss Count Three.

**I.    INTRODUCTION**

      NTESS is a privately held company that operates Sandia National Laboratory ("SNL") under a management and operating contract with the U.S. Department of Energy's ("DOE's")

National Nuclear Security Administration ("DOE/NNSA"). As a private government contractor, NTESS is required to comply with federal guidance applicable to it, including federal guidance related to COVID-19.

Throughout the COVID-19 pandemic, NTESS has followed the DOE's, the Equal Employment Opportunity Commission's ("EEOC's"), and the Centers for Disease Control and Prevention's ("CDC's") guidance for NTESS's COVID-19 policies, including its COVID-19 testing policy, and it intends to continue to follow applicable guidance issued by those agencies. In mid-July and August 2022, respectively, the EEOC and CDC updated their COVID-19 testing guidance. Consistent with its intentions to follow applicable federal guidance, NTESS's COVID-19 testing policy changed in lockstep with the federal guidance. As of spring 2022, NTESS modified its masking requirements to require masks based on community transmission levels, regardless of vaccination status. As of August 12, 2022, NTESS no longer requires testing for workers to come onsite.

Plaintiffs' Third Count for declaratory judgment, which seeks various advisory opinions that NTESS's now-*discontinued* COVID-19 testing policy violates the Americans with Disabilities Act ("ADA"), is therefore moot because there is no case or controversy pending before this Court. Indeed, issuing an advisory opinion about NTESS's now-former and withdrawn COVID-19 testing policy, which complied with then-current DOE, EEOC, and CDC guidance, would not settle any present controversy or serve a useful purpose related to any current dispute. As a result, this Court should dismiss Plaintiff's Third Count with prejudice.

## II. FACTUAL BACKGROUND

NTESS is a private Limited Liability Company that manages and operates SNL pursuant to Contract No. DE-NA0003525 that NTESS entered into with the DOE/NNSA. Declaration of Terry Cooper in Support of NTESS's Motion to Dismiss Plaintiff's Third Count ("Cooper Decl.") ¶ 2. As a federal contractor, NTESS is required to comply with federal regulations applicable to it, many of which are effectuated through the terms of NTESS's M&O contract with the DOE. Cooper Decl. ¶ 3.

In Summer 2021, the Safer Federal Workforce Task Force—which President Biden created in order to provide the heads of federal agencies with ongoing COVID-19 guidance—required that "onsite contractors who are not fully vaccinated or decline to provide their vaccination status must wear a mask, physically distance and comply with a weekly or twice-weekly screening testing requirement and are subject to Government-wide restrictions on official travel." Cooper Decl. ¶ 5, Ex. A. On September 9, 2021, President Biden signed the Executive Order "Ensuring Adequate COVID Safety Protocols for Federal Contractors." This Executive Order applied to federal contractors such as NTESS and required, among other things, that all covered contractor employees be fully vaccinated by December 8, 2021 unless they are legally entitled to an accommodation. Cooper Decl. ¶¶ 6, 7. Because NTESS was required to comply with both the Executive Order and its guidance, NTESS announced its intention to institute a vaccination requirement. Cooper Decl. ¶ 9. On September 24, 2021, the Safer Federal Workforce Task Force updated its guidance to require covered contractors such as NTESS to ensure that all individuals, including covered contractor employees and visitors, comply with published CDC guidance for masking and physical distancing at a covered contractor workplace. Cooper Decl. ¶ 8.

3

On December 7, 2021, Judge R. Stan Baker of the U.S. District Court for the Southern District of Georgia issued a nationwide injunction halting the enforcement of the Executive Order's federal contractor vaccine mandate. The remaining requirements of the Executive Order and the Safer Federal Workforce Task Force guidance remained intact, including serial testing of onsite unvaccinated employees and contractor compliance with masking and distancing direction. Cooper Decl. ¶ 10; *See Georgia v. Biden*, 574 F. Supp. 3d 1337 (S.D. Ga. 2021), aff'd in part, vacated in part sub nom. *Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022). Once it became clear that the Executive Order would be enjoined for some time if not permanently, NTESS paused enforcement of the Executive Order vaccine mandate. Instead, beginning on January 18, 2022, NTESS implemented a serial COVID-19 testing program and masking requirement for unvaccinated employees who came onsite, which complied with the EEOC's and CDC's then-current guidance. Cooper Decl. ¶ 11, Ex. C.

On February 25, 2022, the CDC updated its masking requirements to remove the distinction between unvaccinated and vaccinated persons. Cooper Decl. ¶ 12. Under this new guidance, the CDC now recommends that everyone wear masks when COVID-19 transmission rates in the community are high, and everyone—regardless of vaccination status—may forgo a mask when rates are medium or low. *Id*.

On July 12, 2022, the EEOC updated its COVID-19 testing guidance.[1] Cooper Decl. ¶ 13. While the EEOC's previous guidance indicated that mandatory workplace COVID-19 testing must *always* meet the standard that any medical test be "job related and consistent with business

---

[1] *See* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=#A.6.

4

necessity," the new guidance provides that employers must assess several factors to determine whether workplace testing meets this standard. *Id*. On August 11, 2022, the CDC updated its guidance providing that COVID-19 screening testing of asymptomatic people without known exposures will no longer be recommended in most community settings. Cooper Decl. ¶ 14.

Because federal guidance no longer required NTESS to enforce serial testing as to its unvaccinated employees, NTESS removed these requirements and announced that change to its employees on August 12, 2022, the day after the CDC's announcement. Cooper Decl. ¶ 15, Ex. D. As of August 12, NTESS's testing and masking policies apply equally to both vaccinated and unvaccinated employees, consistent with EEOC and CDC guidelines. Specifically, as of August 12, NTESS no longer requires COVID-19 testing or proof of a negative COVID-19 test for unvaccinated employees who come on-site to an NTESS facility. *Id*. Moreover, consistent with CDC guidance, NTESS requires masking indoors for all employees regardless of vaccination status when the COVID-19 levels in the immediate community of SNL are high according to weekly statistics released by the CDC.[2] *Id*. In those situations, all employees must wear masks in indoor public spaces when they are around other employees. If the COVID-19 levels are low or medium in the community, then no masks are required. *Id*. Consistent with the requirements of the ADA, NTESS maintains a policy and practice of accommodating employees whose disabilities may negatively impact their ability to safely use masks. Cooper Decl. ¶ 12.

---

[2] The header for Count Three conclusively states that NTESS's mask policies violate the ADA but Count Three does not specify how the masking policies violate the ADA or otherwise seek declaratory relief related to NTESS's masking policies. Nevertheless, NTESS provides this additional background on its updated masking policies for the convenience of the Court and the parties.

Throughout this pandemic, NTESS has maintained a policy and practice to follow COVID-19–related regulations, guidance and requirements issued by the applicable federal agencies, including the DOE, CDC and EEOC. Cooper Decl. ¶ 16. At this time, the Safer Federal Workforce Task Force guidance indicates that the government will take no action to implement or enforce the EO, and NTESS has received no information that would suggest that any of these agencies would require NTESS or other federal contractors to reinstitute any of its now-discontinued COVID-19 vaccine, testing or masking policies. Cooper Decl. ¶ 16.

### III.  LEGAL ARGUMENT

The Court should dismiss or, in the alternative, strike Plaintiffs' Third Count for declaratory relief that NTESS's testing policies violate the ADA because the claim is moot and there is no case or controversy, and therefore declaratory relief is unavailable.

#### A.  The Court Should Dismiss or, in the Alternative, Strike Plaintiffs' Allegations Related to NTESS's Mask and Testing Requirements as Moot.

Federal courts exercising judicial authority are "confine[d] . . . to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570 U.S. 693 704, (2013) (quoting U.S. Const. art. III, § 2). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

Here, Plaintiffs' Third Count seeks declaratory relief that NTESS's now-discontinued serial testing policy violates the ADA in various ways. However, because as of August 12, 2022 NTESS no longer requires COVID-19 testing for its employees, Plaintiffs have no continuing real

6

or expected imminent alleged injury from NTESS's discontinued testing requirements.[3]  Where a plaintiff, such as these Plaintiffs, seeks to challenge "a requirement that no longer burdens or applies to the plaintiff, a federal court lacks jurisdiction to adjudicate the plaintiff's claim." *Pietrangelo v. Sununu*, 15 F.4th 103, 106 (1st Cir. 2021) (dismissing plaintiff's appeal of denial of injunctive relief concerning COVID-19 vaccine distribution because plaintiff had since been vaccinated); *N.M. Elks Ass'n v. Grisham*, No. CV 21-0354 KG/LF, 2022 WL 980245, at *5 (D.N.M. Mar. 31, 2022) (dismissing plaintiffs' claims for injunctive and declaratory relief addressing COVID-19 restrictions as moot and because "the clear trajectory of the public response to the pandemic renders it unlikely the challenged restrictions will be reimposed").

Plaintiffs may argue in response that NTESS could reinstate its serial testing policy and, therefore, this case presents a live controversy.  Plaintiffs' mere speculation that NTESS may at some undetermined time in the future reinstate its testing requirements is not enough to defeat mootness.  *N.M. Elks Ass'n*, 2022 WL 980245, at *5; *Wade v. Univ. of Conn. Bd. of Trs.*, 554 F. Supp. 3d 366, 378 (D. Conn. 2021) (rejecting argument that the university could withdraw vaccine exemptions at any time because "a speculative possibility of future revocation of an exemption is not enough to defeat mootness"); *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (challenge to pandemic suspension of fingerprinting for firearms permits was moot in light of evidence showing resumption of fingerprinting and only speculative possibility that suspension of fingerprinting would be reimposed).

Further, NTESS has always followed federal guidance regarding its COVID-19 testing

---

[3] To the extent Plaintiffs also challenge NTESS's masking policies, they do not actually assert a claim that NTESS's masking policy violates the ADA or otherwise treats unvaccinated employees any differently than vaccinated employees.

and has every intention to continue to adhere to that guidance.[4]  Cooper Decl. ¶ 23.  This Court should dismiss Plaintiffs' Third Count as moot.

> **B.     The Court Should Dismiss Plaintiffs' Third Count Because They Have Not Met the Standard to Obtain Declaratory Relief.**

For declaratory relief to be appropriate, Plaintiffs must show that the controversy at issue is "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936).  The "controversy" at issue must be a real and substantial admitting of specific relief through a decree of a conclusive character, and courts must not issue opinions advising what the law would be upon a hypothetical state of facts. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).

Tenth Circuit precedent aligns with these requirements and notes that a plaintiff bringing a claim under the Declaratory Judgment Act must overcome "two separate hurdles." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citation omitted).  First, a plaintiff seeking a declaratory judgment must present "an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement."  *Id*. (citing *Aetna Life Ins. Co.*, 300 U.S. at 227, 239-40).  Second, even if the plaintiff can show an actual controversy, district courts are not *required* to declare the parties' rights, but "are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority."  *Id.* (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994)) (citations omitted).  As explained below, Plaintiffs cannot satisfy either

---

[4] To the extent that Plaintiffs challenge NTESS's erstwhile serial testing program, that program was limited to employees who physically came onsite, was required by DOE guidance, and was therefore job-related and consistent with a business necessity as required by the EEOC.  *See* NTESS's Motion to Dismiss Amended Complaint, Dkt. No. 42, pp. 19-20; Cooper Decl. ¶¶ 5, 10.

element.

### 1. Plaintiffs Have Not Shown an Actual Controversy Supporting Either Claim for Declaratory Relief.

Plaintiffs' Third Count asks the Court to issue a declaratory judgment addressing several issues, including (1) whether testing for COVID-19 is a medical exam under the ADA, (2) that there is no individualized assessment "done on uninjected employees" and therefore testing violates the ADA, and (3) that the "uninjected" do not pose a direct threat and requiring them to have COVID-19 testing violates the ADA. Am. Compl. ¶¶ 187, 188.

Plaintiffs have not presented an actual controversy as to whether NTESS's COVID-19 testing policy violates the ADA to support their request for a declaratory judgment under Count Three. First, as explained above, NTESS discontinued its serial testing program to comply with updated federal guidance, and Plaintiffs' testing claims are moot. This alone is sufficient grounds to render declaratory relief inappropriate, and the Court may stop its analysis here.

Second, even if NTESS maintained an ongoing serial testing program (which it has not), Plaintiffs' claim presents a hypothetical dispute that is not appropriate for adjudication. In determining whether there is an actual controversy, courts "focus[] on the underlying facts, assessing whether they suggest an extant controversy between the parties or whether instead they merely call on [the court] to supply an advisory opinion about a hypothetical dispute." *Am. Hallmark Ins. Co. of Tex. v. Morales-Kratzer, Inc.*, 2021 WL 2952908, at *3 (D.N.M. July 14, 2021) (citing *Surefoot*, 531 F.3d at 1242). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment." *Bd. of Educ. for Gallup-McKinley Cnty. Sch. v. Henderson*, 696 F. App'x 355, 359 (10th Cir. 2017) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, Plaintiffs submit *allegations* concerning only Plaintiff Ricky Ferguson's physical ailments, but they have not alleged sufficient facts to show how Plaintiff Ricky Ferguson's alleged sinusitis (i.e., sinus infections) and/or sleep apnea are disabilities under the ADA, how those alleged disabilities are impacted by NTESS's (now-discontinued) COVID-19 testing policy, or otherwise how the (now-discontinued) testing policy violates his statutory rights.[5] Am. Compl. ¶ 9, p. 5, para. 2; *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998) (noting that ADA defines "disability" as an impairment that substantially limits one or more major life activities). Moreover, the specific declaratory relief that Plaintiffs seek—that testing is a medical exam under the ADA, NTESS does not conduct an individualized assessment on "uninjected" employees, and the "uninjected" do not pose a direct threat to the workplace—is untethered to any of the *facts* asserted in the Complaint. As noted, the only Plaintiff who allegedly has a (vaguely asserted) disability is Ricky Ferguson. Plaintiffs, however, plead no facts whatsoever about his circumstances with respect to NTESS's (now discontinued) testing policy or how that policy negatively impacted him because of his alleged disability. Plaintiffs effectively ask this Court to rule on a hypothetical dispute about a now-discontinued policy, which is improper. *Morales-Kratzer*, 2021 WL 2952908, at *3.

### 2. Plaintiffs Have Not Shown That This Court Should Exercise Its Discretion to Issue Declaratory Relief.

---

[5] Plaintiffs' requests for relief in Count Three do not address NTESS's masking policy. To the extent Plaintiffs seek declaratory relief that NTESS's masking policy also violates the ADA, that claim fails for the same reasons.

Even if Plaintiffs had provided sufficient facts to show an actual controversy as to Plaintiff's Third Count (which they have not), this Court is not obligated to issue declaratory relief. "[T]he Declaratory Judgment Act does not demand that a district court decide every declaratory suit brought to it even where the court has the power to do so." *Surefoot*, 531 F.3d at 1248. Instead, even if the Court is satisfied that a plaintiff has overcome the first procedural hurdle, it still *must* consider a number of factors to determine whether the suit warrants the district court's attention, including:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id*. (citing *Mhoon*, 31 F.3d at 983).

Here, the first, second, third, and fifth factors weigh heavily against the Court issuing an advisory opinion concerning Plaintiff's Third Count. As to the first and second factors, declaratory relief would not settle the controversy or clarify the legal relations because NTESS has discontinued its serial testing program, and therefore there is no present controversy to settle.

As to factors three and five, Plaintiffs rush to request declaratory relief, although other remedies—such as seeking damages through a count for an alleged violation of the ADA to the extent any actually suffered damages from the testing policy—would be more effective. Indeed, it seems obvious that Plaintiffs are seeking a declaratory judgment for "procedural fencing" and to obtain some order they can use as res judicata or issue preclusion in another suit. If Plaintiffs contend that NTESS's now-discontinued testing policy violated the ADA, then they should simply

11

state a count for violation of the ADA and support that count with sufficient facts to state a claim for damages. They have done neither and, as a result, this Court should dismiss Plaintiffs' Third Count with prejudice.

### C. Despite Court Order to Do so, Plaintiffs Have Not Identified Themselves and Dismissal Is Proper.

The Court ordered the anonymous DOE Plaintiffs to identify themselves by September 12, 2022. As of the date of this filing, they have not done so. The Court should dismiss their claims with prejudice.

## IV. CONCLUSION

This Court should dismiss Plaintiffs' lawsuit with prejudice.

Respectfully submitted,

By  /s/ Justin Poore
Justin Poore
National Technology & Engineering Solutions of Sandia, LLC,
d/b/a Sandia National Laboratories
1515 Eubank SE
Mail Stop 0141
Albuquerque, NM  87123-0141
Tel: (505) 284-5284
Fax: (505) 844-2363
jepoore@sandia.gov

Michael D. Weil (pro hac vice)
Andrea Fellion (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105
Tel: (415) 442-1000
michael.weil@morganlewis.com
andrea.fellion@morganlewis.com

**Counsel for Defendant NTESS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

N. Ana Garner
Attorney for Plaintiffs
206 W. Main St.
Farmington, NM 87401
(505) 930-5170/(505)235-3302
Garnerlaw@yahoo.com

Jonathan Diener
Attorney for Plaintiffs
P.O. Box 27
Mule Creek, NM 88051
(575) 535-2760
jonmdiener@gmail.com

Warren V. Norred
Attorney for Plaintiffs
515 E. Border St., Arlington, Texas 76010
T (817) 704-3984, F (817) 524-6686
wnorred@norredlaw.com

                                              /s/ Justin Poore
                                              Justin Poore